# UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| In re: | § § § |
| LOCKWOOD HOLDINGS, INC., *et al.*, | § § |
| Debtors.[1] | § § § § |

Chapter 11

Case No. 18-30197 (DRJ)

Joint Administration Requested

### EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS (A) AUTHORIZING USE OF CASH COLLATERAL PURSUANT TO SECTION 363(C) AND (B) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001

THIS MOTION SEEKS ENTRY OF AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.

EMERGENCY RELIEF HAS BEEN REQUESTED. IF THE COURT CONSIDERS THE MOTION ON AN EMERGENCY BASIS, THEN YOU WILL HAVE LESS THAN 21 DAYS TO ANSWER. IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE RESPONSE. A HEARING WILL BE HELD ON THIS MATTER ON JANUARY 25, 2018 AT 2:30 P.M. (CT) BEFORE THE HONORABLE DAVID R. JONES, 515 RUSK STREET, COURTROOM 400, HOUSTON, TEXAS 77002.

REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.

Lockwood Holdings, Inc. and certain of its affiliates, the above-captioned debtors and debtors in possession (the "Debtors"), for their Emergency Motion for Interim and Final Orders (A) Authorizing Use of Cash Collateral Pursuant to Section 363(c) of the Bankruptcy Code and (B) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001 (the "Motion"), respectfully represent:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: Lockwood Holdings, Inc. (9726); LH Aviation, LLC (6984); Piping Components, Inc. (0197); Lockwood International, Inc. (8597); Lockwood Enterprises, Inc. (6504); LMG Manufacturing, Inc. (9468); and 7807 Eagle Lane, LLC (7382).

## JURISDICTION AND VENUE

1.      The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2.      Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The bases for the relief requested herein are sections 105(a), 361, 362, 363, 364, 503, and 507 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 4001, 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rules 4002-1 and 9013-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "Bankruptcy Local Rules"), and the United States Bankruptcy Court for the Southern District of Texas Procedures for Complex Chapter 11 Cases (the "Complex Case Procedures").

## PROCEDURAL HISTORY

4.      On January 18, 2018 (the "First Petition Date"), Lockwood Holdings, Inc., LH Aviation, LLC and Piping Components, Inc. filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  On January 24, 2018 (the "Second Petition Date," and together with January 18, 2018 the "Petition Dates"), Lockwood International, Inc., Lockwood Enterprises, Inc., LMG Manufacturing, Inc., and 7807 Eagle Lane, LLC filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

5.      Pursuant to sections 1107 and 1108 of the Bankruptcy Code, the Debtors each remain in possession of their property and each is managing its business as a debtor in possession.  No trustee, examiner, or official committee has been appointed.

## FACTUAL BACKGROUND

6.      Founded in 1977 in Houston, Texas, Lockwood International, Inc. ("LII") is an international supplier of valves and valve automation, offering pipe, valves, fittings and flanges

2

("PVF"), as well as engineered products for liquid handling and transfer, liquid management, as well as access and safety equipment.  LII primarily supplies customers in the petrochemical, oil and gas, and construction industries.  A chart reflecting the Lockwood organizational structure is attached hereto as Exhibit "D."

7.      On or about September 30, 2015, LII entered into an amended and restated lending relationship with Wells Fargo Bank, N.A. ("Wells Fargo") and Trustmark National Bank (together with Wells Fargo, the "Lenders").  On February 27, 2017, LII, Lockwood Enterprises, Inc. ("LEI"), LMG Manufacturing, Inc. ("LMI"), and Piping Components, Inc. ("PCI") entered into a Second Amendment to Amended and Restated Credit Agreement and Limited Waiver of Default (the "Credit Agreement") with the Lenders whereby the Lenders agreed to extend a revolving line of credit in the amount of $72 million.  In addition, Debtors Lockwood Holdings, Inc. ("LHI"), 7807 Eagle Lane, LLC ("7807"), and LH Aviation, LLC ("LHA") are guarantors on this line of credit, as is Michael F. Lockwood individually.  To further secure this indebtedness, the Debtors pledged all accounts receivable, equipment, and inventory as collateral to the Lenders.  The Debtors' secured credit facilities are discussed in greater detail below.

