# UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | § | |
| | § | Chapter 11 |
| LOCKWOOD HOLDINGS, INC., *et al.*,[1] | § | |
| | § | Case No. 18-30197 (DRJ) |
| Debtors. | § | |
| | § | Jointly Administered |
| | § | |
| | § | |

**DEBTORS' EMERGENCY APPLICATION (I) AUTHORIZING THE RETENTION OF GLASSRATNER ADVISORY & CAPITAL GROUP LLC TO PROVIDE CHIEF RESTRUCTURING OFFICER AND CERTAIN ADDITIONAL PERSONNEL, (II) DESIGNATING MARK SHAPIRO AS CHIEF RESTRUCTURING OFFICER EFFECTIVE AS OF JANUARY 26, 2018, AND (III) GRANTING RELATED RELIEF**

---

THIS APPLICATION SEEKS ENTRY OF AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE APPLICATION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOUR RESPONSE MUST STATE WHY THE APPLICATION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE APPLICATION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE APPLICATION AT THE HEARING.

EMERGENCY RELIEF HAS BEEN REQUESTED. IF THE COURT CONSIDERS THE APPLICATION ON AN EMERGENCY BASIS, THEN YOU WILL HAVE LESS THAN 21 DAYS TO ANSWER. IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE RESPONSE. A HEARING WILL BE HELD ON THIS MATTER ON FEBRUARY 7, 2018 AT 11:00 A.M. (CT) BEFORE THE HONORABLE DAVID R. JONES, 515 RUSK STREET, COURTROOM 400, HOUSTON, TEXAS 77002.

REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.

---

Lockwood Holdings, Inc. and certain of its affiliates, the above-captioned debtors and

debtors in possession (collectively, the "Debtors"), for their Emergency Application (the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: Lockwood Holdings, Inc. (9726); LH Aviation, LLC (6984); Piping Components, Inc. (0197); Lockwood International, Inc. (8597); Lockwood Enterprises, Inc. (6504); LMG Manufacturing, Inc. (9468); and 7807 Eagle Lane, LLC (7382).

"<u>Application</u>") (I) Authorizing the Retention of GlassRatner Advisory & Capital Group LLC ("<u>GlassRatner</u>") to Provide the Debtors with a Chief Restructuring Officer ("<u>CRO</u>") and Certain Additional Personnel ("<u>GlassRatner Personnel</u>"), (II) Designating Mark Shapiro as CRO Effective as of January 26, 2018, pursuant to that certain engagement letter agreement by and between the Debtors and GlassRatner, dated January 26, 2018, a copy of which is attached hereto as **<u>Exhibit A</u>** (the "<u>Engagement Agreement</u>"), and (III) Granting Related Relief, respectfully represent:

## JURISDICTION AND VENUE

1. The Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2. Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The bases for the relief requested herein are sections 105 and 363(b) of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and Rule 2016-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "<u>Bankruptcy Local Rules</u>").

## PROCEDURAL HISTORY

4. On January 18, 2018 (the "<u>First Petition Date</u>"), Lockwood Holdings, Inc., LH Aviation, LLC and Piping Components, Inc. filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. On January 24, 2018 (the "<u>Second Petition Date</u>," and together with January 18, 2018 the "<u>Petition Dates</u>"), Lockwood International, Inc., Lockwood Enterprises, Inc., LMG Manufacturing, Inc., and 7807 Eagle Lane, LLC filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

5. Pursuant to sections 1107 and 1108 of the Bankruptcy Code, the Debtors each

remain in possession of their property and each is managing its business as a debtor in possession. No trustee, examiner, or official committee has been appointed.

## FACTUAL BACKGROUND

6.      Founded in 1977 in Houston, Texas, Lockwood International, Inc. ("LII") is an international supplier of valves and valve automation, offering pipe, valves, fittings and flanges, as well as engineered products for liquid handling and transfer, liquid management, as well as access and safety equipment. LII primarily supplies customers in the petrochemical, oil and gas, and construction industries.

7.      A detailed description of the Debtors and their businesses, and the facts and circumstances supporting the Debtors' chapter 11 cases, are set forth in greater detail in the *Emergency Motion for Interim and Final Orders (A) Authorizing Use of Cash Collateral Pursuant to Section 363(c) of the Bankruptcy Code and (B) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001* [Docket No. 14].

## RELIEF REQUESTED

8.      By this Application, the Debtors seek entry of an order substantially in the form attached hereto as **Exhibit C**, pursuant to sections 105 and 363(b) of the Bankruptcy Code (a) authorizing (i) the retention of GlassRatner to provide the Debtors with a CRO as well as additional GlassRatner Personnel to assist the CRO in the performance of his duties, and (ii) designating Mark Shapiro as the Debtors' CRO (together with the GlassRatner Personnel, the "Engagement Personnel"), effective as of January 26, 2018, and (b) granting related relief. Attached hereto as **Exhibit B**, in support of the Application, is the Declaration of Mark Shapiro (the "Shapiro Declaration").

4453974.4

## **RETENTION OF GLASSRATNER**

9.      GlassRatner was retained by the Debtors on January 26, 2018, as the Debtors' chief restructuring officer, in order to assist the Debtors with evaluating their restructuring options and otherwise help maximize the value of the Debtors' business and estates for the benefit of their constituents.

10.     In consideration of the size and complexity of their businesses, as well as the exigencies of the circumstances, the Debtors require the assistance of a qualified and experienced chief restructuring officer with the resources, capabilities, and experience of GlassRatner, Mr. Shapiro and the Engagement Personnel.  GlassRatner performs critical services that complement the services provided by the Debtors' other professionals.

11.     The Debtors believe that GlassRatner, Mr. Shapiro and the Engagement Personnel are well qualified to provide restructuring management services that will assist and enhance the Debtors' efforts to maximize the value of their estates.  GlassRatner has a wealth of experience in providing restructuring advisory services, and enjoys an excellent reputation in the restructuring community for services it has rendered on behalf of debtors and creditors throughout the United States.

12.     GlassRatner's professionals have assisted, advised, and provided strategic advice to debtors, creditors, bondholders, investors, and other entities in numerous chapter 11 cases of similar size and complexity to the Debtors' chapter 11 cases.

13.     Mark Shapiro, a CPA and a Senior Managing Director at GlassRatner, will act as CRO for the Debtors.  Mr. Shapiro has more than 25 years of strategy, finance, and turnaround experience gained from holding corporate management roles and from advising companies in transition.   A list of Mr. Shapiro's representative engagements is set forth in the Shapiro

4

Declaration.

## SERVICES TO BE PROVIDED

14.     Subject to Court approval, the Debtors propose to retain GlassRatner to make available to the Debtors the Engagement Personnel, on the terms and conditions provided in the Engagement Agreement,[2] except as otherwise set forth herein or in any order granting this Application.  The terms and conditions of the Engagement Agreement were negotiated between the Debtors and GlassRatner at arm's-length and reflect the parties' mutual agreement as to the efforts that will be required for this engagement.

