# UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | § § § | Chapter 11 |
| LOCKWOOD HOLDINGS, INC., *et al.*, | § § | Case No. 18-30197 (DRJ) |
| Debtors.[1] | § § § | Jointly Administered |
|  | § § |  |

**EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS (I) AUTHORIZING DEBTORS TO PAY OR HONOR PREPETITION OBLIGATIONS TO CERTAIN CRITICAL VENDORS AND SHIPPERS AND (II) GRANTING RELATED RELIEF**

---

THIS MOTION SEEKS ENTRY OF AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.

EMERGENCY RELIEF HAS BEEN REQUESTED. IF THE COURT CONSIDERS THE MOTION ON AN EMERGENCY BASIS, THEN YOU WILL HAVE LESS THAN 21 DAYS TO ANSWER. IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE RESPONSE. A HEARING HAS BEEN REQUESTED ON THIS MATTER ON FEBRUARY 7, 2018 AT 11:00 A.M. (CT) BEFORE THE HONORABLE DAVID R. JONES, 515 RUSK STREET, COURTROOM 400, HOUSTON, TEXAS 77002.

REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.

---

Lockwood Holdings, Inc. and certain of its affiliates, the above-captioned debtors and debtors in possession (the "Debtors"), for their Emergency Motion for Interim and Final Orders (I) Authorizing Debtors to Pay or Honor Prepetition Obligations to Certain Critical Vendors and Shippers and (II) Granting Related Relief (the "Motion"), respectfully represent:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: Lockwood Holdings, Inc. (9726); LH Aviation, LLC (6984); Piping Components, Inc. (0197); Lockwood International, Inc. (8597); Lockwood Enterprises, Inc. (6504); LMG Manufacturing, Inc. (9468); and 7807 Eagle Lane, LLC (7382).

## JURISDICTION AND VENUE

1.      The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2.      Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The bases for the relief requested herein are sections 105, 362, 363, 1107, and 1108 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 9013-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "Bankruptcy Local Rules"), and the United States Bankruptcy Court for the Southern District of Texas Procedures for Complex Chapter 11 Cases (the "Complex Case Procedures").

## PROCEDURAL HISTORY AND BACKGROUND

4.      On January 18, 2018 (the "First Petition Date"), Lockwood Holdings, Inc., LH Aviation, LLC and Piping Components, Inc. filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  On January 24, 2018 (the "Second Petition Date," and together with January 18, 2018 the "Petition Dates"), Lockwood International, Inc., Lockwood Enterprises, Inc., LMG Manufacturing, Inc., and 7807 Eagle Lane, LLC filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

5.      Pursuant to sections 1107 and 1108 of the Bankruptcy Code, the Debtors each remain in possession of their property and each is managing its business as a debtor in possession.  No trustee, examiner, or official committee has been appointed.

6.       A detailed description of the Debtors and their businesses, and the facts and circumstances supporting the Debtors' chapter 11 cases, are set forth in greater detail in the *Emergency Motion for Interim and Final Orders (A) Authorizing Use of Cash Collateral*

2

*Pursuant to Section 363(c) of the Bankruptcy Code and (B) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001* [Docket No. 14].

## THE CRITICAL VENDORS

7.     The Debtors are international suppliers of valves and valve automation, offering pipe, valves, fittings and flanges ("PVF"), as well as engineered products for liquid handling and transfer, liquid management, as well as access and safety equipment.  The Debtors primarily supply customers in the petrochemical, oil and gas, and construction industries.

8.     The Debtors obtain these core, and often made-to-order, products from a limited number of highly specialized manufacturers and wholesalers of specialized goods (the "Critical Vendors") to supply their customers with the products that they require.  These vendors are irreplaceable due to, among other things, the unique nature of the PVF they offer.  Moreover, the Debtors rely on timely and frequent delivery of these critical products, and any interruption in this supply—however brief—would disrupt the Debtors' operations and could potentially cause irreparable harm to their business, goodwill, customer base, and market share.  If a customer cannot obtain the needed PVF from the Debtors, then it is likely to seek out an alternative supplier – or perhaps attempt to obtain the product directly from the manufacturer or wholesaler.[2]

9.     Some Critical Vendors have refused to continue to supply the debtors with the inventory necessary to fulfill existing customer orders unless and until they are paid current.  The Debtors believe that many of their vendors may be relatively inexperienced with the chapter 11 process and unwilling to do business with the Debtors absent the relief requested herein.  This unwillingness would effectively be a death-knell for the business relationship between the parties

---

[2] Indeed, the Debtors are informed that certain of their customers have already done exactly this.

(as well as between the Debtors and their customers).  With approximately $30 million in "backlogged" customer orders, the harm to the Debtors' estates of not having products provided by the Critical Vendors would far outweigh the cost of payment of their claims.

10.     The Debtors request authority to make payments on account of prepetition claims held by Critical Vendors (the "Critical Vendor Claims"), in the prudent exercise of their business judgment, of up to $1,641,775.81 on an interim basis and a total of $3,283,551.63 on a final basis.  The Critical Vendor Claims represent approximately 10% of the Debtors' customer backlog.  The Debtors submit that the requested relief will allow the Debtors to preserve stakeholder value by paying the prepetition claims of certain counterparties that are critical to the Debtors' business enterprise, in order to maximize value through, among other things, finishing and delivering product to paying customers which creates value through the generation of accounts receivable as well as continuing customer relationships.

**A.  The Critical Vendor Process**

11.     With the assistance of their advisors, the Debtors have spent considerable time reviewing and analyzing their books and records, consulting with management and the Debtors' personnel responsible for operations and purchasing, reviewing contracts, supply agreements, and historical practice to identify certain critical business relationships and suppliers of goods and services—the loss of which would materially impair the value and going-concern viability of the Debtors' business.  In this process, the Debtors considered a variety of factors, including:

a.  whether a vendor is a sole- or limited-source or high-volume supplier for goods or services critical to the Debtors' business operations;

b.  whether alternative vendors are available that can provide requisite volumes of similar goods or services on equal (or better) terms and, if so, whether the Debtors would be able to continue operating while transitioning business thereto;

    c.   the degree to which replacement costs (including pricing, transition expenses, professional fees, and lost sales or future revenue) exceed the amount of a vendor's prepetition claim;

    d.   whether an agreement exists by which the Debtors could compel a vendor to continue performing on prepetition terms;

    e.   whether certain specifications or contract requirements prevent, directly or indirectly, the Debtors from obtaining goods or services from alternative sources; and

    f.   whether failure to pay all or part of a particular vendor's claim could cause the vendor to refuse to ship inventory or to provide critical services on a postpetition basis.