8.      On or around November 2016, LII began to experience financial difficulties.  As these difficulties became more pronounced, LII sought to work with the Lenders regarding the operation of the company going forward.  The Debtors and Lenders entered into a series of forbearance agreements to allow the Debtors' financial condition to stabilize while their advisors attempted to solicit offers for the sale of the business.

9.      On August 25, 2017, Hurricane Harvey struck the Gulf Coast inflicting billions of dollars of damage in the State of Texas, and effectively shutting down Houston's economy for weeks.  Areas affected by the hurricane represent half of LII's revenues and approximately 60%

of its profits.  Despite the state of the Gulf Coast and an inability to conduct business at the beginning of September 2017, LII was still able to generate revenue.  In addition, damages to LII's business interruption and materials were heavily insured, and estimates of these claims were a minimum of $6.2 million for business interruption and $7.3 million for material and property damage.

10.     Over the course of the prior year, the business relationship between the Debtors and the Lenders significantly soured.  On or around November 2017, the Lenders accelerated the indebtedness under the line of credit, directed LII's customers to pay their receivables into a new lockbox out of the Debtors' control, and prohibited the Debtors from paying any of their vendors or employees, effectively strangling the business.

11.     On November 30, 2017, LII filed its Original Complaint against the Lenders in the United State District Court for the Southern District of Texas, Galveston Division, alleging, among other things, conversion, negligence and gross negligence, breach of special relationship, tortious interference with an existing contract, tortious interference with prospective business relations with both vendors and clients, fraud, breach of duty of good faith and fair dealing, and unjust enrichment (the "Galveston Action").[2]  On December 26, 2017, the Lenders filed certain counterclaims against LII and third party claims against the remaining Debtors and their beneficial owner, Michael F. Lockwood for breach of contract and breach of guaranty.[3]  In addition, the Lenders sought a temporary restraining order ("TRO") and preliminary injunction against the Debtors and Mr. Lockwood, to prohibit them from allegedly interfering with the

---

[2] *See Lockwood International, Inc. v. Wells Fargo Bank, N.A., et al.*, No. 3:17-cv-00365 (S.D. Tex.) [Docket No. 1].
[3] *Id.* [Docket No. 5].

Lenders' rights to their collateral. True and correct copies of the complaint and the counterclaim/third party complaint are attached hereto as <u>Exhibits "C-1" and "C-2</u>," respectively.

12.     Prior to the commencement of the Galveston Action, on or about November 17, 2017, LII sent a letter to its various customers informing them that the remittance information had changed, and directing payments to LII to a new account maintained at Bank of America (the "<u>BofA Account</u>").  *See* Ex. 15 attached to Exhibit C- 2.  Thereafter, on or about December 1, 2017, December 11, 2017 and January 18, 2018, the Lenders sent a letter to the LII's various customers directing them to remit payment to a new Wells Fargo lock box over which the Debtors have no control or access (the "<u>New Wells Fargo Account</u>").  Monies remitted to the BofA Account since November 17, 2017, have been used solely and exclusively to operate the business, and for no other purpose.  As of the date of this Motion, approximately $750,000 is held in the BofA Account.  The Debtors will account to the Lenders for all sums that have passed through the BofA Account prior to the date of this Motion.  The Debtors are presently unsure how much the Lenders have collected in the New Wells Fargo Account through the date of this Motion and how such sums have been applied to the outstanding indebtedness.  The Debtors also believe that the Lenders have collected certain insurance payments (made on account of insurance policies held by the Debtors as a result of Hurricane Harvey).  It is presently unclear how those sums have been applied to the Debtors' outstanding indebtedness with the Lenders, if at all.

13.     On Monday, January 22, 2018, the District Court set a hearing on the Lenders' application for TRO for Thursday, January 25, 2018 at 8:30 a.m.  The Debtors approached the Lenders in an attempt to consensually avoid the TRO hearing and have a "soft landing" in

chapter 11.  It was only late in the day on Tuesday, January 23, 2018 that the Lenders declined to continue to TRO hearing.