15.     Generally, the Engagement Personnel shall perform activities and services to oversee the Debtors' chapter 11 process and assist with maximizing the value of the Debtors' estates.  The CRO shall report to the Debtors' board of directors.  In addition to the ordinary course duties of a CRO, the Engagement Personnel may also work with the Debtors on the following:

(a)     Assisting in all aspects of the Debtors' business activities and operations, including budgeting, cash management and financial management;

(b)     Opening and closing bank accounts of the Debtors;

(c)     Negotiations regarding the relationship with the Debtors' lenders and investors;

(d)     Negotiations with vendors, customers and other creditors;

(e)     Hiring and terminating of employees of the Debtors;

(f)     Review of daily operating activity;

(g)     Preparing and holding the Debtors to the budgets prepared and submitted by the CRO;

(h)     Evaluating liquidity options including restructuring, refinancing, reorganizing, or a sale of the Debtors' assets pursuant to Section 363 of the Bankruptcy Code, subject to approval of the Bankruptcy Court, and develop a plan for same;

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Engagement Agreement.

4453974.4

(i)     Reviewing purchases and expenses;

(j)     Causing the Debtors to exercise the Debtors' rights under any agreements;

(k)     Acting as the Debtors representative in court hearings as appropriate;

(l)     Attend hearings;

(m)    Sign relevant petitions and schedules;

(n)     Develop and review monthly operating reports and ensure they are filed on a timely basis with the Bankruptcy Court;

(o)     Operate the business during the bankruptcy;

(p)     Pursue litigation and claims the estate may have; and

(q)     Act as the "Responsible Party" for all corporate decisions.

Such professional services are necessary to the Debtors' efforts to maximize value and to the ongoing operation and management of the Debtors' businesses while they are in chapter 11.

16.     When necessary, GlassRatner will inform the Debtors as to any changes to GlassRatner's staffing of the Engagement Personnel and will not add additional GlassRatner Personnel to the engagement without first notifying and consulting with the Debtors to obtain the Debtors' agreement that such resources are necessary and not duplicative of the services being provided by other employees or professionals.

## **GLASSRATNER'S DISINTERESTEDNESS**

17.     To the best of the Debtors' knowledge, and except to the extent disclosed herein and in the Shapiro Declaration, GlassRatner: (a) has no connection with the Debtors, their creditors or other parties in interest, or the attorneys or accountants of the foregoing, or the Office of the United States Trustee for the Southern District of Texas (the "U.S. Trustee") or any person employed in the Office of the U.S. Trustee; (b) does not hold any interest adverse to the Debtors' estates; and (c) believes it is a "disinterested person" as defined by section 101(14) of the Bankruptcy Code.

18.     Although the Debtors respectfully submit that the retention of GlassRatner is not

4453974.4

governed by section 327 of the Bankruptcy Code, GlassRatner ran a conflict check and to the best of its knowledge, does not have connections with creditors, equity security holders, or other parties in interest related to these chapter 11 cases. GlassRatner does not represent an interest materially adverse to the Debtors' estates and does not have a conflict of interest regarding the Debtors or these chapter 11 cases.

19.     To the extent that any new facts or relationships bearing on the matters described herein are discovered or arise, GlassRatner will promptly file supplemental disclosures.

## TERMS OF RETENTION

### I.     Professional Compensation and Expense Reimbursement

20.     GlassRatner's acceptance of this engagement is conditioned upon its ability to be retained and compensated in accordance with its customary terms and conditions and in accordance with the Engagement Agreement (all such proposed terms, the "Fee and Expense Structure"), described more fully below and in the Engagement Agreement, to which the Debtors respectfully refer the Court.

21.     GlassRatner and Mr. Shapiro were retained by the Debtors on January 26, 2018 as chief restructuring officer. The current hourly billing rates for Mr. Shapiro and the GlassRatner Personnel required for this assignment is as follows:

| | |
|---|---|
| Mark Shapiro, CRO | $450 per hour |
| Michael Thatcher | $395 per hour |
| Tess Wolf | $295 per hour |
| Todd Beresin | $275 per hour |
| Other staff as appropriate | ($195-$395 per hour) |

GlassRatner may adjust its rates from time to time with reasonable advance notice to the Debtors.

22.     In addition to compensation for professional services rendered by the Engagement

Personnel, GlassRatner will seek reimbursement for reasonable and necessary out-of-pocket expenses incurred in connection with these chapter 11 cases, including reasonable fees and expenses of its counsel incurred in connection with the enforcement of this Agreement. GlassRatner will not charge for travel time.

## II.      **Indemnification**

23.      As more fully described in the Engagement Agreement, the Debtors seek authority to indemnify GlassRatner and Mr. Shapiro to the same extent the Debtors indemnify their officers or directors.  Specifically, the Debtors have agreed to indemnify and hold harmless GlassRatner, its shareholders, officers, employees, agents, representatives, and subcontractors against any and all losses, claims, damages, liabilities, penalties, obligations, and expenses, including reasonable legal fees and expenses, based upon or arising out of GlassRatner's performance of services in these chapter 11 cases, except where any claims or losses are due to willful misconduct or gross negligence, as determined by a final judgment from which all appeals have been exhausted.

## FEES AND REPORTING

24.      Upon Court approval of the relief requested herein, GlassRatner will be retained to provide the Debtors with the necessary Engagement Personnel, and Mr. Shapiro will be designated as the Debtors' CRO pursuant to sections 363 and 105(a) of the Bankruptcy Code. Because GlassRatner is not being employed as a professional under section 327 of the Bankruptcy Code, the Debtors request that GlassRatner not be required to submit fee applications pursuant to sections 330 and 331 of the Bankruptcy Code.  Instead, GlassRatner will submit monthly invoices to the Debtors, and the Debtors seek authority to pay those invoices in the ordinary course of business.  In addition, GlassRatner will serve on counsel to Wells Fargo,

8

the U.S. Trustee, and any official committee appointed in these chapter 11 cases (collectively, the "Notice Parties") a quarterly report of compensation earned and expenses incurred (the "Compensation Report") summarizing the services provided, identifying compensation earned by each executive officer and staff employee, and itemizing expenses incurred.  The Notice Parties shall have twenty (20) days after the date on which each Compensation Report is served upon them to object.  Compensation and expenses identified in GlassRatner's Compensation Reports will be subject to review by the Court in the event an objection is filed.  GlassRatner will serve its first quarterly Compensation Report by May 20, 2018.

25.     GlassRatner did not receive a retainer and did not receive any prepetition payments from the Debtors in connection with these chapter 11 cases.

## NO DUPLICATION OF SERVICES

26.     The Debtors expect to apply to the Court for authorization to retain (a) Gray Reed & McGraw LLP as bankruptcy counsel and (b) Spagnoletti & Co. as special litigation counsel. However, the Engagement Personnel will complement, and not duplicate, the services to be rendered by these and any other professionals retained in these chapter 11 cases.  GlassRatner will work cooperatively with all of the Debtors' other professionals to ensure that value is maximized and that services are not duplicated.