**B.  Proposed Treatment of Critical Vendors**

12.    To ensure that the Critical Vendors deal with the Debtors on Customary Trade Terms (as defined herein), the Debtors propose that the Interim Order and Final Order each provide authorization for the Debtors to condition payment of all or a portion of the Critical Vendor Claims upon each Critical Vendor's agreement to continue supplying goods and/or services in accordance with certain procedures, generally as follows:

    a.   The Debtors are authorized to make payment to the Critical Vendors on the condition that the Critical Vendor agree to continue supplying goods and/or services to the Debtors on the terms that were most favorable to the Debtors and in effect within 12 months before the Petition Dates (the "Customary Trade Terms") during these chapter 11 cases.

    b.   The Debtors reserve the right to negotiate trade terms with any Critical Vendor, as a condition to payment of any Critical Vendor Claim, that vary from the Customary Trade Terms (the "Negotiated Trade Terms") to the extent the Debtors determine that such terms are necessary to procure essential goods or services or are otherwise in the best interests of the Debtors' estates.

5

c. The Debtors are authorized to obtain written verification of the Customary Trade Terms or the Negotiated Trade Terms, to be supplied by the Critical Vendors, before issuing payment hereunder.

13.     If a Critical Vendor refuses to supply goods and/or services to the Debtors on Customary Trade Terms or Negotiated Trade Terms following receipt of payment of its Critical Vendor Claim, the Debtors seek authority, without further order of the Court, to declare that provisional payments made to the Critical Vendor on account of the Critical Vendor Claim may be deemed to have been in payment of then-outstanding postpetition claims of such vendors without further action.  In such cases, the Critical Vendor against which such right is exercised shall be required to immediately return to the Debtors any payments made to it on account of its Critical Vendor Claim to the extent that any such payments exceed the postpetition claims of such vendor then outstanding without giving effect to any further rights of setoff, claims, provision for payment of reclamation or trust fund claims, or otherwise.  In short, the Debtors seek to return the parties to their respective positions with respect to all Critical Vendor Claims in the event a Critical Vendor refuses to supply goods and/or services to the Debtors on Customary Trade Terms or Negotiated Trade Terms following receipt of payment on account of its Critical Vendor Claim.

14.     Additionally, the Debtors propose to file an Order to Show Cause for any Critical Vendor who, despite receiving payment for its respective Critical Vendor Claim, threatens to withhold performance of its obligations or refuses to perform under one or more executory contracts with the Debtors.  The Debtors request that any such Critical Vendor be required to appear before the Court and demonstrate why such Critical Vendor should not be held in violation of sections 362 and/or 365 of the Bankruptcy Code and required to return payments made by the Debtors pursuant to any order approving this Motion, plus attorneys' fees and costs.

6

4464772.2

## THE SHIPPERS

15.     The Debtors' business depends on the uninterrupted flow of inventory and other goods through their supply chain and distribution network, including the purchase, import, warehousing and shipment of the PVF.  Generally, the Debtors source inventory from third-party PVF manufacturers and wholesalers, which are located both domestically and abroad.  The Debtors utilize certain freight forwarders, consolidators and customs brokers to assist them in transporting their inventory (the "Shippers").  Typically, the Debtors only take title of the product upon delivery.

16.     The Shippers may refuse to release this inventory or other goods for delivery to the Debtors if the Debtors are not paid current.  Non-payment results in storage costs accruing at a rate of anywhere from $100 to $1,000 per day, calculated based on the weight of each container.  Moreover, the Debtors are at risk of losing their ability to import goods through Canada if the applicable customs and duties remain unpaid.

17.     The Shippers' retention of the Debtors' inventory would disrupt the Debtors' operations and affect the Debtors' ability to effectively administer these chapter 11 cases. Presently, the Shippers hold approximately $2.7 million in products that the Debtors require in the continued and uninterrupted operation of their business.  However, these Shippers' prepetition claims total less than $100,000 (the "Shipper Claims").  The cost of disruption to the Debtors' business and estates thus greatly exceeds the prepetition claims held by the Shippers. As a result, the Debtors request authority to pay the Shipper Claims, in an amount not to exceed $94,169.90, in order to continue the uninterrupted flow of their supply chain and move forward with their reorganization.

## PAYMENT OF OUTSTANDING ORDERS

18.     Prior to the Petition Dates and in the ordinary course of business, the Debtors may have ordered goods that will not be delivered until after the Petition Dates (the "Outstanding Orders").  To avoid becoming general unsecured creditors of the Debtors' estates with respect to such goods, certain suppliers may refuse to ship or transport such goods (or may recall such shipments) with respect to such Outstanding Orders unless the Debtors issue substitute purchase orders postpetition.  To prevent any disruption to the Debtors' business operations, and given that goods delivered after the Petition Date are afforded administrative expense priority under section 503(b) of the Bankruptcy Code, the Debtors seek an order (a) granting administrative expense priority under section 503(b) of the Bankruptcy Code to all undisputed obligations of the Debtors arising from the acceptance of goods subject to Outstanding Orders and (b) authorizing the Debtors to satisfy such obligations in the ordinary course of business.

## RELIEF REQUESTED

19.     By this Motion, the Debtors seek authority, but not direction, to pay (i) Critical Vendor Claims in an interim amount not to exceed $1,641,775.81 and an aggregate amount not to exceed $3,283,551.63 and (i) Shipper Claims in the amount of $94,169.90, on the terms described herein.

20.     The Debtors respectfully request a waiver of the provisions set forth in the Complex Case Procedures that would require the Debtors to disclose the names of the Critical Vendors and Shippers, as doing so may cause further disruption in their business.  The Debtors will provide a list of the Critical Vendors and Shippers to the Debtors' prepetition lender, any statutory committee (if and when formed), and the United States Trustee.