14.     As a result of the foregoing, the Debtors commenced these chapter 11 proceedings to obtain breathing room to refine and effect a restructuring plan and maximize the value of their business and assets.  The use of cash collateral requested in this Motion is critical to those efforts.

15.     Despite the heretofore-degraded relationship among the Debtors and the Lenders, and although the Debtors believe there may be significant claims against the Lenders – not only as set forth in the Galveston Action, but also potentially for equitable subordination or other claims for relief – the Debtors are nonetheless willing to work constructively with the Lenders in the effort to maximize value.

16.     In the conduct of their operations, the Debtors incur expenses for the purchase of products, equipment and services from third parties, payroll, employee expenses, professionals, insurance, rent, utilities, telephone, supplies, taxes and other operational costs as set out in the proposed interim cash collateral budget (the "Interim Budget") annexed to the proposed interim cash collateral order (the "Proposed Interim Order") attached hereto as Exhibit "A."  The Debtors currently have no outside sources of funding available and must rely on the use of cash collateral to continue to conduct their business.  Without the use of cash collateral, the Debtors will be strangled and rendered unable to complete their pending jobs or perform many of the tasks which are necessary to maximize the value of their assets and effect a reorganization.

## SECURED CREDIT FACILITIES

**A.     The Revolving Loan.**

17.     Debtors LII, LEI, LMI, and PCI are borrowers under that certain Credit Agreement dated September 30, 2015 with Wells Fargo as agent, as the same may have been amended, restated, supplemented, or otherwise modified from time to time (collectively with any other agreements and documents executed or delivered therewith, the "Revolving Loan").  The Revolving Loan is guaranteed by all of the borrowers' domestic subsidiaries and the Debtors' beneficial owner, Michael F. Lockwood.  Pursuant to the Revolving Loan, the Lenders were allegedly granted a first priority security interest in substantially all of the assets of the borrowers.  In addition, Debtors LHI, 7807, and LHA executed secured guarantees in favor of the Lenders.  The Lenders also received a pledge of certain equity by Mr. Lockwood.  The Revolving Loan is cross-collateralized and cross-defaulted with the Term Loan (defined below). The current amount outstanding on the Revolving Loan is approximately $52 million.

**B.     The Term Loan**

18.     Debtor LHI is borrower under that certain Amended and Restated Credit Agreement dated February 6, 2015, with Wells Fargo as agent, as the same may have been amended, restated, supplemented, or otherwise modified from time to time (collectively with any other agreements and documents executed or delivered therewith, the "Term Loan").  The Term Loan is guaranteed by LII, LEI, LMI, and PCI, and the Debtors' beneficial owner, Michael F. Lockwood.  Similar to the Revolving Loan, the Term Loan is also allegedly secured by a first lien on substantially all assets of the borrower.  The Lenders also received a pledge of equity by Mr. Lockwood.  The Term Loan is cross-collateralized and cross-defaulted with the Revolving Loan.  The current amount outstanding on the Term Loan is approximately $27.5 million.

7

C.     **The Airplane Loan**

19.     Debtor LHA is the borrower under a secured loan ("Airplane Loan") with Wells Fargo Equipment Finance as lender to finance the purchase a plane to be used in the conduct of the Debtors' business.  LII services the debt for the plane.  The Debtors have previously used the plane to help manage their business interests, which are located around North America and overseas.  However, the plane is no longer essential to the Debtors' business model.  As a result, the plane was surrendered, has been listed for sale, and is presently located at Embraer Executive Jets Service in Ft. Lauderdale, Florida.  The current amount outstanding on the Airplane Loan is approximately $13.5 million.

20.     The Debtors have not yet conclusively determined whether the Lenders' liens are validly perfected and first priority on substantially all of their assets, or whether the perfection of certain liens on certain assets is deficient.  Moreover, the Debtors have not yet determined whether they will seek to subordinate the Lenders' claims and liens.  As a result, although the Debtors are willing to provide adequate protection to the Lenders pending the conclusion of their lien perfection and claim investigations, the Debtors reserve all rights in this regard.