## ARGUMENTS & AUTHORITIES

27.     The Debtors seek to employ and retain GlassRatner and appoint Mr. Shapiro as CRO pursuant to sections 363 and 105(a) of the Bankruptcy Code, effective as of January 26, 2018.  Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  Further, pursuant to section 105(a) of the Bankruptcy Code, the "court

may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

28.     Under applicable case law in this and other jurisdictions, a debtor's proposed use of its assets pursuant to section 363(b) of the Bankruptcy Code, other than in the ordinary course of business, is authorized when the debtor demonstrates a sound business purpose for the intended use. *See Institutional Creditors of Cont'l Air Lines, Inc. v. Cont'l Air Lines, Inc. (In re Cont'l Air Lines, Inc.)*, 780 F.2d 1223, 1226 (5th Cir. 1986) ("[I]mplicit in § 363(b) is the further requirement of justifying the proposed transaction. That is, for the debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors and equity holders, there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business") (citing *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983)); *see also In re ASARCO, L.L.C.*, 650 F.3d 593, 601 (5th Cir. 2011) ("The business judgment standard in section 363 is flexible and encourages discretion"); *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999) (use of assets outside the ordinary course of business permitted if "sound business purpose justifies such actions"); *Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) ("Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct").

29.     The retention of a CRO is necessary and appropriate under the circumstances. The Debtors' back office is understaffed and lacks both the manpower and experience to handle the extensive administrative matters required in a chapter 11 case, while at the same time operating the business and maximizing value.   An experienced professional in financial,

operational, and bankruptcy-specific matters is a necessary and integral part of maximizing value and ensuring efficiency and compliance with the Bankruptcy Code, the Bankruptcy Rules and the various bankruptcy reporting obligations imposed on debtors in possession.

30.     The decision to retain GlassRatner and employ Mr. Shapiro as CRO is a sound exercise of the Debtors' business judgment.  First, Mr. Shapiro has extensive experience as an advisor for many troubled companies and has extensive experience in chapter 11 cases.  The Debtors believe that Mr. Shapiro, in his capacity as CRO, and the GlassRatner Personnel, will provide services that will benefit the Debtors' estates and creditors.  In addition, GlassRatner has extensive experience in providing restructuring consulting services in chapter 11 proceedings and enjoys an excellent reputation as a restructuring firm throughout the United States.  Second, the economic terms of GlassRatner's retention are fair, reasonable, and beneficial to the Debtors' estates, and were negotiated at arm's-length.  The Debtors believe that the Fee and Expense Structure is comparable to those generally charged by restructuring advisors of similar stature to GlassRatner for similar engagements.  Given the numerous issues that GlassRatner may be required to address in the performance of its services hereunder, and the market prices for GlassRatner's services for engagements of this nature both in and out of court contexts, the Debtors believe that the Fee and Expense Structure is in line with market compensation for similar services and is fair and reasonable.

31.     For the reasons set forth herein, the Debtors respectfully submit that the retention of GlassRatner and the employment of Mr. Shapiro as the Debtors' CRO is a sound exercise of the Debtors' business judgment and in the best interests of all parties in interest in these chapter 11 cases.  The Debtors further believe that GlassRatner is well qualified and equipped to represent the Debtors in a cost-effective, efficient, and timely manner.  Accordingly, the Debtors

4453974.4

respectfully request that the Court authorize the Debtors to retain GlassRatner to provide the Debtors with a CRO, as well as any additional and necessary GlassRatner Personnel, and to designate Mr. Shapiro as the CRO to the Debtors, effective as of January 26, 2018, all pursuant to section 363 of the Bankruptcy Code.

32.     Courts in this District and in other jurisdictions have approved relief similar to that requested in this Application. *See, e.g., In re Buccaneer Res., LLC*, No. 14-60041, (DRJ) (Bankr. S.D. Tex. July 8, 2014) [Docket No. 191]; *In re Rotary Drilling Tools USA LLC*, No. 16-33433 (MI) (Bankr. S.D. Tex. Sept. 8, 2016) [Docket No. 146];  *In re ATP Oil & Gas Corp.*, No 12-36187 (MI) (Bankr. S.D. Tex. Sept. 27, 2012) [Docket No. 481]; *In re Alco Stores, Inc.*, No. 14-34941 (SGJ) (Bankr. N.D. Tex. Nov. 24, 2014) [Docket No. 379]; *In re Pilgrim's Pride Corp.*, No. 08-45664 (DML) (Bankr. N.D. Tex. Feb. 9, 2009) [Docket No. 825]; *In re Veritis Holdings, Inc.*, No. 12-12821 (CSS) (Bankr. D. Del. Nov. 20, 2012) [Docket No. 293].

33.     Based on the foregoing, the Debtors respectfully submit that the retention of GlassRatner, and the designation of Mark Shapiro as the Debtors' CRO on the terms set forth herein and in the Engagement Agreement, is necessary, appropriate, and in the best interest of the Debtors' estates, creditors, and other parties in interest and should be approved.

## EMERGENCY CONSIDERATION

34.     Pursuant to Bankruptcy Local Rule 9013-1(i), the Debtors respectfully request emergency consideration of this application pursuant to Bankruptcy Rule 6003, which empowers a court to grant relief within the first 21 days after the commencement of a chapter 11 case "to the extent that relief is necessary to avoid immediate and irreparable harm."  As set forth in this Application, the Debtors believe that the retention of GlassRatner and Mr. Shapiro as CRO is critical to the Debtors' orderly transition into chapter 11 and the continued viability of their

operations. Any delay in granting the relief requested could hinder the Debtors' operations and cause irreparable harm. Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 and, therefore, respectfully request that the Court approve the relief requested in this application on an emergency basis.

## WAIVER OF BANKRUPTCY RULE 6004(A) AND 6004(H)

35. To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

## NOTICE

36. The Debtors have provided notice of this Application to: (a) the Office of the United States Trustee for the Southern District of Texas; (b) counsel to Wells Fargo as administrative agent under the Debtors' credit agreement; (c) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); and (d) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtors respectfully submit that, in light of the nature of the relief requested, no other or further notice need be given.

## NO PRIOR REQUEST

37. No prior request for the relief sought in this Application has been made to this or any other court.

WHEREFORE, the Debtors respectfully request entry of an order, substantially in the form attached hereto as **Exhibit C**, granting the relief requested herein and granting such other relief as is just and proper.

4453974.4

Respectfully submitted this 31st day of January, 2018.

**GRAY REED & McGRAW LLP**

By:  */s/ Jason S. Brookner*

    Jason S. Brookner
    Texas Bar No. 24033684
1300 Post Oak Blvd., Suite 2000
Houston, Texas 77056
Telephone:  (713) 986-7000
Facsimile:  (713) 986-7100
Email:      jbrookner@grayreed.com

-and-

    Lydia R. Webb
    Texas Bar No. 24083758
1601 Elm Street, Suite 4600
Dallas, Texas 75201
Telephone:  (214) 954-4135
Facsimile:  (214) 953-1332
Email:     lwebb@grayreed.com

**PROPOSED COUNSEL TO THE DEBTORS**

## CERTIFICATE OF SERVICE

I do hereby certify that on January 31, 2018, a true and correct copy of the foregoing pleading was served via CM/ECF to all parties authorized to receive electronic notice in this case, via electronic mail on counsel to the Wells Fargo as administrative agent, and on the parties appearing on the attached Limited Service List via first class U.S. mail, postage prepaid (or as otherwise indicated).