4464772.2

21.     The Debtors also request that administrative expense priority under section 503(b) of the Bankruptcy Code be granted to all undisputed obligations of the Debtors arising from the acceptance of goods subject to Outstanding Orders or alternatively, authorize the Debtors to satisfy such obligations in the ordinary course of business.

## ARGUMENT & AUTHORITY

### A.     Critical Vendor Standard

22.     Courts across many jurisdictions have recognized that it is appropriate to authorize the payment of prepetition obligations where necessary to protect and preserve the estate, including an operating business' going-concern value.  *See, e.g., In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002); *see also In re Universal Fin., Inc.*, 493 B.R. 735, 739– 40 (Bankr. M.D.N.C. 2013); *In re NVR L.P.*, 147 B.R. 126, 127 (Bankr. E.D. Va. 1992); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) ("The ability of a Bankruptcy Court to authorize the payment of prepetition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept").  In doing so, these courts acknowledge that several legal theories rooted in sections 105(a) and 363(b) of the Bankruptcy Code support the payment of prepetition claims as provided herein

23.     Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  The purpose of section 105(a) is to "assure the bankruptcy courts power to take whatever action is appropriate or necessary in aid of the exercise of its jurisdiction."  COLLIER ON BANKRUPTCY ¶ 105.01 (15th ed. Rev. 2007).

24.     To invoke the equitable powers of section 105(a), the Court must first rely on a specific provision of the Bankruptcy Code to support the relief requested in the motion.  *In re*

*Oxford Mgmt., Inc.*, 4 F.3d 1329, 1334 (5th Cir. 1993); *CoServ*, 273 B.R. at 497.  As provided in

*CoServ*, sections 1107(a) and 1108 of the Bankruptcy Code provide this bridge.  Section 1107(a)

provides that a debtor in possession shall perform all the functions and duties as a trustee under

the Bankruptcy Code.  "Implicit in the duties of a Chapter 11 trustee or a debtor in possession, as

set out in sections 1106 and 704 of the Bankruptcy Code, is the duty to protect and preserve the

estate, including an operating business's going-concern value."  *CoServ*, 273 B.R. at 497.

      25.     Applying the principles of *Coserv*, the Bankruptcy Court for the Northern District

of Texas also authorized the payment of prepetition claims prior to confirmation under section

362(d) because "a debtor-in-possession and its 'critical vendors,' each of whom would certainly

qualify as parties in interest in a bankruptcy case, could request relief from the stay under §

362(d) 'for cause'—that 'cause' being the urgency and necessity of paying the prepetition

claims, such payment being the only means of protecting the going concern value of the

operating business in Chapter 11."  *In re CEI Roofing, Inc.*, 315 B.R. 50, 59 (Bankr. N.D. Tex.

2004).[3]

      26.     Section 363(b) of the Bankruptcy Code permits a debtor, subject to court

approval, to "use, sell, or lease, other than in the ordinary course of business, property of the

estate."  11 U.S.C. § 363(b)(1).  Courts have allowed debtors to use assets outside of the ordinary

course of business, such as to pay prepetition obligations, where a sound business purpose exists

for doing so. *See Ionosphere Clubs*, 98 B.R. at 175 (noting that section 363(b) provides "broad

---

[3] A debtor may also pay certain prepetition claims in the performance of the debtor's fiduciary duty to preserve the estate and the business's going-concern value.  *See, e.g., Miltenberger v. Logansport Ry.*, 106 U.S. 286, 312 (1882) (authorizing payment of pre-receivership claim prior to reorganization permitted to prevent "stoppage of . . . [crucial] business relations"); *CoServ*, 273 B.R. at 497 (noting that "it is only logical that the bankruptcy court be able to use section 105(a) of the Code to authorize satisfaction of a prepetition claim in aid of preservation or enhancement of the estate").

flexibility" to authorize a debtor to honor prepetition claims where supported by an appropriate business justification).

27.     In analyzing whether to allow the payment of prepetition debt, courts have developed the "Doctrine of Necessity" (also known as the "Necessity of Payment Rule") to determine whether a proposed payment is necessary to preserve and protect the estate.  *See In re Just for Feet; Inc.*, 242 B.R. 821, 825-26 (D. Del. 1999) (developing and discussing the doctrine); *CoServ*, 273 BR at 491-93 (discussing the doctrine).  Generally, the Doctrine of Necessity allows a debtor to pay prepetition obligations if such payments are critical to the debtor's reorganization.  The "doctrine's use [is to] secure [the] continued delivery of supplies and services essential to the debtor's continuation in business."  *In re Jeans.com, Inc.*, 502 B.R. 250, 254 (Bankr. D.P.R. 2013).

28.     In *CoServ*, Judge Lynn analyzed the Doctrine of Necessity and held that a debtor must demonstrate the following three elements to meet the "necessity" requirement: (1) the debtor must deal with the claimant; (2) a failure to deal with the claimant risks probable harm or eliminates an economic advantage disproportionate to the amount of the claim; (3) there is no practical or legal alternative to payment of the claim.  *CoServ*, 273 B.R. at 498.  Courts in this District have held that a debtor may pay prepetition claims where the proposed transactions are "at once individually minute but collectively immense and critical to the survival of the business of the debtor."  *In re Equalnet Commc'ns Corp.*, 258 B.R. 368, 369 (Bankr. S.D. Tex. 2000).

29.     No provision of the Bankruptcy Code expressly prohibits the postpetition payment of prepetition critical vendor claims. Indeed, the above-referenced sections of the Bankruptcy Code authorize such payments when the payments are critical to preserving the going-concern value of the debtor's estate, as is the case here.

**B.      Payment of the Critical Vendors Is Appropriate and Necessary for the Continued Viability of the Debtors**

30.      The Debtors undertook a review of all of its service providers and vendors pursuant to the process described above and have identified a total of 11 Critical Vendors.  The Critical Vendors are customer-approved vendors who supply inventory (valves, pipes, fittings etc.) for particular, customer long-term projects.  Unless a given customer has an analogous vendor already on its list which the Debtors can use to replace a prepetition Critical Vendor, the Debtors would need to identify and negotiate with the customer to add a new vendor to the approved list.  This process would require significant time and management attention because the negotiation would need to be replicated with each customer with an approved vendor list.