## RELIEF REQUESTED

21.     The Debtors generate accounts, general intangibles, instruments, monies, payments and other rights arising out of their business, which likely constitute cash collateral of the Lenders within the meaning of Section 363 of the Bankruptcy Code (the "Cash Collateral"). Without the use of the Cash Collateral, the Debtors do not have sufficient available working capital with which to service and fill PVF orders from their customers, pay their employees, pay rent, and otherwise operate the business.  The Debtors' business is working capital intensive. Unless a PVF distributor (like the Debtors) can obtain credit from PVF manufacturers and

wholesalers, the distributor must pay for orders up front and carry the manufacturer's or wholesaler's price for the order until the distributor can obtain payment from the customer. Without access to credit or cash, a PVF distributor simply cannot operate.  As a result, access to Cash Collateral is absolutely critical to the Debtors' continuing survival as going concerns and ability to reorganize.  Accordingly, the Debtors have an immediate need to use Cash Collateral to manage and preserve the assets of its estate and to maximize recovery to creditors.

22.     By this Motion, the Debtors seek, among other things, the following:

a.      authorization for the Debtors to use Cash Collateral and the granting of adequate protection to the Lenders for, among other things, such use of Cash Collateral and all any diminution in value of the their respective interests in their Cash Collateral, whether existing on the Petition Dates or arising pursuant to this Order;

b.      pursuant to Bankruptcy Rule 4001, that an interim hearing (the "Interim Hearing") on the Motion be held before this Court to consider entry of this Order;

c.      authorization to vacate the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of this Order;

d.      that this Court schedule a final hearing (the "Final Hearing") to consider entry of a Final Order authorizing the use of Cash Collateral and the grant of adequate protection on a final basis; and,

e.      waiver of any applicable stay with respect to the effectiveness and enforceability of this Interim Order (including a waiver pursuant to Bankruptcy Rule 6004(h)).

23.     The Debtors' proposed Interim Budget, containing the Debtors' projection of its income and operating expenditures for the period of the first three weeks of the case, is annexed

to the Proposed Interim Order attached hereto.  The Debtors will submit a full 13-week budget to the Lenders and file same with the Court in advance of the Final Hearing on this Motion.

24.      Further, the Debtors seek to use not only the Cash Collateral remitted to the BofA Account but also the proceeds of any accounts receivable remitted by customers after the Petition Dates.  In that regard, Wells Fargo can either (i) direct customers to remit their payments to the BofA Account, (ii) give the Debtors access to the New Wells Fargo Account or (iii) transfer Cash Collateral to the Debtors on as-needed basis so that they may operate in accordance with the budget.  The Debtors are willing to work collaboratively with the Lenders to attempt to agree on a mechanism for the use of Cash Collateral that is not directly remitted to the BofA Account.[4]

## ARGUMENT & AUTHORITY

### A.      Adequate Protection and Cash Collateral

25.      Pursuant to section 363(c)(2) of the Bankruptcy Code, a debtor in possession may not use cash collateral without the consent of the secured party or court approval.  *See* 11 U.S.C. § 363(c)(2).  Section 363(e) of the Bankruptcy Code provides that, upon request of an entity that has an interest in property to be used by the debtor, the court shall prohibit or condition such use as is necessary to provide adequate protection of such interest.  *See* 11 U.S.C. § 363(e).