*/s/ Jason S. Brookner*
Jason S. Brookner

**<u>EXHIBIT A</u>**

**Engagement Agreement**



## CHIEF RESTRUCTURING OFFICER
## ENGAGEMENT LETTER AGREEMENT

January 26, 2018

<u>Via Electronic Mail Delivery</u>

Mr. Michael Lockwood, CEO
Lockwood Holdings Inc., et al.
10060 Windfern Road
Houston, TX 77064

**RE:**   **Engagement Letter to serve as the Chief Restructuring Officer for the Debtors**

Dear Mike,

This letter confirms and sets forth the terms and conditions of the engagement between GlassRatner Advisory & Capital Group, LLC ("GlassRatner") and Lockwood Holdings Inc., et al. ("Debtors"), Case No. 18-30197, presiding before the United States Bankruptcy Court for the Southern District of Texas ("Bankruptcy Court"), including the scope of the services to be performed and the basis of compensation for those services. Upon execution of this letter by each of the parties below, this letter will constitute an agreement between the Debtors and GlassRatner. It is understood that our retention will be subject to Bankruptcy Court approval.

1.   <u>Description of Services</u>

    a.   <u>Officers</u>. In connection with this engagement, GlassRatner shall make available to the Debtors, Mark Shapiro to serve as the Chief Restructuring Officer of the Debtors (the "CRO"), reporting to the Board of Directors. In addition, GlassRatner shall provide the services of other GlassRatner personnel at the direction of the CRO.

    b.   <u>Duties and Powers</u>.

        (i)   The CRO shall be an officer of the Debtors and shall have the duties similar to that of a Chief Executive Officer including, but not limited to: (a) assisting in all aspects of the Debtors' business activities and operations, including budgeting, cash management and financial

Page 1

management; (b) open and close bank accounts of the Debtors; (c) negotiations regarding the relationship with the Debtors' lenders, and investors (d) negotiations with vendors, customers and other creditors (e) hiring and terminating of employees of the Debtors, (f) review of daily operating activity, (g) preparing and holding the Debtors to the budgets prepared and submitted by the CRO (h) evaluating liquidity options including restructuring, refinancing, reorganizing, or a sale of the Debtors' assets pursuant to Section 363 of the Bankruptcy Code, subject to approval of the Bankruptcy Court; (i) reviewing purchases and expenses; (j) cause the Debtors to exercise the Debtors' rights under any agreements; and (k) acting as the Debtors representative in court hearings as appropriate.

(ii)    The CRO will attend hearings, sign relevant petitions and schedules, develop and review monthly operating reports and ensure they are filed on a timely basis with the Bankruptcy Court, operate the business during the bankruptcy, develop a plan to sell the assets and/or reorganize the Debtors, pursue litigation and claims the estate may have and act as the "Responsible Party" for all corporate decisions.

d.    <u>Employment by GlassRatner.</u>  The CRO will continue to be employed by GlassRatner and while rendering services to the Debtors continue to work with other personnel at GlassRatner in connection with other unrelated matters, which will not unduly interfere with services pursuant to this engagement.  With respect to the Debtors, however, the CRO shall operate pursuant to the terms of this Agreement.

e.    <u>Projections: Reliance: Limitation of Duties</u>.  Debtors understand that the services to be rendered by the CRO may include the preparation of projections and other forward-looking statements, and that numerous factors can affect the actual results of the Debtors' operations, which may materially and adversely differ from those projections and other forward-looking statements.  In addition, the CRO will be relying on information provided by other members of the Debtors' management in the preparation of those projections and other forward-looking statements.  Neither the CRO nor GlassRatner makes any representation or guarantee that a refinancing of obligations to the Debtors' secured lender will occur, or that the Debtors' secured lender will continue to provide financing or that the business will achieve or not achieve a particular result. Further, no rep that any restructuring plan formulated for the Debtors by, or selected by the CRO, will be more successful than all other possible restructuring alternatives or that any proposed restructuring alternative will be accepted by any of the Debtors' creditors and other constituents.

2.    <u>Compensation</u>

a.    GlassRatner will be paid by the Debtors for the services of the CRO and any GlassRatner staff required for the assignment as follows:

Page 2

      i.   Mark Shapiro, CRO $450 per hour

     ii.   Michael Thatcher $395 per hour

    iii.   Tess Wolf $295 per hour

    iv.   Todd Beresin $275 per hour

     v.   Other staff as appropriate ($195-$395 per hour)

b.    Travel time incurred by the CRO in connection with this engagement shall not be billed.

c.    GlassRatner will be reimbursed by the Debtors for the reasonable out-of-pocket expenses incurred in connection with this engagement. In addition, GlassRatner shall be reimbursed by the Debtors for the reasonable fees and expenses of its counsel incurred in connection with the enforcement of this Agreement.

d.    As is customary for an engagement of this type, GlassRatner requires a retainer of $25,000 and such retainer will be held and applied to the last invoice or invoices. It is understood that post-petition services and payments, including the retainer, fees and expenses due to GlassRatner will be billed on a bi-weekly basis and be due and payable no later than Friday for the work incurred in and billed for the prior billing period.

3.    <u>Termination -</u> This Agreement can be terminated by either party with 30 days written notice. Any professional services provided during the period after notice but before the end of the term are the liability of the Debtors.

4.    <u>No Audit, Duty to Update</u>

It is understood that the CRO and GlassRatner are not being requested to perform an audit, review or compilation, or any other type of financial statement reporting engagement that is subject to the rules of the AICPA, SEC or other state or national professional or regulatory body. They are entitled to rely on the accuracy and validity of the data disclosed to them or supplied to them by employees and representatives of the Debtors. The CRO and GlassRatner are under no obligation to update data submitted to them or review any other areas.

5.    <u>No Third Party Beneficiary</u>.

The Debtors acknowledge that all advice (written or oral) given by GlassRatner to the Debtors in connection with this engagement is intended solely for the benefit and use of the Debtors (limited to the shareholders of the Debtors and management) in considering the matters to which this engagement relates. The Debtors agrees that no such advice shall be used for any other purpose or reproduced, disseminated, quoted or referred to at any time in any manner or for any purpose other than accomplishing the tasks referred to herein without GlassRatner's prior approval (which shall not be unreasonably withheld), except as required by law.

6.    <u>Conflicts</u>.

GlassRatner is not currently aware of any relationship that would create a conflict of interest with the Debtors or those parties-in-interest of which Debtors have made us aware.   Because GlassRatner is a consulting firm that serves Companies on an international basis in numerous cases, both in and out of court, it is possible that GlassRatner may have rendered services to or have business associations with other entities or people which had or have or may have relationships with the Debtors, including creditors of the Debtors.

7.    <u>Confidentiality / Non-Solicitation</u>.

The CRO and GlassRatner shall keep as confidential all non-public information received from the Debtors in conjunction with this engagement, except (i) as requested by the Debtors or its legal counsel; (ii) as required by legal proceedings or (iii) as reasonably required in the performance of this engagement.   All obligations as to non-disclosure shall cease as to any part of such information to the extent that such information is or becomes public other than as a result of a breach of this provision.

8.    <u>Indemnification</u>.