31.      Multiple Critical Vendors have represented that they will not supply the Debtors with inventory until their prepetition debt is satisfied.   Without the Critical Vendors' cooperation, the Debtors face, at best, significant downtime and significant delays, or, at worse, the evaporation of the lifeblood of the Debtors' business – a steady supply of inventory to sell to their customers.

32.      When a vendor is "a major supplier of specialty goods or services to [a debtor], and any interruption in the flow of their products to the Debtors would substantially jeopardize the Debtors' ability to conduct business [,payment of the supplier vendors is] absolutely critical to the maintenance of the Debtors' estates."  *In re Tropical Sportswear Int'l Corp.*, 320 B.R. 15, 20-21 (Bankr. M.D. Fla. 2005).  This is "precisely the situation where critical vendor status is warranted." *Id.*

33.      As described above, the Debtors require a steady stream of goods and services from their Critical Vendors to maintain adequate inventory and operational stability during the chapter 11 process and during this critical transition period.  Without the goods and services

12

provided by the Critical Vendors, the Debtors would be forced to cease or substantially curtail operations as they would not have products to fulfill customer orders.  Prompt availability of specific merchandise is essential to the Debtors' business, as these customers may turn to any number of the Debtors' competitors (or bypass the Debtors altogether and directly purchase from the Debtors' suppliers) if the Debtors cannot fulfill their orders.  As stated earlier, the Debtors believe that some customers have already done this.  Without the Critical Vendors' release of inventory, the Debtors' cash flow will dry up and a successful reorganization will be in peril.

34.     Similarly-situated debtors have, in the past, gained approval similar to that sought herein. See *J.M. Blanco, Inc. v. PMC Mktg. Corp.*, 2009 WL 5184458, at *2–3 (D.P.R. Dec. 22, 2009) (granting critical vendor motion where delivery of "the merchandise was critical and [no] other vendor was available to offer the same inventory under equal terms and conditions [and was] essential to the cash flow of the business"); *see also In re Jeans.com, Inc.*, 502 B.R. at 259 (stating that suppliers of "quality" merchandise were critical to debtor where supplies were "timely" and "reliable" as to debtors ultimate customers); *In re Payless Cashways, Inc.*, 268 B.R. 543, 547 (Bankr. W.D. Mo. 2001) ("In return for paying [prepetition] debt, the debtor is being given the opportunity to restock its stores and to sell not only the inventory purchased, but also the other inventory and tools required by its customers").

35.     Just as the District of Delaware found that a retail debtor "clearly cannot survive unless it has name brand sneakers and athletic apparel to sell in its stores [because the d]ebtors need a continuous supply of inventory from athletic footwear and apparel vendors such as Nike [to] quickly to replenish the[ir] inventory," these Debtors need the continuous supply of specialized PVF to sell to their customers.  *In re Just For Feet, Inc.*, 242 B.R. at 826 (authorizing payment of critical vendor claims when merchandise was ordered months in advance and held up

13

by vendors until prepetition debt was paid).  Likewise, the Court should approve the payment of prepetition claims held by the Critical Vendors because they "suppl[y] unique goods and services to the Debtors, the continued uninterrupted supply of which is absolutely necessary to the maximization of the value of the Debtors' estates."  *In re Tropical Sportswear Int'l Corp.*, 320 B.R. at 19.  Here, the "granting of preferential treatment [through payment of prepetition debt] to some [supplier] creditors is a better result than closing the business, or allowing it to die slowly for lack of necessary supplies."  *In re Payless Cashways, Inc.*, 268 B.R. at 547 (authorizing payment of prepetition debt owed to supplier critical vendors).[4]

36.     The Critical Vendors provide essential services or goods, the loss of which would significantly strain the Debtors' limited resources and dramatically affect the Debtors' marketability and possible reorganization.  Absent payment of the Critical Vendor Claims, the Critical Vendors will not continue to do business with the Debtors.   Without the Critical Vendors, the Debtors will be unable to complete their pending customer orders or perform many of the tasks which are necessary to maximize the value of their assets.  The Critical Vendor Claims represent approximately 10% of the Debtors' customer backlog, and the Debtors have included payment of the Critical Vendor Claims in their proposed 13-week budget.  Under these circumstances, the granting of the relief requested is necessary and appropriate, is in the best interests of the estate and creditors, and should be granted in all respects.  The Debtors therefore request authorization to pay the Critical Vendors Claims up to $1,641,775.81 on an interim basis and a total of $3,283,551.63 on a final basis.

---

[4] Courts in this District have approved payment of critical vendor claims in other cases.  *See, e.g., In re Emas Chiyoda Subsea Limited*, Case No. 17-31146 (Bankr. S.D. Tex. April 13, 2017) [Docket No. 271]; *In re Energy XXI Ltd*, Case No. 16-31928 (Bankr. S.D. Tex. April 25, 2016) [Docket No. 136]; *In re ATP Oil & Gas Corporation*, Case No. 12-36187 (Bankr. S.D. Tex. Aug. 21, 2012) [Docket No. 139].

**C.      Payment of the Shipper Claims Is Critical to the Debtors**

37.      Courts have routinely authorized payments to shippers and warehousemen where debtors have shown that the payment of prepetition claims is critical to maximize the value of their estates.  *See, e.g., In re Gymboree Corp.*, No. 17-32986 (KLP) (Bankr. E.D. Va. July 11, 2017) (authorizing payment to certain shippers, warehousemen, and other lien claimants); *Jeans.com,* 502 B.R. at 259 (authorizing payment of vendors for shipping because "shipping" was "especially" critical to retail debtor); *In re O & S Trucking, Inc.*, No. 12-61003, 2012 WL 2803738, at *3 (Bankr. W.D. Mo. June 29, 2012) (truckers and fuel vendors as critical vendors which truckers would stop work without payment and fuel vendors would cease supply of fuel); *In re Hayes Lemmerz Intern., Inc.*, 313 B.R. 189, 193 (Bankr. D. Del. 2004) (noting order which approved payment of "Shipping Charges, Warehousing Obligations, Import Obligations and related possessory liens that the Debtors determine, in the exercise of their business judgment, are necessary or appropriate to obtain release of [the debtors goods]" as critical vendor payments); *In re Wehrenberg, Inc.*, 260 B.R. 468, 469 (Bankr. E.D. Mo. 2001) (authorizing payment to shippers of film for motion picture debtor where "the inability to obtain and exhibit film . . .will significantly reduce the likelihood of a successful reorganization in this case").