---

[4] The Debtors' accounts receivable and their proceeds, albeit the Lenders' collateral, are nonetheless property of the estate.  *See* 11 U.S.C. § 541; *see also United States v. Whiting Pools, Inc.*, 462 U.S. 198, 203 (1983); *Dewhirst v. Citibank (In re Contractors Equip. Supply Co.)*, 861 F.2d 241, 245 (9th Cir. 1988).  As a result, the automatic stay of section 362 prevents the continuing re-direction of the proceeds of accounts receivable and the deprivation of the Debtors' control thereover.  *See Whiting Pools*, 462 U.S. at 204 ("The creditor with a secured interest in property included in the estate must look to [section 362(e)] for protection, rather than the nonbankruptcy remedy of possession"); *In re Ramirez*, No. 12-34472, 2014 WL 2522148, at *12 (Bankr. S.D. Tex. June 4, 2014) ("The automatic stay prohibits the continued exercise of control over estate property"); *In re Weidenbenner*, 521 B.R. 74, 79–80 (Bankr. S.D.N.Y. 2014) (in the context of a freeze on a debtor's bank account, "Wells Fargo simply decided to place a freeze on property of the estate and unilaterally determined who was allowed to access it. The Court cannot think of a better example of "control over property of the estate"); *In re Ionosphere Clubs, Inc.*, 123 B.R. 166, 169 (S.D.N.Y. 1991) ("The filing of a bankruptcy petition ordinarily stays all actions by creditors of the debtor, including any action by a secured creditor to take possession of its collateral").

10

26.     What constitutes adequate protection must be decided on a case-by-case basis.  *In re Energy Partners, Ltd.*, 409 B.R. 211, 236 (Bankr. S.D. Tex. 2009) (citing *In re O'Connor*, 808 F.2d 1393, 1396 (10th Cir. 1987)); *Fed. Deposit Ins. Corp. v. Mathis (In re Mathis)*, 64 B.R. 279, 284 (N.D. Tex. 1986); *see also United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Associates, Ltd. (In re Timbers of Inwood Forest Associates, Ltd.)*, 793 F.2d 1380, 1397 (5th Cir. 1986), *aff'd*, 484 U.S. 365 (1988); *In re Martin*, 761 F.2d 472 (8th Cir. 1985).  The focus of adequate protection is to protect a secured creditor from diminution in the value of its interest in the particular collateral during the period of use.  *See United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365, 370 (1988).

27.     The Lenders assert liens on the Cash Collateral of the Debtors.  As adequate protection for the Debtors' use of the Cash Collateral, the Debtors propose to provide the Lenders with the following forms of adequate protections (the "Adequate Protection"), to the extent of any diminution in value of the Lenders' pre-Petition Dates security interests in the Debtors' pre-petition collateral, if any:

    f.   The Lenders shall be granted a security interest in the Debtors' post-petition assets with the same nature, extent, priority, and validity as the pre-petition security interest held by the Lenders.

    g.   The Lenders shall be granted, from and after the Petition Dates, replacement liens and security interests in all accounts and inventory acquired by the Debtors after the Petition Dates, specifically including all cash proceeds arising from such accounts and inventory acquired by the Debtors after the Petition Dates, with the same nature, extent, priority, and validity that any such liens asserted by the Lenders existed on the Petition Dates.

    h.   As of the Petition Dates, said replacement liens and security interests granted to the Lenders shall be valid, perfected, enforceable and effective against the Debtors, their successors and assigns, including any trustee or receiver in this or any superseding chapter 7 case, without any further action by Debtors or the

11

Lenders and without the execution, delivery, filing or recordation of any promissory notes, financing statements, security agreements or other documents. Notwithstanding the foregoing, this Interim Order shall be deemed a security agreement and may be filed as a financing statement and the Debtors shall execute and deliver such notes, security agreements, assignments, financing statements and other documents that the Lenders shall reasonably request to further evidence the liens and security interests granted hereby.

    i.    The Lenders shall have all the rights and remedies of a secured creditor in connection with the liens and security interests granted by this Order in all collateral, except to the extent that such rights and remedies may be affected by the Bankruptcy Code, and otherwise.

28.    Here, the proposed Adequate Protection, outlined hereinabove and set forth in the Proposed Order attached hereto as Exhibit "A," is sufficient to secure the Debtors' projected use of Cash Collateral because the projected diminution in value, if any, from the use of Cash Collateral is less than the value of the Adequate Protection proposed to the Lenders.  In fact, the use of Cash Collateral is itself a form of Adequate Protection as it will serve to allow the Debtors to complete orders, sell product and generate accounts receivable, thereby preserving the value of the Debtors' operations and assets as a going concern.