The Debtors shall indemnify GlassRatner and the CRO to the same extent as the most favorable indemnification it extends to its officers or directors, whether under the Debtors' bylaws, its certificate of incorporation, or otherwise, and no reduction or termination in any of the benefits provided under any such indemnities shall affect the benefits provided to GlassRatner and the CRO.   The CRO shall be covered as an officer under the Debtors' existing director and officer liability insurance policies if such policy is in effect and the Debtors shall also maintain any such insurance coverage for the CRO for a period of not less than two years following the date of the termination of such officer's services hereunder.   The attached indemnity provisions are incorporated herein and the termination of this agreement or the engagement shall not affect those provisions, which shall survive termination.   The provisions of this section 8 are in the nature of contractual obligations and no change in applicable law or the Debtors' charters, bylaws, or other organizational documents or policies shall affect the CRO's or GlassRatner's rights hereunder.

9.    <u>Miscellaneous</u>.

This Agreement shall (together with the attached indemnity provisions) be: (a) governed and construed in accordance with the laws of New York, regardless of the laws that might otherwise govern under applicable principles of conflict of laws thereof; (b) incorporates the entire understanding of the parties with respect to the subject matter thereof; and (c) may not be amended or modified except in writing executed by each of the signatories hereto.  The Debtors and GlassRatner agree to waive trial by jury in any action, proceeding or counterclaim brought by or on

behalf of the parties hereto with respect to any matter relating to or arising out of the performance or non-performance of the Debtors or GlassRatner hereunder.

If the foregoing is acceptable to you, kindly sign the enclosed copy to acknowledge your agreement with its terms.

Very truly yours,

**GLASSRATNER ADVISORY & CAPITAL GROUP, LLC,** a Georgia Limited Liability Company

By: _____
Name:  Mark Shapiro

Accepted and Agreed:

_____
Authorized Member of Board of Directors

Page 5

## INDEMNITY PROVISIONS

A.      Lockwood Holdings Inc., et al. (the "Debtors") agrees to indemnify and hold harmless each of GlassRatner Advisory & Capital, LLC ("GlassRatner"), GlassRatner's shareholders, officers, employees, agents, representatives and subcontractors (each, an "Indemnified Party" and collectively, the "Indemnified Parties") against any and all losses, claims, damages, liabilities, penalties, obligations and expenses, including the costs for counsel or others (including employees of GlassRatner, based on their then current hourly billing rates) in investigating, preparing or defending any action or claim, whether or not in connection with litigation in which any Indemnified Party is a party, or enforcing the Agreement (including these indemnity provisions), as and when incurred, caused by, relating to, based upon or arising out of (directly or indirectly) the Indemnified Parties' acceptance of or the performance or nonperformance of their obligations under the Agreement; provided, however, such indemnity shall not apply to any such loss, claim, damage, liability or expense to the extent it is found in a final judgment by a court of competent jurisdiction (not subject to further appeal) to have resulted from such Indemnified Party's gross negligence or willful misconduct.  The Debtors also agrees that no Indemnified Party shall have any liability (whether direct or indirect, in contract or tort or otherwise) to the Debtors for or in connection with the engagement of GlassRatner, except to the extent that any such liability for losses, claims, damages, liabilities or expenses are found in a final judgment by a court of competent jurisdiction (not subject to further appeal) to have resulted from such Indemnified Party's gross negligence or willful misconduct.  The Debtors further agrees that it will not, without the prior consent of an Indemnified Party, settle or compromise or consent to the entry of any judgment in any pending or threatened claim, action, suit or proceeding in respect of which such Indemnified Party seeks indemnification hereunder (whether or not such Indemnified Party is an actual party to such claim, action, suit or proceedings) unless such settlement, compromise or consent includes an unconditional release of such Indemnified Party from all liabilities arising out of such claim, action, suit or proceeding.

B.      These indemnification provisions shall be in addition to any liability, which the Debtors may otherwise have to the Indemnified Parties. In the event that, at any time whether before or after termination of the engagement or the Agreement, as a result of or in connection with the Agreement or GlassRatner's and its personnel's role under the Agreement, GlassRatner or any Indemnified Party is required to produce any of its personnel (including former employees) or for examination, deposition or other written, recorded or oral presentation, or GlassRatner or any of its personnel (including former employees) or any other Indemnified Party is required to produce or otherwise review, compile, submit, duplicate, search for, organize or report on any material within such Indemnified Party's possession or control pursuant to a subpoena or other legal (including administrative) process, the Debtors will reimburse the Indemnified Party for its out of pocket expenses, including the reasonable fees and expenses of its counsel, and will compensate the Indemnified Party for the time expended by its personnel based on such personnel's then current hourly rate.

C.      If any action, proceeding or investigation is commenced to which any Indemnified Party proposes to demand indemnification hereunder, such Indemnified Party will notify the Debtors with reasonable promptness; provided, however, that any failure by such Indemnified Party to notify the Debtors will not relieve the Debtors from its obligations hereunder, except to the extent that such failure shall have actually prejudiced the defense of such action.  The Debtors shall promptly pay expenses reasonably incurred by any Indemnified Party in defending, participating in, or settling any action, proceeding or investigation in which such Indemnified Party is a party or is threatened to be made a party or otherwise is participating in by reason of the engagement under the Agreement, upon submission of invoices therefor, whether in advance of the final

disposition of such action, proceeding, or investigation or otherwise. Each Indemnified Party hereby undertakes, and the Debtors hereby accepts its undertaking, to repay any and all such amounts so advanced if it shall ultimately be determined that such Indemnified Party is not entitled to be indemnified therefor. If any such action, proceeding or investigation in which an Indemnified Party is a party is also against the Debtors, the Debtors may, in lieu of advancing the expenses of separate counsel for such Indemnified Party, provide such Indemnified Party with legal representation by the same counsel who represents the Debtors, provided such counsel is reasonably satisfactory to such Indemnified Party, at no cost to such Indemnified Party; provided, however, that if such counsel or counsel to the Indemnified Party shall determine that due to the existence of actual or potential conflicts of interest between such Indemnified Party and the Debtors such counsel is unable to represent both the Indemnified Party and the Debtors, then the Indemnified Party shall be entitled to use separate counsel of its own choice (and the Debtors shall be liable to pay for the reasonable fees and expenses of only one law firm for all of the Indemnified Parties, collectively), and the Debtors shall promptly advance its reasonable expenses of such separate counsel upon submission of invoices therefor. Nothing herein shall prevent an Indemnified Party from using separate counsel of its own choice at its own expense. The Debtors will be liable for any settlement of any claim against an Indemnified Party made with the Debtors' written consent, which consent shall not be unreasonably withheld.

D.       In order to provide for just and equitable contribution if a claim for indemnification pursuant to these indemnification provisions is made but it is found in a final judgment by a court of competent jurisdiction (not subject to further appeal) that such indemnification may not be enforced in such case, even though the express provisions hereof provide for indemnification, then the relative fault of the Debtors, on the one hand, and the Indemnified Parties, on the other hand, in connection with the statements, acts or omissions which resulted in the losses, claims, damages, liabilities and costs giving rise to the indemnification claim and other relevant equitable considerations shall be considered; and further provided that in no event will the Indemnified Parties' aggregate contribution for all losses, claims, damages, liabilities and expenses with respect to which contribution is available hereunder exceed the amount of fees actually received by the Indemnified Parties pursuant to the Agreement. No person found liable for a fraudulent misrepresentation shall be entitled to contribution hereunder from any person who is not also found liable for such fraudulent misrepresentation.