38.      As described above, the Shippers currently control inventory the Debtors have contracted to sell to their customers.  The movement and shipment of the inventory is a prerequisite for the Debtors to remain commercially viable entities.  The Shippers will not service, deliver and ship the items unless they are paid what they are owed for prepetition claims (including the Shippers' prior payment of customs and duties on behalf of the Debtors).  Currently, the Debtors have $2.7 million worth of inventory stuck in Canada which the Shippers will not move unless they are paid on their prepetition claims.  Without such payment, inventory

will be moved into storage, where the Debtors will be charged fees of anywhere from $100 to $1,000 per day per container and risk being unable to timely fulfill existing customers orders.  As a result, the Debtors' believe that payment of the Shipper Claims is critical and a reasonable exercise of their business judgment.  Courts in this District have authorized similar relief in other cases.  *See, e.g.*, *In re Ultra Petroleum Corp.*, Case No. 16-32202 (Bankr. S.D. Tex. May 3, 2016) [Docket No. 293]; *In re Genon Energy, Inc.*, Case No. 17-33695 (Bankr. S.D. Tex. July 13, 2017) [Docket No. 224]; *In re Exco Resources, Inc.*, Case No. 18-30155 (Bankr. S.D. Tex. Jan. 18, 2018) [Docket No. 104].

39.     In addition, the Shippers have stopped paying duties and customs for the Debtors' inventory unless and until they first receive payment from the Debtors on their prepetition claims.  This has resulted in Canada declaring the Debtors to be delinquent, which puts the Debtors at risk of being unable to import goods through Canada in the future.  The Shippers' outstanding import charges would likely be paid in full under any plan of reorganization pursuant to Bankruptcy Code section 507(a)(8), which provides eighth priority status to the claims of a governmental unit based on a customs duty arising out of the importation of certain merchandise. Thus, payment of the Shippers' import charges as proposed in this Motion merely accelerates the distribution that they would receive in any event upon confirmation of a plan.  Therefore, granting this Motion with respect to the import charges would have no substantial effect on the relative distribution of the estate's assets

40.     For these reasons, the Debtors request authorization to pay the Shipper Claims up to $94,169.90 on an interim and final basis.

16

**D.      The Outstanding Orders Are Administrative Expense Priority Claims that May Be Paid in the Ordinary Course**

41.      Pursuant to section 503(b)(1) of the Bankruptcy Code, obligations that arise in connection with the postpetition delivery of goods and services, including goods ordered prepetition, are administrative expense priority claims because they benefit the estate postpetition.  *See* 11 U.S.C. § 503(b)(1)(A) (providing that the "actual [and] necessary costs and expenses of preserving the estate" are administrative expenses); *see also In re John Clay & Co.*, 43 B.R. 797, 809–10 (Bankr. D. Utah 1984) (holding that goods ordered prepetition but delivered postpetition are entitled to administrative priority).  Thus, the granting of the relief sought herein with respect to the Outstanding Orders will not afford such claimants any greater priority than they otherwise would have if the relief requested herein were not granted, and will not prejudice any other party in interest.

42.      Absent such relief, however, the Debtors may be required to expend substantial time and effort reissuing the Outstanding Orders to provide certain suppliers with assurance of such administrative priority status.  The attendant disruption to the continuous and timely flow of critical goods to the Debtors would force the Debtors to potentially halt operations, damage the Debtors' business reputation, erode the Debtors' customer base, and ultimately lead to a loss of revenue, all to the detriment of the Debtors and their creditors.  Accordingly, the Debtors submit that the Court should confirm the administrative expense priority status of the Outstanding Orders and should authorize the Debtors to pay the Outstanding Orders in the ordinary course of business.

## EMERGENCY CONSIDERATION

43.      Pursuant to Bankruptcy Local Rule 9013-1(i), the Debtors respectfully request emergency consideration of this application pursuant to Bankruptcy Rule 6003, which empowers

a court to grant relief within the first 21 days after the commencement of a chapter 11 case "to the extent that relief is necessary to avoid immediate and irreparable harm."  As set forth in this Motion, the Debtors believe that payment of the Critical Vendor Claims and the Shipper Claims is critical to the Debtors' orderly transition into chapter 11 and the continued viability of their operations.  Any delay in granting the relief requested could hinder the Debtors' operations and cause irreparable harm.  Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 and, therefore, respectfully request that the Court approve the relief requested in this application on an emergency basis.

## WAIVER OF BANKRUPTCY RULE 6004(A) AND 6004(H)

44.     To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

## NOTICE

45.     The Debtors have provided notice of this Motion to: (a) the Office of the United States Trustee for the Southern District of Texas; (b) counsel to Wells Fargo as administrative agent under the Debtors' credit agreements; (c) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); and (d) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors respectfully submit that, in light of the nature of the relief requested, no other or further notice need be given.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter the Order granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

Respectfully submitted this 6th day of February, 2018.

**GRAY REED & McGRAW LLP**

By: _/s/ Jason S. Brookner_
    Jason S. Brookner
    Texas Bar No. 24033684
1300 Post Oak Blvd., Suite 2000
Houston, Texas 77056
Telephone:  (713) 986-7000
Facsimile:  (713) 986-7100
Email:      jbrookner@grayreed.com

-and-

    Lydia R. Webb
    Texas Bar No. 24083758
1601 Elm Street, Suite 4600
Dallas, Texas 75201
Telephone:  (214) 954-4135
Facsimile:  (214) 953-1332
Email:     lwebb@grayreed.com

**PROPOSED COUNSEL TO THE DEBTORS**

## CERTIFICATE OF SERVICE

I do hereby certify that on February 6, 2018, a true and correct copy of the foregoing pleading was served via CM/ECF to all parties authorized to receive electronic notice in this case, via electronic mail on counsel to the Wells Fargo as administrative agent, and on the parties appearing on the attached Limited Service List via first class U.S. mail, postage prepaid (or as otherwise indicated).