**B.**    **The Use of Cash Collateral Is Necessary to Preserve Assets of the Estate**

29.    It is essential that the Debtors immediately instill their vendors, service providers, customers and employees with confidence in their ability to transition their businesses smoothly to the chapter 11 process and to operate normally.  The use of Cash Collateral is necessary to continue, among other things, the orderly operation of the Debtors' businesses, and the maintenance of continued relationships with the Debtors' vendors and customers.

4425431.2

**C.      Interim Approval Should Be Granted**

30.      Pursuant to Bankruptcy Rule 4001(b)(2), a final hearing on a motion to use cash collateral may not be commenced before 14 days after service of that motion.  FED. R. BANKR. P. 4001.  The Court may, however, conduct a preliminary hearing before the expiration of that 14-day period and likewise, authorize the use of Cash Collateral, if necessary, to the extent necessary to avoid immediate and irreparable harm to a debtor's estate.  *Id.*  Section 363(c)(3) of the Bankruptcy Code authorizes the court to conduct a preliminary hearing and to authorize the use of cash collateral "if there is a reasonable likelihood that the [debtor] will prevail at the final hearing under [section 363(e) of the Bankruptcy Code]." 11 U.S.C. § 363(c)(3).  Furthermore, the Complex Case Procedures provide that "on motion by the Debtors, a hearing will routinely be conducted within three business days to consider. . . cash collateral use[.]" Complex Case Procedures, ¶ 4.A.

31.      In examining requests under this Bankruptcy Rule, courts apply the same business-judgment standard as is applicable to other business decisions.  *See In re Ames Dept. Stores, Inc.*, 115 B.R. 34, 38 (Bankr. S.D.N.Y. 1990); *In re N. Bay Gen. Hosp., Inc.*, No. 08-20368 (Bankr. S.D. Tex. July 11, 2008).  The Debtors submit that, for the reasons set forth herein, the immediate use of Cash Collateral, on an interim basis, as requested in this Motion is necessary to avert immediate and irreparable harm to the Debtors' businesses and their estates.

32.      The Debtors request that the Court conduct an emergency preliminary hearing on the Motion and authorize the Debtors, from and after the entry of the Interim Order until a Final Hearing on the relief requested herein, to use Cash Collateral, as necessary.  Such authorization will ensure that the Debtors maintain ongoing operations and will avoid immediate and

13

irreparable harm and prejudice to their estates and all parties in interest pending the Final Hearing.

**D.      Request for Final Hearing**

33.      As noted above, pursuant to Bankruptcy Rules 4001(b)(2), the Debtors respectfully request that the Court set a date for the Final Hearing at the earliest date and time of the Court's convenience that will ensure adequate notice and due process to all parties in interest.

34.      The Debtors respectfully request that they be authorized to serve a copy of the signed Interim Order, which fixes the time and date for the filing of objections, if any, by first-class mail on the Notice Parties (as defined below) and to any other party that has filed a request for notices with this Court and to any Official Committee and its counsel Counsel, if a committee is appointed. The Debtors respectfully request that the Court consider such notice of the Final Hearing to be sufficient notice under Bankruptcy Rule 4001.

<u>**CONFERENCE WITH LENDER**</u>

35.      As stated previously, the relationship among the Debtors and the Lenders is tenuous at this point, and the Lenders declined the Debtors' invitation to put off the TRO hearing for a short period of time while the parties worked toward a consensual chapter 11 filing and use of Cash Collateral.  As a result, the Debtors assume that that the Lenders do not consent to the use of Cash Collateral in the manner and on the terms set forth herein.

36.      Counsel for the Debtors will confer further with counsel to the Lenders in advance of the hearing on this Motion in an attempt to reach resolution of some, if not all, issues regarding the use of Cash Collateral.

14

## CHECKLIST

37.     The *Attorney Checklist Concerning Motion and Orders Pertaining to Use of Cash Collateral* in a format conforming to Appendix J of the Complex Case Procedures is attached hereto as Exhibit "B."