E.       In the event the Debtors and GlassRatner seek judicial approval for the assumption of the Agreement or authorization to enter into a new engagement agreement pursuant to either of which GlassRatner would continue to be engaged by the Debtors, the Debtors shall promptly pay expenses reasonably incurred by the Indemnified Parties, including attorneys' fees and expenses, in connection with any motion, action or claim made either in support of or in opposition to any such retention or authorization, whether in advance of or following any judicial disposition of such motion, action or claim, promptly upon submission of invoices therefor and regardless of whether such retention or authorization is approved by any court. The Debtors will also promptly pay the Indemnified Parties for any expenses reasonable incurred by them, including attorneys' fees and expenses, in seeking payment of all amounts owed it under the Agreement (or any new engagement agreement) whether through submission of a fee application or in any other manner, without offset, recoupment or counterclaim, whether as a secured claim, an administrative expense claim, an unsecured claim, a prepetition claim or a post-petition claim.

F.       Neither termination of the Agreement nor termination of GlassRatner's engagement nor the conversion of the existing case to one under Chapter 7 of the United States Bankruptcy Code shall affect these indemnification provisions, which shall hereafter remain operative and in full force and effect. No party shall be entitled to seek or receive an award of special, punitive or

consequential damages pursuant to the Agreement or by reason of any breach or default under the Agreement.

G.      The rights provided herein shall not be deemed exclusive of any other rights to which the Indemnified Parties may be entitled under the certificate of incorporation or bylaws of the Debtors, any other agreements, any vote of stockholders or disinterested directors of the Debtors, any applicable law or otherwise.

## **EXHIBIT B**

**Shapiro Declaration**

**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § § § | Chapter 11 |
| LOCKWOOD HOLDINGS, INC., *et al.*,[1] | § § | Case No. 18-30197 (DRJ) |
| Debtors. | § § § § | Jointly Administered |

**DECLARATION OF MARK SHAPIRO IN SUPPORT OF THE DEBTORS'
APPLICATION (I) AUTHORIZING THE RETENTION OF GLASSRATNER
ADVISORY & CAPITAL GROUP LLC TO PROVIDE CHIEF RESTRUCTURING
OFFICER AND CERTAIN ADDITIONAL PERSONNEL, (II) DESIGNATING MARK
SHAPIRO AS CHIEF RESTRUCTURING OFFICER EFFECTIVE AS OF
JANUARY 26, 2018, AND (III) GRANTING RELATED RELIEF**

Mark Shapiro declares under penalty of perjury, pursuant to 28 U.S.C. § 1746, as follows:

1.        I am a CPA and a Senior Managing Director at GlassRatner Advisory & Capital Group LLC ("GlassRatner" or the "Firm").  I am duly authorized to execute this declaration on behalf of GlassRatner, and in support of the Application (the "Application") filed by Lockwood Holdings, Inc. and certain of its affiliates, the above-captioned debtors and debtors in possession (the "Debtors"), (I) Authorizing the Retention of GlassRatner to Provide the Debtors with a CRO and Certain Additional Personnel, (II) Designating Mark Shapiro as CRO Effective as of January 26, 2018, and (III) Granting Related Relief.[2]  I submit this declaration in support of the Application and to make necessary disclosures. Unless otherwise stated in this declaration, I have personal knowledge of the facts set forth herein.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: Lockwood Holdings, Inc. (9726); LH Aviation, LLC (6984); Piping Components, Inc. (0197); Lockwood International, Inc. (8597); Lockwood Enterprises, Inc. (6504); LMG Manufacturing, Inc. (9468); and 7807 Eagle Lane, LLC (7382).

[2] Capitalized terms not otherwise defined herein will have the meanings ascribed to them in the Application.

## THE FIRM'S QUALIFICATIONS

2.      The Firm is a national specialty financial advisory services firm, focused in the areas of bankruptcy and restructuring, mergers and acquisitions, and forensic accounting, primarily in distressed or difficult situations.  The Firm is a member of BTG Global Advisory, one of the world's largest specialist independent insolvency and restructuring alliances.  The Firm's professionals have assisted, advised, and provided strategic advice to debtors, creditors, bondholders, investors, and other entities in numerous chapter 11 cases of similar size and complexity to the Debtors' chapter 11 cases.  Examples of the Firm's recent engagements as restructuring or crisis managers include the following:

- CRO for distressed healthcare services provider
- CRO for distressed merchant payment processor
- CAO and estate representative for off-airport parking operator in bankruptcy
- Financial advisor to the debtors, online pharmaceutical retailer and services provider, in bankruptcy
- Financial advisor and estate representative for media company in bankruptcy
- Financial advisor for distressed provider of wireless telecom services
- CEO for $200 AUM, highly-levered, private equity-sponsored investor in tax lien assets
- CFO for a $5 billion, 2,000 location general merchandise retailer
- CFO for $15 billion distribution company operating in bankruptcy
- CFO for $80 million distributor of plumbing, pipe, valves, fittings and industrial supplies
- CFO for $300 million highly-levered, private equity-sponsored consumer electronics retailer
- CFO for $2 billion international parking operator
- Interim CFO for privately-held apparel retailer

3.      GlassRatner Personnel will work closely with the Debtors' management and other professionals throughout the chapter 11 process to maximize value and to ensure there is no duplication of services.  By virtue of its restructuring personnel's expertise, the Firm is uniquely well-qualified to provide services to and represent the Debtors' interests in these chapter 11

4453974.4

cases.

## SERVICES TO BE PROVIDED

4.      In addition to the ordinary course duties of a CRO, the Engagement Personnel may work with the Debtors to do the following:

(a)     Assisting in all aspects of the Debtors' business activities and operations, including budgeting, cash management and financial management;

(b)     Opening and closing bank accounts of the Debtors;

(c)     Negotiations regarding the relationship with the Debtors' lenders and investors;

(d)     Negotiations with vendors, customers and other creditors;

(e)     Hiring and terminating of employees of the Debtors;

(f)     Review of daily operating activity;

(g)     Preparing and holding the Debtors to the budgets prepared and submitted by the CRO;

(h)     Evaluating liquidity options including restructuring, refinancing, reorganizing, or a sale of the Debtors' assets pursuant to Section 363 of the Bankruptcy Code, subject to approval of the Bankruptcy Court, and develop a plan for same;

(i)     Reviewing purchases and expenses;

(j)     Causing the Debtors to exercise the Debtors' rights under any agreements;

(k)     Acting as the Debtors representative in court hearings as appropriate.

(l)     Attend hearings;

(m)     Sign relevant petitions and schedules;

(n)     Develop and review monthly operating reports and ensure they are filed on a timely basis with the Bankruptcy Court;

(o)     Operate the business during the bankruptcy;

(p)     Pursue litigation and claims the estate may have; and

(q)     Act as the "Responsible Party" for all corporate decisions.

## PROFESSIONAL COMPENSATION

5.      In consideration of the services to be provided by the Firm, the Debtors have, in addition to the indemnification provisions, agreed to the fee and expense structure set forth in the

4

Engagement Agreement.  The current hourly billing rates, based on the position of the particular Engagement Personnel are subject to the following ranges:

| | |
|---|---|
| Mark Shapiro, CRO | $450 per hour |
| Michael Thatcher | $395 per hour |
| Tess Wolf | $295 per hour |
| Todd Beresin | $275 per hour |
| Other staff as appropriate | ($195-$395 per hour) |

The Firm may adjust its rates from time to time with reasonable advance notice to the Debtors.