    _/s/ Jason S. Brookner_
    Jason S. Brookner

# UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |
|---|---|
| In re: | § |
|  | § |
| LOCKWOOD HOLDINGS, INC., *et al.*, | § |
|  | § |
| Debtors.[1] | § |
|  | § |
|  | § |
|  | § |

Chapter 11

Case No. 18-30197 (DRJ)

Jointly Administered

## INTERIM ORDER (I) AUTHORIZING DEBTORS TO PAY OR HONOR PREPETITION OBLIGATIONS TO CERTAIN CRITICAL VENDORS AND SHIPPERS AND (II) GRANTING RELATED RELIEF
**[Relates to Dkt. No. __]**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for an entry of an interim order (this "Interim Order"), (a) authorizing the Debtors to pay or honor prepetition obligations to certain Critical Vendors and Shippers and (b) granting related relief, all as more fully set forth in the Motion; and the Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Motion being a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and having found that the Court may enter a final order consistent with Article III of the United States Constitution; and it appearing that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and it appearing that notice of the Motion was appropriate under the circumstances and that no other notice need be provided; and having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: Lockwood Holdings, Inc. (9726); LH Aviation, LLC (6984); Piping Components, Inc. (0197); Lockwood International, Inc. (8597); Lockwood Enterprises, Inc. (6504); LMG Manufacturing, Inc. (9468); and 7807 Eagle Lane, LLC (7382).

[2] Capitalized terms used but not otherwise defined shall have the meanings set forth to them in the Motion.

conducted on _____, 2018 (the "<u>Hearing</u>"); and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Motion is granted on an interim basis as set forth herein.

2.      The final hearing (the "<u>Final Hearing</u>") on the Motion shall be held on _____, 2018 at __:__ .m., prevailing Central Time.  Any objections or responses to entry of a final order on the Motion shall be filed on or before 5:00 p.m., prevailing Central Time, on _____, 2018. In the event no objections to entry of a final order on the Motion are timely received, this Court may enter such final order without need for the Final Hearing.

**A.      Critical Vendor Claims**

3.      The Debtors are authorized, but not directed, to pay Critical Vendor Claims in an amount not exceed $1,641,775.81 in the aggregate during the period from the date of this Interim Order until the date that a final order is entered in this matter, unless otherwise ordered by the Court, as set forth herein.

4.      A Critical Vendor's acceptance of payment is deemed to be acceptance of the terms of this Interim Order, and if the Critical Vendor thereafter does not provide the Debtors with Customary Trade Terms or Negotiated Trade Terms during these cases, then any payments of prepetition claims made after the Petition Date may be deemed to be unauthorized postpetition transfers and therefore recoverable by the Debtors in these chapter 11 cases.

5.      The Debtors are authorized to obtain written verification of Customary Trade Terms or Negotiated Trade Terms to be supplied by the Critical Vendors before issuing payment hereunder.

6.      If a Critical Vendor refuses to supply goods and/or services to the Debtors on Customary Trade Terms or Negotiated Trade Terms following receipt of payment of its Critical

Vendor Claim, the Debtors may, in their discretion and without further order of the Court, declare that provisional payments made to the Critical Vendor on account of the Critical Vendor Claim be deemed to have been in payment of then-outstanding postpetition claims of such vendors without further order of the Court or action by any person or entity.  In the event the Debtors exercise the right set forth in the preceding sentence, the Critical Vendor against which such right is exercised shall immediately return to the Debtors any payments made to it on account of its Critical Vendor Claim to the extent that any such payments exceed the postpetition claims of such vendor then outstanding without giving effect to any further rights of setoff, claims, provision for payment of reclamation or trust fund claims, or otherwise.

7.      If a Critical Vendor that has received a payment pursuant to this Interim Order refuses to perform its postpetition obligations pursuant to an executory contract with one or more of the Debtors in violation of the Bankruptcy Code, the Debtors may file an Order to Show Cause setting forth the Debtors' belief that the Critical Vendor is in violation of the Bankruptcy Code through its failure to perform under a prepetition agreement, identifying the name of the Critical Vendor, the identity of the agreement in question and seeking entry of such Order to Show Cause, which shall require the Critical Vendor to appear before the Court to show why it should not be (a) found to have willfully violated sections 362 and/or 365 of the Bankruptcy Code and (b) required to return any payment made by the Debtors to the Critical Vendor pursuant to this Interim Order, plus attorneys' fees and costs.

**B.      Shipper Claims**

8.      The Debtors are authorized, but not directed, to pay Shipper Claims in an amount not exceed $94,169.90 in the aggregate during the period from the date of this Interim Order

3

until the date that a final order is entered in this matter, unless otherwise ordered by the Court, as set forth herein.

9.      Any Shipper that accepts payment from the Debtors on account of its prepetition claim shall be deemed to have agreed to the terms and provisions of this Interim Order.

**C.      Outstanding Orders**

10.      All undisputed obligations related to the Outstanding Orders are granted administrative expense priority status in accordance with section 503(b)(1)(A) of the Bankruptcy Code.

**D.      General Provisions**

11.      Notwithstanding the relief granted in this Interim Order and any action taken pursuant to such relief, nothing in this Interim Order shall be deemed: (a) an admission as to the amount of, basis for, or validity of any claim against the Debtors under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's rights to dispute any claim; (c) an assumption, adoption, or rejection of any agreement, contract, or lease under section 365 of the Bankruptcy Code; (d) an admission as to the validity, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; or (e) a waiver of any claims or causes of action which may exist against any entity.

12.      Notwithstanding anything to the contrary contained herein, the relief granted in this Interim Order and any payment to be made hereunder shall be subject to the terms of any orders granting the use of cash collateral approved by this Court in these chapter 11 cases (including with respect to any budgets governing or relating to such use), and to the extent there

4

is any inconsistency between the terms of such cash collateral orders and any action taken or proposed to be taken hereunder, the terms of such cash collateral orders shall control.