## EMERGENCY CONSIDERATION

38.     The Debtors respectfully request emergency consideration of this Motion in accordance with Bankruptcy Local Rule 9013-1(i).  The Debtors have no outside sources of funding available and must rely on the use of Cash Collateral to continue to service orders from their customers.  Without the use of Cash Collateral, the Debtors will be unable to complete their pending jobs or perform many of the tasks which are necessary to maximize the value of their assets and maintain the viability of the Debtors' operations. Accordingly, the Debtors request that the Court approve the relief requested in this Motion on an emergency basis.

## NOTICE

39.     The Debtors will provide notice of this Motion to: (a) the Office of the United States Trustee for the Southern District of Texas; (b) counsel to Wells Fargo as administrative agent under the Debtors' credit agreement; (c) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); and (d) any party that has requested notice pursuant to Bankruptcy Rule 2002.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court (i) enter the form of proposed Interim Order attached hereto, granting the relief requested herein, and (ii) grant such other relief as may be just and proper.

4425431.2

Respectfully submitted this 24th day of January, 2018.

**GRAY REED & McGRAW LLP**

By: _/s/ Jason S. Brookner_
    Jason S. Brookner
    Texas Bar No. 24033684
1300 Post Oak Blvd., Suite 2000
Houston, Texas 77056
Telephone:  (713) 986-7000
Facsimile:  (713) 986-7100
Email:      jbrookner@grayreed.com

-and-

    Lydia R. Webb
    Texas Bar No. 24083758
1601 Elm Street, Suite 4600
Dallas, Texas 75201
Telephone:  (214) 954-4135
Facsimile:  (214) 953-1332
Email:      lwebb@grayreed.com

**PROPOSED COUNSEL TO THE DEBTORS**

**CERTIFICATE OF SERVICE**

    I do hereby certify that on January 24, 2018, a true and correct copy of the foregoing pleading was served via CM/ECF to all parties authorized to receive electronic notice in this case, via electronic mail on counsel to the Lenders, and on the parties appearing on the attached Limited Service List via first class U.S. mail, postage prepaid.

    _/s/ Jason S. Brookner_
    Jason S. Brookner

**Limited Service List as of January 24, 2018**

## <u>30 LAGEST UNSECURED</u>
## <u>CREDITORS</u>

| | | |
|---|---|---|
| ALLIED FITTING LP<br>7200 Mykawa Road<br>Houston, TX 77033 | PK VALVE<br>192-1 Shinchon-Dong<br>Changtown-City, KN | ORION SPA<br>Via Caboto-34148<br>Trieste Italy |
| ASSOCIATED VALVE<br>703-19th Ave<br>Nisku AB T9E 7V9 | POYAM VALVES<br>Poligono Poyam Idiazabal Gipuzkoa<br>E-20213 Spain | GLOBAL STAINLESS SUPPLY<br>8900 Railwood Drive<br>Houston, TX 77078 |
| COR-PRO Sys. Operating, Ltd.<br>10555 West Little York<br>Houston, TX 77041 | PUSAN PIPE AMERICA INC<br>2100 Main Street<br>Suite 100<br>Irvine, CA 92614 | PERAR S.P.A.<br>Via Gringa 37 20027 Rescaldina<br>Milan Italy |
| FLOWSERVE - RALEIGH<br>1900 S. Saunders Street<br>Raleigh, NC 27603 | TIV VALVES SRL<br>Via Provinciale Saronnese<br>58 20027 Rescaldina MI<br>Italy | Zimmerman, Axelrad, Meyer<br>3040 Post Oak Blvd., Ste. 1300<br>Houston, TX 77056-6560 |
| Ilshin Forged Steel Valve Co.<br>1 NA 703, Shiwha Indl<br>Comples 1244-2<br>Chongwang-Dong | Tiv Valves SRL<br>Via Provinciale Saronnese, 58 20027<br>Rescaldina, Italy | Harris County<br>Tax<br>Assessor-Collector<br>P.O. Box 4622<br>Houston, TX 77210-4622 |
| J.D. Fields & Company Inc.<br>55 Waugh Dr., #1250<br>Houston, TX 77007 | TRUFLO RONA SRL<br>Via Stendahal, 65<br>Delaplane, VA 20144 | Canada Revenue Agency<br>275 Pope Road, Suite 103<br>Summerside, PE<br>C1N 6A2 |
| Jiangsu YDF Valve Co Ltd.<br>Shangzhuang Town<br>Fredericksburg, VA 22402 | TRUFLO RONA SRL<br>Via Grilli 2/A San Nicolo A Rewvvia<br>Bishopville, SC 29010 | Briggs & Veselka Co.<br>Nine Greenway Plaza<br>Suite 1700<br>Houston, TX 77046 |
| LVF Valve Solutions<br>Via G Mazzine 6 Partita<br>IVA 03076750169<br>Blacksburg, VA 24060 | TWC – The Valve Company<br>P.O. Box 95455<br>Grapevine, TX 76099-0752 | Hadassah Realty<br>(Wallisville)<br>17304 Preston Road, Suite 550<br>Dallas, TX 75252 |