6.      The Fee and Expense Structure is consistent with the Firm's normal and customary billing practices for comparably sized and complex cases and transactions, both in and out of court.  The Engagement Agreement was negotiated at arm's-length and in good faith, and the Firm believes that the Fee and Expense Structure is both reasonable and consistent with the market for such services.

7.      In light of the foregoing, and given the issues that the Firm may be required to address in the performance of its services, the Firm believes that the Fee and Expense Structure is fair, reasonable, and market-based.

8.      Upon Court approval of the relief requested in the Application, the Firm will be retained to provide the Debtors with the necessary Engagement Personnel and Mr. Shapiro will be designated as the Debtors' CRO pursuant to sections 363 and 105(a) of the Bankruptcy Code. Because the Firm is not being employed as a professional under section 327 of the Bankruptcy Code, the Debtors has requested, and the Firm requests, that the Firm not be required to submit fee applications pursuant to sections 330 and 331 of the Bankruptcy Code.  Instead, the Firm will submit monthly invoices to the Debtors, notwithstanding any language to the contrary in the Engagement Agreement, commencing with the post-petition period ending April 30, 2018.  By the Application, the Debtors seek to pay these invoices in the ordinary course of their business. In addition, the Firm will serve on counsel to Wells Fargo, the U.S. Trustee, and any official

committee appointed in these chapter 11 cases (collectively, the "Notice Parties") a quarterly report of compensation earned and expenses incurred (the "Compensation Report") summarizing the services provided, identifying compensation earned by each executive officer and staff employee, and itemizing expenses incurred.  The Notice Parties shall have twenty (20) days after the date on which each Compensation Report is served upon them to object. Compensation and expenses identified in the Firm's Compensation Reports will be subject to review by the Court in the event an objection is filed. The Firm will file its first quarterly Compensation Report by May 20, 2018.

## **INDEMNIFICATION**

9.      As more fully described in the Engagement Agreement, the Debtors have agreed to indemnify and hold harmless the Firm and the Engagement Personnel from any and all losses, claims, damages, penalties, obligations, expenses, or liabilities, including reasonable legal fees and expenses, based upon or arising out of the Firm's performance of services in these chapter 11 cases, except where any claims or losses are due to willful misconduct, or gross negligence, as determined by a final judgment from which all appeals have been exhausted.

## **THE FIRM'S DISINTERESTEDNESS**

10.      In connection with its proposed retention by the Debtors in these chapter 11 cases, the Firm undertook to determine whether it had any conflicts or other relationships that might cause it not to be disinterested or to hold or represent an interest adverse to the Debtors. Specifically, the Firm obtained from the Debtors or their representatives the names of individuals and entities that may be parties in interest in these chapter 11 cases ("Potential Parties in Interest").  Such parties are listed on **Schedule 1** attached hereto.  A search was performed for connections to the Potential Parties in Interest, and based on that review, the Firm represents that,

6

to the best of its knowledge, the Firm knows of no fact or situation that would represent a conflict of interest for the Firm with regard to the Debtors.

11.    The Firm and the GlassRatner Personnel are advisors and crisis managers providing services and advice in many areas, including restructuring and distressed debt.  As part of its diverse practice, the Firm appears in numerous cases, proceedings, and transactions involving many different attorneys, accountants, investment bankers, and financial consultants, some of whom may represent claimants and parties in interest in these chapter 11 cases.  Further, the Firm may have in the past been, currently be, and may in the future be represented by several attorneys and law firms, some of whom may be involved in these chapter 11 cases.  In addition, the Firm has been in the past, is currently, and likely will be in the future, engaged in matters unrelated to the Debtors or these chapter 11 cases in which it works with or against other professionals involved in these cases.  Moreover, the Firm might have referred work to other professionals who are retained in these chapter 11 cases.  Likewise, certain such professionals who are retained in these chapter 11 cases might have referred work to the Firm.  To the best of my knowledge, information, and belief, insofar as I have been able to ascertain after reasonable inquiry, none of these business relations constitute interests adverse to the Debtors.

12.    To the best of my knowledge, information and belief, insofar as I have been able to ascertain after reasonable inquiry, neither I nor any member of the engagement team: (a) have any connection with the U.S. Trustee, or any employee in the Office of the U.S. Trustee; or (b) are related or connected to any United States Bankruptcy Judge for the Southern District of Texas, or any of the District Judges for the Southern District of Texas who handle bankruptcy cases.

13.    To the best of my knowledge, information, and belief, insofar as I have been able to ascertain after reasonable inquiry, the Firm has not been retained to assist any entity or person

other than the Debtors on matters relating to, or in direct connection with, these chapter 11 cases.

14.      In accordance with section 504 of the Bankruptcy Code and Bankruptcy Rule 2016, neither I nor the Firm have entered into any agreements, express or implied, with any other party in interest, including the Debtors, any creditor, or any attorney for such party in interest in these chapter 11 cases (a) for the purpose of sharing or fixing fees or other compensation to be paid to any such party in interest or its attorneys for services rendered in connection therewith, (b) for payment of such compensation from the assets of the estate in excess of the compensation allowed by the Court pursuant to the applicable provisions of the Bankruptcy Code, or (c) for payment of compensation in connection with these chapter 11 cases other than in accordance with the applicable provisions of the Bankruptcy Code.

15.      Accordingly, except as otherwise set forth herein, insofar as I have been able to determine, neither the Firm, nor any employee of the Firm who will work on the engagement holds or represents any interest adverse to the Debtors or their estates.

16.      If the Firm discovers additional information that requires disclosure, the Firm will promptly file a supplemental disclosure with the Court as required by Bankruptcy Rule 2014.

17.      Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Executed this 31st day of January, 2018.

_/s/ Mark Shapiro_____
Mark Shapiro

## <u>Schedule 1</u>

### List of Entities Searched

**<u>Debtor and counsel:</u>**
Lockwood Enterprises, Inc.
Lockwood International, Inc.
LMG Manufacturing, Inc.
Piping Components, Inc.
Lockwood Holdings, Inc.
LH Aviation, LLC
7807 Eagle Lane, LLC

Gray Reed & McGraw LLP (Debtors' Counsel)
Spagnoletti & Co (Special Counsel)

**<u>Secured Lenders and counsel:</u>**
Wells Fargo Bank, N.A.
Trustmark National Bank
Winstead PC

**<u>Top 30 Consolidated Creditors:</u>**
Allied Fitting LP
PK Valve
Orion Spa
Associated Valve
Poyam Valves
Global Stainless Supply
COR-PRO Sys. Operating, Ltd.
Pusan Pipe America Inc.
Perar S.P.A.
Flowserve – Raleigh
TIV Valves SRL
Zimmerman, Axelrad, Meyer
Ilshin Forged Steel Valve Co.
TIV Vavles SRL
Harris County Tax Assessor-Collector
J.D. Fields & Company Inc.
Truflo Rona SRL
Canada Revenue Agency
Jiangsu YDF Valve Co Ltd.
Truflo Rona SRL

**<u>Sole Shareholder & CEO:</u>**
Michael F. Lockwood

**<u>Related Entities:</u>**
LMG IC-DISC, Inc.
Lockwood PVF Canada Inc.
Netherlands
Lockwood Valve Australia PTY LTD
Lockwood Valve Thailand LTD
TIV Valves, Inc. formerly Italian Valves
International, Inc.
TIV Holdings S.A.
TIV Valves SRL
MFL Properties, LLC

Briggs & Veselka Co.
LVF Valve Solutions
TWC – The Valve Company
Hadassah Realty
O.M.B. – Italy
USI Southwest
Sherwood Pointe LLC
Orton Italiana SRL
VALVOSIDER
Tri-State Supply Co.