13.     The contents of the Motion satisfy the requirements of Bankruptcy Rule 6003(b).

14.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Bankruptcy Local Rules are satisfied by such notice.

15.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order are immediately effective and enforceable upon its entry.

16.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Interim Order in accordance with the Motion.

17.     This Court retains exclusive jurisdiction with respect to all maters arising from or related to the implementation, interpretation, and enforcement of this Interim Order.

*ZZZZ*

5

**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| In re: | § | |
| | § | Chapter 11 |
| LOCKWOOD HOLDINGS, INC., *et al.*, | § | |
| | § | Case No. 18-30197 (DRJ) |
| Debtors.[1] | § | |
| | § | Jointly Administered |
| | § | |
| | § | |

**FINAL ORDER (I) AUTHORIZING DEBTORS TO PAY OR HONOR PREPETITION**
**OBLIGATIONS TO CERTAIN CRITICAL VENDORS**
**AND SHIPPERS AND (II) GRANTING RELATED RELIEF**
**[Relates to Dkt. No. __]**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for an entry of a final order (this "Final Order"), (a) authorizing the Debtors to pay or honor prepetition obligations to certain Critical Vendors and Shippers and (b) granting related relief, all as more fully set forth in the Motion; and the Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Motion being a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and having found that the Court may enter a final order consistent with Article III of the United States Constitution; and it appearing that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and it appearing that notice of the Motion was appropriate under the circumstances and that no other notice need be provided; and having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing conducted on

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: Lockwood Holdings, Inc. (9726); LH Aviation, LLC (6984); Piping Components, Inc. (0197); Lockwood International, Inc. (8597); Lockwood Enterprises, Inc. (6504); LMG Manufacturing, Inc. (9468); and 7807 Eagle Lane, LLC (7382).

[2] Capitalized terms used but not otherwise defined shall have the meanings set forth to them in the Motion.

4466248.1

_____, 2018 (the "Hearing"); and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.     The Motion is granted on a final basis as set forth herein.

**A.     Critical Vendor Claims**

2.     The Debtors are authorized, but not directed, to pay Critical Vendor Claims in an amount not exceed $3,283,551.63 in the aggregate, unless otherwise ordered by the Court, as set forth herein.

3.     A Critical Vendor's acceptance of payment is deemed to be acceptance of the terms of this Final Order, and if the Critical Vendor thereafter does not provide the Debtors with Customary Trade Terms or Negotiated Trade Terms during these cases, then any payments of prepetition claims made after the Petition Date may be deemed to be unauthorized postpetition transfers and therefore recoverable by the Debtors in these chapter 11 cases.

4.     The Debtors are authorized to obtain written verification of Customary Trade Terms or Negotiated Trade Terms to be supplied by the Critical Vendors before issuing payment hereunder.

5.     If a Critical Vendor refuses to supply goods and/or services to the Debtors on Customary Trade Terms or Negotiated Trade Terms following receipt of payment of its Critical Vendor Claim, the Debtors may, in their discretion and without further order of the Court, declare that provisional payments made to the Critical Vendor on account of the Critical Vendor Claim be deemed to have been in payment of then-outstanding postpetition claims of such vendors without further order of the Court or action by any person or entity.  In the event the Debtors exercise the right set forth in the preceding sentence, the Critical Vendor against which such right is exercised shall immediately return to the Debtors any payments made to it on

2

account of its Critical Vendor Claim to the extent that any such payments exceed the postpetition claims of such vendor then outstanding without giving effect to any further rights of setoff, claims, provision for payment of reclamation or trust fund claims, or otherwise.

6.      If a Critical Vendor that has received a payment pursuant to this Final Order refuses to perform its postpetition obligations pursuant to an executory contract with one or more of the Debtors in violation of the Bankruptcy Code, the Debtors may file an Order to Show Cause setting forth the Debtors' belief that the Critical Vendor is in violation of the Bankruptcy Code through its failure to perform under a prepetition agreement, identifying the name of the Critical Vendor, the identity of the agreement in question and seeking entry of such Order to Show Cause, which shall require the Critical Vendor to appear before the Court to show why it should not be (a) found to have willfully violated sections 362 and/or 365 of the Bankruptcy Code and (b) required to return any payment made by the Debtors to the Critical Vendor pursuant to this Final Order, plus attorneys' fees and costs.

**B.      Shipper Claims**

7.      The Debtors are authorized, but not directed, to pay Shipper Claims in an amount not exceed $94,169.90 in the aggregate, unless otherwise ordered by the Court, as set forth herein.

8.      Any Shipper that accepts payment from the Debtors on account of its prepetition claim shall be deemed to have agreed to the terms and provisions of this Final Order.

**C.      Outstanding Orders**

9.      All undisputed obligations related to the Outstanding Orders are granted administrative expense priority status in accordance with section 503(b)(1)(A) of the Bankruptcy Code.

3

**D.     General Provisions**

10.     Notwithstanding the relief granted in this Final Order and any action taken pursuant to such relief, nothing in this Final Order shall be deemed: (a) an admission as to the amount of, basis for, or validity of any claim against the Debtors under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's rights to dispute any claim; (c) an assumption, adoption, or rejection of any agreement, contract, or lease under section 365 of the Bankruptcy Code; (d) an admission as to the validity, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; or (e) a waiver of any claims or causes of action which may exist against any entity.

11.     Notwithstanding anything to the contrary contained herein, the relief granted in this Final Order and any payment to be made hereunder shall be subject to the terms of any orders granting the use of cash collateral approved by this Court in these chapter 11 cases (including with respect to any budgets governing or relating to such use), and to the extent there is any inconsistency between the terms of such cash collateral orders and any action taken or proposed to be taken hereunder, the terms of such cash collateral orders shall control.

12.     The contents of the Motion satisfy the requirements of Bankruptcy Rule 6003(b).

13.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Bankruptcy Local Rules are satisfied by such notice.

14.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Final Order are immediately effective and enforceable upon its entry.

15.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Final Order in accordance with the Motion.