**Limited Service List as of January 24, 2018**

| | | |
|---|---|---|
| O.M.B. - ITALY<br>Via Europa<br>24069 Cenate Sottto<br>Bergamo, Italy | USI Southwest<br>840 Gessner<br>Suite 600<br>Houston, TX 77024 | Sherwood Pointe LLC<br>5135 Bluebonnet Boulevard<br>Baton Rouge, LA 70809 |
| Orton Italiana SRL<br>Via Dei Bazachl 50<br>Piacenza Emilia-Romagna SC<br>29100 | VALVOSIDER<br>Via San Rocco, 2 13011<br>Borgosesia VC, Italy | Tri-State Supply Co.<br>P.O. Box 40512<br>Houston, TX 77240-0512 |

## **DEBTORS**

| | | |
|---|---|---|
| Lockwood International, Inc.<br>1002 Windfern Road, Bldg. B<br>Houston, TX 77064 | LH Aviation, LLC<br>1002 Windfern Road, Bldg. B<br>Houston, TX 77064 | LMG Manufacturing, Inc.<br>1002 Windfern Road, Bldg. B<br>Houston, TX 77064 |
| Lockwood Enterprises, Inc.<br>1002 Windfern Road, Bldg. B<br>Houston, TX 77064 | Lockwood Holdings, Inc.<br>1002 Windfern Road, Bldg. B<br>Houston, TX 77064 | Piping Components, Inc.<br>1002 Windfern Road, Bldg. B<br>Houston, TX 77064 |
| 7807 Eagle Lane, LLC<br>1002 Windfern Road, Bldg. B<br>Houston, TX 77064 | | |

## **DEBTORS COUNSEL**

| | |
|---|---|
| Jason S. Brookner<br>1300 Post Oak Blvd., Suite 2000<br>Houston, Texas 77056 | Lydia R. Webb<br>1601 Elm Street, Suite 4600<br>Dallas, Texas 75201 |

4447312.1

**Limited Service List as of January 24, 2018**

## EQUITY HOLDERS

Michael F. Lockwood
1002 Windfern Road, Bldg. B
Houston, TX 77064

## UNITED STATES TRUSTEE

Hector Duran
US Trustee
Office of the US Trustee
515 Rusk Ave., Ste 3516
Houston, TX 77002

## SECURED CREDITORS

Wells Fargo Equipment Finance, Inc.
P.O. Box 858178
Minneapolis, MN 55485

Sean B. Davis
WINSTEAD PC
600 Travis Street Suite 5200
Houston, Texas 77002

Annmarie Chiarello
WINSTEAD PC
500 Winstead Building
2728 N. Harwood Street
Dallas, Texas 75201

Wells Fargo
c/o Rakhee V. Patel WINSTEAD PC
500 Winstead Building
2728 N Harwood Street
Dallas, Texas 75201

4447312.1