**<u>Individuals Employed in the Office of the US
Trustee for Region 7 in Houston:</u>**
Diane Livingstone
Jacqueline Boykin
Hector Duran
Barbara Griffin
Luci Johnson-Davis
Christine March
Linda Motton
Glenn Otto
Patricia Schmidt
Gwen Smith
Stephen Statham
Clarissa Waxton

**<u>EXHIBIT C</u>**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re:<br><br>LOCKWOOD HOLDINGS, INC., *et al.*,[1]<br><br>Debtors. | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § |

Chapter 11

Case No. 18-30197 (DRJ)

Jointly Administered

**ORDER (I) AUTHORIZING THE RETENTION OF GLASSRATNER ADVISORY &**
**CAPITAL GROUP LLC TO PROVIDE CHIEF RESTRUCTURING OFFICER AND**
**CERTAIN ADDITIONAL PERSONNEL, (II) DESIGNATING MARK SHAPIRO AS**
**CHIEF RESTRUCTURING OFFICER EFFECTIVE AS OF JANUARY 26, 2018,**
**AND (III) GRANTING RELATED RELIEF**

Upon the Application (the "Application") (I) Authorizing the Retention of GlassRatner

Advisory & Capital Group LLC ("GlassRatner") to Provide the Debtors with a Chief

Restructuring Officer ("CRO") and Certain Additional Personnel ("GlassRatner Personnel"), (II)

Designating Mark Shapiro as CRO Effective as of January 26, 2018, and (III) Granting Related

Relief, filed by Lockwood Holdings, Inc. and certain of its affiliates, the above-captioned debtors

and debtors in possession (the "Debtors");[2] and the Court having reviewed the Application and

the Shapiro Declaration; and the Court having jurisdiction to consider this matter pursuant to 28

U.S.C. §§ 157 and 1334; and consideration of the Application being a core proceeding pursuant

to 28 U.S.C. § 157(b)(2); and the Court finding that the relief requested in the Application is in

the best interests of the Debtors' estates, their creditors, and other parties in interest; and it

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: Lockwood Holdings, Inc. (9726); LH Aviation, LLC (6984); Piping Components, Inc. (0197); Lockwood International, Inc. (8597); Lockwood Enterprises, Inc. (6504); LMG Manufacturing, Inc. (9468); and 7807 Eagle Lane, LLC (7382).

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Application.

1

appearing that due and sufficient notice of the Application has been given by the Debtors under the circumstances and that no other or further notice is required; and upon the hearing on the Application conducted on February 7, 2018 and the record made thereat; and after due deliberation and good cause appearing therefor, it is HEREBY ORDERED THAT:

1.     The Application is approved as set forth herein.

2.     The Debtors are authorized to retain GlassRatner to provide the Debtors with a CRO and certain additional GlassRatner Personnel to assist the CRO and to designate Mark Shapiro as the Debtors' CRO effective as of January 26, 2018.  The Debtors are authorized to retain GlassRatner on the terms set forth in the Application and Engagement Agreement, attached as **Exhibit A** to the Application, subject to the terms and provisions of this Order, notwithstanding anything contrary in the Application and Engagement Agreement.

3.     GlassRatner will not act in any other capacity (for example, and without limitation, as a financial advisor, claims agent/claims administrator, or investor/acquirer) in connection with the above-captioned cases.

4.     GlassRatner shall not be required to submit fee applications pursuant to sections 330 and 331 of the Bankruptcy Code but instead, shall submit monthly invoices to the Debtors, and the Debtors are hereby authorized to pay, in the ordinary course of their business, all amounts invoiced by GlassRatner for fees and expenses incurred in connection with GlassRatner's retention.

5.     GlassRatner will serve on the Notice Parties quarterly reports of compensation earned and expenses incurred on the engagement, commencing as of May 20, 2018. Compensation Reports will summarize services provided, identify compensation earned by each executive officer and staff employee, and itemize expenses incurred.  The Notice Parties and

4454010.2

parties-in-interest in these chapter 11 cases will have the right to object to fees paid and expenses reimbursed to GlassRatner within twenty (20) days after GlassRatner files such reports. Compensation and expenses identified in GlassRatner's Compensation Reports will be subject to review by this Court in the event an objection is filed.

6.      Notwithstanding anything to the contrary in the Engagement Agreement, GlassRatner's retention may only be terminated by Court order, upon motion and a showing of cause.

7.      No principal, employee, or independent contractor of GlassRatner will serve as a director of the Debtors during the pendency of the above-captioned cases.

8.      To the extent the CRO and the board of directors of the Debtors (the "Board") are unable to agree on a particular course of action during the chapter 11 cases for non-ordinary course transactions, the CRO and the Board shall agree upon a third party to mediate the issue and assist in its resolution, and pay a reasonable fee for such services.  If the Board and the CRO cannot agree on a third party, or the Board and CRO remain at an impasse despite the third party's intervention, the matter shall be resolved by the Court upon motion.

9.      GlassRatner has a continuing obligation to disclose any and all facts that may have a bearing on whether GlassRatner, its affiliates, and/or any individuals working on the engagement have any interest materially adverse to the interest of the Debtors' estates or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtors, or for any other reason.

10.     This Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order, and will have exclusive jurisdiction over GlassRatner's retention during the pendency of the chapter 11 cases.

11.     To the extent that there is any inconsistency between this Order, the Engagement Agreement, the Shapiro Declaration, and/or the Application, the terms of this Order shall govern.

12.     The Debtors are permitted to indemnify GlassRatner and the CRO on the terms provided in the Engagement Agreement, not to exceed the indemnification allowable under state law. Any claim for indemnification shall be paid only upon approval by this Court.

13.     Notwithstanding anything to the contrary contained herein, the relief granted in this Order and any payment to be made, or any authorization contained, hereunder shall be subject to the terms of any orders granting the use of cash collateral approved by this Court in these chapter 11 cases, including with respect to any budgets governing or relating to such use (collectively, the "Cash Collateral Order"), and to the extent there is any inconsistency between the terms of the Cash Collateral Order and any action taken or proposed to be taken hereunder, the terms of the Cash Collateral Order shall control.

14.     The terms and conditions of this Order will be immediately effective and enforceable upon its entry, and the relief granted herein will be binding upon any chapter 11 trustee appointed in these chapter 11 cases, or upon any chapter 7 trustee appointed in the event of a subsequent conversion of these chapter 11 cases to cases under chapter 7.

15.     Notwithstanding Bankruptcy Rule 6004(h) the terms and conditions of this Order are immediately effective and enforceable upon its entry.

16.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Application.

Dated: _____, 2018

_____
DAVID R. JONES
CHIEF UNITED STATES BANKRUPTCY JUDGE

4

4454010.2