16.     This Court retains exclusive jurisdiction with respect to all maters arising from or related to the implementation, interpretation, and enforcement of this Final Order.

*ZZZZ*

5

Limited Service List as of February 6, 2018

### 30 LAGEST UNSECURED CREDITORS

ALLIED FITTING LP
7200 Mykawa Road
Houston, TX 77033

PK VALVE
192-1 Shinchon-Dong
Changtown-City, KN

ORION SPA
Via Caboto-34148
Trieste Italy

ASSOCIATED VALVE
703-19th Ave
Nisku AB T9E 7V9

POYAM VALVES
Poligono Poyam Idiazabal Gipuzkoa
E-20213 Spain

GLOBAL STAINLESS SUPPLY
8900 Railwood Drive
Houston, TX 77078

COR-PRO Sys. Operating, Ltd.
10555 West Little York
Houston, TX 77041

PUSAN PIPE AMERICA INC
2100 Main Street
Suite 100
Irvine, CA 92614

PERAR S.P.A.
Via Gringa 37 20027 Rescaldina
Milan Italy

FLOWSERVE - RALEIGH
1900 S. Saunders Street
Raleigh, NC 27603

TIV VALVES SRL
Via Provinciale Saronnese
58 20027 Rescaldina MI
Italy

Zimmerman, Axelrad, Meyer
3040 Post Oak Blvd., Ste. 1300
Houston, TX 77056-6560

Ilshin Forged Steel Valve Co.
1 NA 703, Shiwha Indl
Comples 1244-2
Chongwang-Dong

Tiv Valves SRL
Via Provinciale Saronnese, 58 20027
Rescaldina, Italy

Harris County
Tax
Assessor-Collector
P.O. Box 4622
Houston, TX 77210-4622

J.D. Fields & Company Inc.
55 Waugh Dr., #1250
Houston, TX 77007

TRUFLO RONA SRL
Via Stendahal, 65
Delaplane, VA 20144

Canada Revenue Agency
275 Pope Road, Suite 103
Summerside, PE
C1N 6A2

Jiangsu YDF Valve Co Ltd.
Shangzhuang Town
Fredericksburg, VA 22402

TRUFLO RONA SRL
Via Grilli 2/A San Nicolo A Rewvvia
Bishopville, SC 29010

Briggs & Veselka Co.
Nine Greenway Plaza
Suite 1700
Houston, TX 77046

LVF Valve Solutions
Via G Mazzine 6 Partita
IVA 03076750169
Blacksburg, VA 24060

TWC – The Valve Company
P.O. Box 95455
Grapevine, TX 76099-0752

Hadassah Realty
(Wallisville)
17304 Preston Road, Suite 550
Dallas, TX 75252

Limited Service List as of February 6, 2018

O.M.B. - ITALY
Via Europa
24069 Cenate Sottto
Bergamo, Italy

USI Southwest
840 Gessner
Suite 600
Houston, TX 77024

Sherwood Pointe LLC
5135 Bluebonnet Boulevard
Baton Rouge, LA 70809

Orton Italiana SRL
Via Dei Bazachl 50
Piacenza Emilia-Romagna SC
29100

VALVOSIDER
Via San Rocco, 2 13011
Borgosesia VC, Italy

Tri-State Supply Co.
P.O. Box 40512
Houston, TX 77240-0512

## **DEBTORS**

Lockwood International, Inc.
1002 Windfern Road, Bldg. B
Houston, TX 77064

LH Aviation, LLC
1002 Windfern Road, Bldg. B
Houston, TX 77064

LMG Manufacturing, Inc.
1002 Windfern Road, Bldg. B
Houston, TX 77064

Lockwood Enterprises, Inc.
1002 Windfern Road, Bldg. B
Houston, TX 77064

Lockwood Holdings, Inc.
1002 Windfern Road, Bldg. B
Houston, TX 77064

Piping Components, Inc.
1002 Windfern Road, Bldg. B
Houston, TX 77064

7807 Eagle Lane, LLC
1002 Windfern Road, Bldg. B
Houston, TX 77064

## **DEBTORS COUNSEL**

Jason S. Brookner
1300 Post Oak Blvd., Suite 2000
Houston, Texas 77056

Lydia R. Webb
1601 Elm Street, Suite 4600
Dallas, Texas 75201

4459935.1

Limited Service List as of February 6, 2018

## EQUITY HOLDERS

Michael F. Lockwood
1002 Windfern Road, Bldg. B
Houston, TX 77064

## UNITED STATES TRUSTEE

Hector Duran
US Trustee
Office of the US Trustee
515 Rusk Ave., Ste 3516
Houston, TX 77002

## SECURED CREDITORS

Wells Fargo Equipment Finance, Inc.
P.O. Box 858178
Minneapolis, MN 55485

Sean B. Davis
WINSTEAD PC
600 Travis Street Suite 5200
Houston, Texas 77002

Annmarie Chiarello
WINSTEAD PC
500 Winstead Building
2728 N. Harwood Street
Dallas, Texas 75201

Wells Fargo
c/o Rakhee V. Patel WINSTEAD PC
500 Winstead Building
2728 N Harwood Street
Dallas, Texas 75201

4459935.1

Limited Service List as of February 6, 2018

## OTHER PARTIES MAKING AN
## APPEARANCE

| | | |
|---|---|---|
| Harris County<br>Cypres-Fairbanks ISD<br>LINEBARGER GOGGAN BLAIR &<br>SAMPSON LLO<br>P.O. Box 3064<br>Houston , TX 77253-3064 | ⌐ Courtney J. Hall<br>Assistant Attorney General<br>Bankr. & Collections Div., MC008<br>P.O. Box 12548<br>Austin, TX 78711-2548 | Martin Disiere Jefferson & Wisdom<br>LLP<br>808 Travis St., 20th Floor<br>Houston, TX 77002 |
| Robert L. Barrow<br>WARREN DRUGAN & BARROWS P.C.<br>800 Broadway<br>San Antonio, TX 78215 | Stephen M. Gray<br>ZACHARY INDUSTRIAL, INC.<br>P.O. Box 240130<br>San Antonio, TX 78224-0130 | |

4459935.1