## UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § § § | Chapter 11 |
| LOCKWOOD HOLDINGS, INC., *et al.*, | § § | Case No. 18-30197 (DRJ) |
| Debtors.[1] | § § § § | Jointly Administered |

## EMERGENCY MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING DEBTORS TO (A) CONTINUE TO OPERATE THEIR CASH MANGEMENT SYSTEM AND MAINTAIN EXISTING BANK ACCOUNTS AND (B) CONTINUE TO PERFORM INTERCOMPANY TRANSACTIONS, AND (II) GRANTING RELATED RELIEF

THIS MOTION SEEKS ENTRY OF AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.

EMERGENCY RELIEF HAS BEEN REQUESTED. IF THE COURT CONSIDERS THE MOTION ON AN EMERGENCY BASIS, THEN YOU WILL HAVE LESS THAN 21 DAYS TO ANSWER. IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE RESPONSE. A HEARING HAS BEEN REQUESTED ON THIS MATTER ON FEBRUARY 7, 2018 AT 11:00 A.M. (CT) BEFORE THE HONORABLE DAVID R. JONES, 515 RUSK STREET, COURTROOM 400, HOUSTON, TEXAS 77002.

REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.

Lockwood Holdings, Inc. and certain of its affiliates, the above-captioned debtors and debtors in possession (the "Debtors"), for their Emergency Motion for Entry of Interim and Final Orders (I) Authorizing Debtors to (A) Continue to Operate their Cash Management System and

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: Lockwood Holdings, Inc. (9726); LH Aviation, LLC (6984); Piping Components, Inc. (0197); Lockwood International, Inc. (8597); LMG Manufacturing, Inc. (9468); Lockwood Enterprises, Inc. (6504); and 7807 Eagle Lane, LLC (7382).

1

Maintain Existing Bank Accounts and (B) Continue to Perform Intercompany Transactions, and (II) Granting Related Relief (the "Motion"), respectfully represent:

## JURISDICTION AND VENUE

1.     The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2.     Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.     The bases for the relief requested herein are sections 105(a), 345, 363 and 503 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 9013-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "Bankruptcy Local Rules").

## PROCEDURAL HISTORY AND BACKGROUND

4.     On January 18, 2018 (the "First Petition Date"), Lockwood Holdings, Inc., LH Aviation, LLC and Piping Components, Inc. filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  On January 24, 2018 (the "Second Petition Date," and together with January 18, 2018 the "Petition Dates"), Lockwood International, Inc., LMG Manufacturing, Inc., Lockwood Enterprises, Inc., and 7807 Eagle Lane, LLC filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

5.     Pursuant to sections 1107 and 1108 of the Bankruptcy Code, the Debtors each remain in possession of their property and each is managing its business as a debtor in possession.  No trustee, examiner, or official committee has been appointed.

6.     A detailed description of the Debtors and their businesses, and the facts and circumstances supporting the Debtors' chapter 11 cases, are set forth in greater detail in the *Emergency Motion for Interim and Final Orders (A) Authorizing Use of Cash Collateral*

Pursuant to Section 363(c) of the Bankruptcy Code and (B) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001 (the "Cash Collateral Motion") [Docket No. 14].

## THE CASH MANAGEMENT SYSTEM

### A.    Overview

7.      In the ordinary course of business, the Debtors maintain an integrated, centralized cash management system (the "Cash Management System") comparable to the centralized cash management systems used by many other companies to manage the cash of operating units in a cost-effective and efficient manner.   The Debtors use the Cash Management System in the ordinary course of their business to collect, transfer, and disburse funds generated from their operations and to facilitate cash monitoring, forecasting, and reporting.   The Debtors' accounting department maintains daily oversight over the Cash Management System and implements cash management controls for entering, processing, and releasing funds, including in connection with Intercompany Transactions (as defined below).   The Debtors' accounting department regularly reconciles the Debtors' books and records to ensure that all transfers are accounted for properly.

### B.    Historical Cash Management System

8.      Prior to the Petition Dates, Lockwood International, Inc. ("LII"), the Debtors' operating entity, maintained a concentration account at Wells Fargo Bank, N.A. ("Wells Fargo") – the so-called "1933 Account" – that served as the centralized master funding account and funds the other accounts in the Cash Management System ("Concentration Account #1").   All amounts in Concentration Account #1 were then applied to the Wells Fargo line of credit.   LII then drew on that line of credit and deposited the drawn funds into its Master Operating Account, also at Wells Fargo.   On or around November 2016, draws under the line of credit were frozen as a result of certain alleged defaults under the Debtors' agreements with Wells Fargo.   Throughout

3

2017, Wells Fargo became more and more stringent on how and when the Debtors could use their cash.

9.      To manage daily cash inflows and outflows associated with operations, each of the Debtors (except Lockwood Enterprises, Inc. and Piping Components, Inc., which have no operations) maintain an operating account at Wells Fargo that collects revenue generated by, and makes payments associated with, such Debtor's operating activities, including wire and automated-clearing-house ("ACH") transfers (collectively, the "Operating Accounts").   In addition, LII maintains payroll accounts (the "Payroll Accounts"), through which payroll is funded for LMG Manufacturing, Inc., Lockwood Holdings, Inc. and LII's foreign and domestic operations.

10.      LII also maintains certain foreign bank accounts in connection with its international divisions in Singapore, Canada, the United Kingdom and Europe (collectively, the "Foreign Accounts").   These accounts are with well-known large financial institutions, and are maintained to facilitate both operations and payroll, as well as transactions in the appropriate local currency.[2]

**C.    Current Cash Management System**

11.      On or around November 2017, Wells Fargo accelerated the indebtedness under the Debtors' prepetition line of credit and prohibited the Debtors from paying any of their vendors or employees, effectively strangling the business.   At around the same time, LII opened a new bank account at Bank of America (the "BofA Account").   On or about November 17, 2017, LII sent a letter to its various customers informing them that the remittance information had changed and directing payments to LII to the BofA Account.

---

[2] As set forth more fully below and in Exhibit 2 to the form of proposed Interim Order attached hereto, the foreign Active Bank Accounts (as defined below) are maintained at Royal Bank of Canada, ING, Wells Fargo, and Bank of America.  The Debtors have numerous additional foreign bank accounts that inactive or closed, which are also set forth on Exhibit 2 to the form of proposed Interim Order.

12.     Thereafter, on or about December 1, 2017, December 11, 2017 and January 18, 2018, Wells Fargo sent a letter to the LII's various customers directing them to remit payment to a new Wells Fargo lock box ("Concentration Account #2").   Monies remitted to the BofA Account since November 17, 2017, have been used solely and exclusively to operate the business, and for no other purpose.   The Debtors have accounted, or shortly will account, to Wells Fargo for all sums that have passed through the BofA Account prior to the date of this Motion.   The Debtors are presently unsure how much Wells Fargo has collected in Concentration Account #2 through the date of this Motion and how such sums have been applied to the outstanding indebtedness.

13.     Following the Second Petition Date and the agreement to use cash collateral, Concentration Account #1 has been unfrozen and is again in use.

### D.   Bank Accounts

14.     The Cash Management System is summarized on Exhibit 1 attached to the Interim Order.   The Cash Management System is comprised of a total of 22 active bank accounts (the "Active Bank Accounts") and 32 inactive bank accounts (the "Inactive Bank Accounts"), each of which is identified on Exhibit 2 attached to the Interim Order (collectively, the "Bank Accounts").   The Active Bank Accounts reside at four different banks or financial institutions (collectively, the "Cash Management Banks"): fourteen (14) at Wells Fargo, three (3) at Bank of America, three (3) at the Royal Bank of Canada, and two (2) at ING Bank.   As of Petition Dates, the Debtors have approximately $1.4 million of cash on hand.

15.     The Debtors pay their Cash Management Banks monthly, quarterly, and annual fees incurred in connection with the Bank Accounts (the "Bank Fees").   The Debtors separately pay monthly, quarterly, and annual Bank Fees.   The annual Bank Fees total approximately $8,500 per year.   The Debtors seek authority to continue paying the Bank Fees, including

5

prepetition Bank Fees, in the ordinary course on a postpetition basis, consistent with historic practice.

### E.    Debtors' Existing Business Forms and Checks

16.    In the ordinary course of business, the Debtors use different check types, correspondence, and business forms, including, without limitation, letterhead, purchase orders, and invoices.  To minimize the expense to the Debtors' estates associated with developing or purchasing entirely new forms, the delay in conducting business prior to obtaining such forms, and the confusion of employees, customers, and suppliers/vendors, the Debtors seek authority to continue to use all correspondence and business forms as such forms existed immediately prior to the Petition Dates.

17.    The Debtors have prepared communication materials to distribute to various parties with whom they conduct business.  These materials will inform such parties of the chapter 11 cases.  The Debtors believe that these direct communications will provide adequate notice of the Debtors' status as debtors in possession.

### F.    United States Trustee's Operating Guidelines

18.    The *Operating Guidelines and Financial Reporting Requirements for Debtors in Possession and Trustees* (the "U.S. Trustee Guidelines") established by the United States Trustee's Office (the "U.S. Trustee") impose certain requirements on, and make recommendations to debtors in possession for the administration of chapter 11 cases.  These guidelines require debtors in possession to, among other things: (a) close all existing bank accounts and open a minimum of three new debtor-in-possession accounts – (i) one that is to house all money required to pay taxes, (ii) one that is to house all money required to pay general expenses, and (iii) one that is to house cash collateral, as that term is defined in § 363 of the

6

Bankruptcy Code; and (b) obtain checks for all debtor-in-possession accounts that have the designation "debtor-in-possession," the bankruptcy-case number, and the type of account.

## RELIEF REQUESTED

19.     The Debtors seek interim and final orders authorizing, but not directing, continued use of the Cash Management System, including:

    a.     to maintain and continue to use, with the same account numbers, all of their bank accounts existing on the Petition Dates in the same manner and with same account numbers, styles, and document forms as currently employed;

    b.     to open new debtor-in-possession accounts, only if needed after consultation with the Office of the U.S. Trustee, following a 45- day period in order to comply with the requirements of Bankruptcy Code section 345;

    c.     to maintain their bank accounts subject to control agreements in place now with the Wells Fargo and such other agreements that may be in form and substance acceptable to the Wells Fargo; and

    d.     to use, in their present form, all correspondence and business forms (including, without limitation, letterhead, purchase orders, and invoices) and other documents related to their bank accounts existing immediately before the Petition Dates; provided, however, as soon as practicable after the Petition Dates, the Debtors will note their status as a "debtor in possession" on checks that are electronically printed.

20.     In addition, the Debtors request that the Court schedule a final hearing to consider approval of this Motion on a final basis.

## ARGUMENTS AND AUTHORITIES

**A.     Maintaining the Existing Cash Management System Is Essential to the Debtors' Ongoing Operations and Restructuring Efforts**

21.     The U.S. Trustee Operating Guidelines require debtors in possession to, among other things: (a) close all existing bank accounts and open new debtor in possession bank accounts; (b) establish one debtor in possession account for all estate monies required for payment of taxes including payroll taxes; (c) physically set aside all monies required by law to

be withheld from employees or collected from others for taxes; (d) open a new set of books and records as of the commencement date of the case; (e) use new business forms indicating the debtor in possession status of the chapter 11 debtor; and (f) make all disbursements of estate funds by check with a notation representing the reason for the disbursement.  These requirements are intended to provide a clear line of demarcation between prepetition and postpetition transactions and operations and to prevent inadvertent payment of prepetition claims.

22.     The continuation of the Cash Management System nevertheless should be permitted pursuant to section 363(c)(1) of the Bankruptcy Code, which authorizes the debtor in possession to "use property of the estate in the ordinary course of business without notice or a hearing."  Bankruptcy courts routinely treat requests for authority to continue utilizing existing cash management systems as a relatively "simple matter."  *In re Baldwin-United Corp.*, 79 B.R. 321, 327 (Bankr. S.D. Ohio 1987).  In addition, in granting such relief, courts recognize that an integrated cash management system "allows efficient utilization of cash resources and recognizes the impracticalities of maintaining separate cash accounts for the many different purposes that require cash."  *In re Columbia Gas Sys., Inc.*, 136 B.R. 930, 934 (Bankr. D. Del. 1992), *aff'd in relevant part*, 997 F.2d 1039, 1061 (3d Cir. 1993).  The requirement to maintain all accounts separately "would be a huge administrative burden and economically inefficient."  *Columbia Gas*, 997 F.2d at 1061; *see also In re Southmark Corp.*, 49 F.3d 1111, 1114 (5th Cir. 1995) (stating that a cash management system allows a debtor "to administer more efficiently and effectively its financial operations and assets").

23.     Here, requiring the Debtors to adopt a new, segmented cash management system during these chapter 11 cases would be expensive, burdensome, and unnecessarily disruptive to the Debtors' operations.  Importantly, the Cash Management System provides the Debtors with the ability to quickly create status reports on the location and amount of funds, which, in turn,

8

allows management to track and control such funds, ensure cash availability, and reduce administrative costs through a centralized method of coordinating the collection and movement of funds.  As a result, any disruption of the Cash Management System could have a severe and adverse effect on the Debtors' restructuring efforts.  Indeed, absent the relief requested herein, requiring the Debtors to adopt a new, segmented cash management system could cause the Debtors' operations to grind to a halt, needlessly destroying the value of the Debtors' business enterprise.  By contrast, maintaining the current Cash Management System will facilitate the Debtors' transition into chapter 11 by, among other things, minimizing delays in paying postpetition debts and eliminating administrative inefficiencies.  Finally, maintaining the current Cash Management System will allow the Debtors' treasury and accounting employees to focus on their daily responsibilities.

24.     The Debtors respectfully submit that parties in interest will not be harmed by the Debtors' maintenance of the Cash Management System, including maintenance of the Bank Accounts, because the Debtors have implemented appropriate mechanisms to ensure that unauthorized payments will not be made on account of prepetition obligations.  Specifically, the Debtors have implemented internal control procedures that prohibit payments on account of prepetition debts without the prior approval of the Debtors' treasury department.  The Debtors will continue to work closely with the Cash Management Banks to ensure that appropriate procedures are in place to prevent checks that were issued prepetition from being honored without the Court's approval.  In light of such protective measures, the Debtors submit that maintaining the Cash Management System is in the best interests of their estates and creditors.

25.     Continued use of the Cash Management System will facilitate the Debtors' transition into chapter 11 by, among other things, avoiding administrative inefficiencies and expenses associated with disrupting this system and minimizing delays in the payment of

postpetition obligations.   Accordingly, the Debtors respectfully request the Court authorize the continued use of the existing Cash Management System to facilitate the Debtors' transition into chapter 11.   Specifically, the Debtors respectfully request that the Court authorize the Cash Management Banks to continue to maintain, service, and administer the Bank Accounts as accounts of the Debtors as debtors in possession, without interruption and in the ordinary course of business.   The Debtors further respectfully request that the Court authorize and direct the Cash Management Banks to receive, process, honor, and pay any and all checks, wire transfer, credit card, ACH payments and other instructions, and drafts payable through, or drawn or directed on, such Bank Accounts after the Petition Dates by holders, makers, or other parties entitled to issue instructions with respect thereto, irrespective of whether such checks, drafts, wires, credit card, or ACH payments are dated prior to or subsequent to the Petition Date.   The Debtors also respectfully request that, to the extent a Cash Management Bank honors a prepetition check or other item drawn on any account that is the subject of this Motion, either at the direction of the Debtors or in a good-faith belief that the Court has authorized such prepetition check or item to be honored, such Cash Management Bank will not be deemed to be liable to the Debtors or to their estates on account of such prepetition check or other item honored postpetition.  Such relief is reasonable and appropriate because the Cash Management Banks are not in a position to independently verify or audit whether the Debtors may pay a particular item in accordance with a Court order or otherwise.

26.     Finally, the Debtors respectfully request that the Court authorize the Debtors to continue to pay the Bank Fees, including any prepetition Bank Fees, and further authorize the Cash Management Banks to chargeback returned items to the Bank Accounts, whether such items are dated prior to, on, or subsequent to the Petition Date, in the ordinary course of business.   The Debtors further request that the Court order that liens on any of the Bank

10

Accounts granted to creditors will not have priority over the Bank Fees of the respective Cash Management Bank at which the Bank Account is located.

27.     In complex chapter 11 cases such as these, courts in this district often waive the Complex Chapter 11 Guidelines requirement that debtors establish new postpetition cash management systems, recognizing that they may harm a debtor's postpetition business operations and restructuring efforts to an extent that is out of proportion to the benefit, if any, the requirements afford the debtor's estate or parties in interest.  *See, e.g., In re Goodman Networks Inc.*, No. 17-31575 (MI) (Bankr. S.D. Tex. Mar. 15, 2017) (waiving the Complex Chapter 11 Guidelines and allowing the continued use of cash management systems and prepetition bank accounts); *In re SandRidge Energy, Inc.*, No. 16-32488 (DRJ) (Bankr. S.D. Tex. July 1, 2016) (same); *In re Ultra Petrol. Corp.*, No. 16-32202 (MI) (Bankr. S.D. Tex. May 3, 2016) (same); *In re Midstates Petrol. Co., Inc.*, No. 16-32237 (DRJ) (Bankr. S.D. Tex. May 2, 2016) (same); *In re Southcross Holdings LP*, No. 16-20111 (MI) (Bankr. S.D. Tex. Mar. 29, 2016) (same).

**B.     The Court Should Authorize the Debtors to Continue Using Their Existing Business Forms**

28.     To avoid disruption of the Cash Management System and unnecessary expense, the Debtors request that they be authorized to continue to use their Business Forms, substantially in the form existing immediately before the Petition Dates, without reference to their status as debtors in possession.   The Debtors submit that, given the limited nature of the preprinted Business Forms, parties in interest will not be prejudiced if the Debtors are authorized to continue to use their Business Forms substantially in the forms existing immediately before the Petition Date.   Parties doing business with the Debtors undoubtedly will be aware of their status as debtors in possession and, thus, changing forms such as letterhead would be an unnecessary additional expense.

11

29.     In other large chapter 11 cases, courts in this district and other jurisdictions have allowed debtors to use their prepetition business forms without the "debtor in possession" label. *See, e.g., In re Goodman Networks Inc.*, No. 17-31575 (MI) (Bankr. S.D. Tex. Mar. 15, 2017) (authorizing the debtors to continue using their existing business forms); *In re Linn Energy, LLC*, No. 16-60040 (DRJ) (Bankr. S.D. Tex. July 29, 2016); (same) *In re SandRidge Energy, Inc.*, No. 16-32488 (DRJ) (Bankr. S.D. Tex. July 1, 2016) (same); *In re Ultra Petrol. Corp.*, No. 16-32202 (MI) (Bankr. S.D. Tex. May 3, 2016) (same); *In re Midstates Petrol. Com., Inc.*, No. 16-32237 (DRJ) (Bankr. S.D. Tex. May 2, 2016) (same).

**C.     The Court Should Authorize the Debtors to Continue Entering Into Intercompany Transactions in the Ordinary Course and Grant Administrative Expense Status to Postpetition Intercompany Balances Between Debtors**

30.     The Debtors' funds move through the Cash Management System as described above and, at any given time, there may be Intercompany Claims owing by and between two Debtors.   Intercompany Transactions are made between and among Debtor affiliates in the ordinary course as part of the Cash Management System.  The Debtors track all fund transfers in their accounting system and can ascertain, trace, and account for all Intercompany Transactions previously described.   The Debtors, moreover, will continue to maintain records of such Intercompany Transactions.

31.     Because these Intercompany Transactions represent extensions of intercompany credit made in the ordinary course of business that are an essential component of the Cash Management System, the Debtors respectfully request the authority to continue conducting the Intercompany Transactions in the ordinary course of business without need for further Court order.  If the Intercompany Transactions were to be discontinued, the Cash Management System and related administrative controls would be disrupted to the Debtors' and their estates' detriment.

32.     To ensure each individual Debtor will not, at the expense of its creditors, fund the operations of another entity, the Debtors respectfully request, pursuant to section 503(b)(1) of the Bankruptcy Code, that all postpetition payments between or among a Debtor and another Debtor on account of an Intercompany Transaction be accorded administrative expense status.[3]   This relief will ensure that each entity receiving payments from a Debtor will continue to bear ultimate repayment responsibility for such ordinary course transactions, thereby reducing the risk that these transactions would jeopardize the recoveries available to each Debtor's respective creditors.

33.     Similar relief has been granted in other comparable multi-debtor chapter 11 cases in this district.   *See, e.g., In re Goodman Networks Inc.*, No. 17-31575 (MI) (Bankr. S.D. Tex. Mar. 15, 2017) (authorizing the debtors to continue conducting intercompany transactions); *In re SandRidge Energy, Inc.*, No. 16-32488 (DRJ) (Bankr. S.D. Tex. July 1, 2016) (same); *In re Ultra Petrol. Corp.*, No. 16-32202 (MI) (Bankr. S.D. Tex. May 3, 2016) (same); *In re Energy XXI Ltd.*, No. 16-31928 (DRJ) (Bankr. S.D. Tex. Apr. 15, 2016) (same); *In re Southcross Holdings LP*, No. 16-20111 (MI) (Bankr. S.D. Tex. Mar. 29, 2016) (same).

## EMERGENCY CONSIDERATION

34.     In accordance with Bankruptcy Local Rule 9013-1, the Debtors respectfully request emergency consideration of this Motion pursuant to Bankruptcy Rule 6003, which empowers a court to grant relief within the first 21 days after the commencement of a chapter 11 case "to the extent that relief is necessary to avoid immediate and irreparable harm."   Here, the Debtors believe an immediate and orderly transition into chapter 11 is critical to the viability of their operations and that any delay in granting the relief requested could hinder the Debtors'

---

[3] Notwithstanding the administrative expense status requested for the Intercompany Transactions, all Debtors reserve their rights to dispute any Intercompany Transaction (or payment made on account of an Intercompany Transaction) on any ground, including the methodology for calculation of such transaction or payment, and to claw back or avoid such transactions and/or payments.

13

operations and cause irreparable harm.  Further, the failure to receive the requested relief during the first 21 days of these chapter 11 cases would severely disrupt the Debtors' operations at this critical juncture.  Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 and, therefore, respectfully request that the Court approve the relief requested in this Motion on an emergency basis

## REQUEST FOR WAIVER OF STAY

35.     The Debtors seek a waiver of any stay of any order approving this Motion. Pursuant to Bankruptcy Rule 6004(h), "[an] order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  FED. R. BANKR. P. 6004(h).  As noted above, the immediate payment of all amounts identified in this Motion is essential to prevent potentially irreparable damage to the Debtors' operations and value.  Accordingly, the Debtors submit that cause exists to justify a waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h), if it even applies.

## NOTICE

36.     The Debtors will provide notice of this Motion to: (a) the Office of the United States Trustee for the Southern District of Texas; (b) counsel to Wells Fargo as administrative agent under the Debtors' credit agreement; and (c) any party that has requested notice pursuant to Bankruptcy Rule 2002.

## NO PRIOR REQUEST

37.     No prior request for the relief sought in this Motion has been made to this or any other court.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter the Orders granting the relief requested herein and grant such other and further relief as may be just and proper.

Respectfully submitted this 6th day of February, 2018.

**GRAY REED & McGRAW LLP**

By:  */s/ Jason S. Brookner*
    Jason S. Brookner
    Texas Bar No. 24033684
1300 Post Oak Blvd., Suite 2000
Houston, Texas 77056
Telephone:  (713) 986-7000
Facsimile:  (713) 986-7100
Email:      jbrookner@grayreed.com

-and-

    Lydia R. Webb
    Texas Bar No. 24083758
1601 Elm Street, Suite 4600
Dallas, Texas 75201
Telephone:  (214) 954-4135
Facsimile:  (214) 953-1332
Email:      lwebb@grayreed.com

**PROPOSED COUNSEL TO THE DEBTORS**

## CERTIFICATE OF SERVICE

I do hereby certify that on February 6, 2018 a true and correct copy of the foregoing pleading was served via CM/ECF to all parties authorized to receive electronic notice in this case and via first class U.S. Mail on the parties set forth on the attached Limited Service List.

*/s/ Jason S. Brookner*
Jason S. Brookner

15

**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § § § | Chapter 11 |
| LOCKWOOD HOLDINGS, INC., *et al.*, | § § | Case No. 18-30197 (DRJ) |
| Debtors.[1] | § § § | Jointly Administered |
| | § | |

**INTERIM ORDER (I) AUTHORIZING DEBTORS TO (A) CONTINUE TO OPERATE**
**THEIR CASH MANGEMENT SYSTEM AND MAINTAIN EXISTING BANK**
**ACCOUNTS AND (B) CONTINUE TO PERFORM INTERCOMPANY**
**TRANSACTIONS, AND (II) GRANTING RELATED RELIEF**
**[Relates to Dkt. No. ____]**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an interim order (this "Interim Order"), (a) authorizing the Debtors to (i) continue to operate their cash management system and maintain existing bank accounts and (ii) continue to perform intercompany transactions consistent with historical practice, as modified as set forth herein, (b) scheduling a final hearing to consider approval of the Motion on a final basis, and (c) granting related relief, all as more fully set forth in the Motion; and the Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Motion being a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and having found that the Court may enter a final order consistent with Article III of the United States Constitution; and it appearing that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and it appearing that notice of the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: Lockwood Holdings, Inc. (9726); LH Aviation, LLC (6984); Piping Components, Inc. (0197); Lockwood International, Inc. (8597); LMG Manufacturing, Inc. (9468); Lockwood Enterprises, Inc. (6504); and 7807 Eagle Lane, LLC (7382).

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.



**EXHIBIT**

**A**

Motion was appropriate under the circumstances and that no other notice need be provided; and having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing conducted on _____, 2018 (the "Hearing"); and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Motion is granted on an interim basis as set forth herein.

2.      The final hearing (the "Final Hearing") on the Motion shall be held on _____, 2018, at __:__ _.m., prevailing Central Time. Any objections or responses to entry of a final order on the Motion shall be filed and served on or before __:__ _.m., prevailing Central Time, on _____, 2018.  In the event no objections to entry of the Final Order on the Motion are timely received, this Court may enter such Final Order without need for the Final Hearing.

3.      The Debtors are authorized, but not directed, to: (a) continue operating the Cash Management System, substantially as identified on Exhibit 1 attached hereto and as described in the Motion; (b) honor their prepetition obligations related thereto, including the Bank Fees; (c) maintain existing Business Forms; and (d) continue to perform Intercompany Transactions.

4.      Those certain existing deposit agreements between the Debtors and the Cash Management Banks shall continue to govern the postpetition cash management relationship between the Debtors and the respective Cash Management Bank, and all of the provisions of such agreements, including the termination and fee provisions, shall remain in full force and effect, and the Debtors and the Cash Management Banks may, without further order of this Court, agree to and implement changes to the Cash Management System and procedures related thereto in the ordinary course of business, including the closing of Bank Accounts or

2

the opening of new bank accounts.

5.       The Debtors are further authorized, but not directed, to: (a) continue to use, with the same account numbers, the Bank Accounts in existence as of the Petition Dates, including those accounts identified on <u>Exhibit 2</u> attached hereto and need not comply with certain guidelines related to bank accounts set forth in the U.S. Trustee Guidelines; (b) use, in their present form, all correspondence and Business Forms (including letterhead) without reference to the Debtors' status as debtors in possession; (c) treat the Bank Accounts for all purposes as accounts of the Debtors as debtors in possession; (d) deposit funds in and withdraw funds from the Bank Accounts by all usual means, including checks, wire transfers, and other debits; (e) pay the Bank Fees (including any prepetition amounts); and (f) pay any ordinary course Bank Fees incurred in connection with the Bank Accounts, and to otherwise perform their obligations under the documents governing the Bank Accounts; *provided, however*, as soon as practicable after the Petition Dates, the Debtors will note their status as a "debtor in possession" on checks that are electronically printed.

6.       The Cash Management Banks are authorized to continue to maintain, service, and administer the Bank Accounts as accounts of the Debtors as debtors in possession, without interruption and in the ordinary course, and to receive, process, honor, and pay, to the extent of available funds, any and all checks, drafts, wires, credit card payments, and ACH transfers issued and drawn on the Bank Accounts after the Petition Dates by the holders or makers thereof, as the case may be; *provided, however*, that those certain existing deposit agreements between the Debtors and the Cash Management Banks shall continue to govern the postpetition cash management relationship between the Debtors and the Cash Management Banks, and all of the

3

provisions of such agreements, including, without limitation, the termination and fee provisions, shall remain in full force and effect.

7.      The Debtors shall have 30 days from entry of this Order to comply with the requirements of section 345 of the Bankruptcy Code to the extent the Debtors are not already in compliance.

8.      The relief granted in this Order is extended to any new bank account opened by the Debtors after the date hereof, which account shall be deemed a Bank Account, and to the bank at which such account is opened, which bank shall be deemed a Cash Management Bank. As required herein, to the extent the Debtors open a new bank account, they shall provide notice to the U.S. Trustee and counsel to any official statutory committee appointed in these chapter 11 cases.   The Debtors are authorized to enter into any ancillary agreements, including, without limitation, new deposit account control agreements related to any new bank account opened by the Debtors.

9.      All banks, including the Cash Management Banks, provided with notice of this Order maintaining any of the Bank Accounts shall not honor or pay any bank payments drawn on the listed Bank Accounts or otherwise issued before the Petition Dates for which the Debtors specifically issue stop payment orders in accordance with the documents governing such Bank Accounts.

10.     In the course of providing cash management services to the Debtors, each of the Cash Management Banks is authorized, without further order of this Court, to deduct the applicable fees and other applicable charges from the appropriate Bank Accounts.

11.     Subject to the terms set forth herein, any bank, including a Cash Management

4

Bank, may rely upon the representations of the Debtors with respect to whether any check, draft, wire, or other transfer drawn or issued by the Debtors prior to the Petition Dates should be honored pursuant to any order of this Court, and no bank that honors a prepetition check or other item drawn on any account that is the subject of this Order (a) at the direction of the Debtors or (b) in a good-faith belief that this Court has authorized such prepetition check or item to be honored shall be deemed to be nor shall be liable to the Debtors or their estates on account of such prepetition check or other item being honored postpetition, or otherwise deemed to be in violation of this Order.

12.      Each of the Cash Management Banks is authorized to debit the Debtors' accounts in the ordinary course of business without the need for further order of this Court for: (i) all checks drawn on the Debtors' accounts which are cashed at such Cash Management Bank's counters or exchanged for cashier's checks by the payees thereof prior to the Petition Dates; and (ii) all checks or other items deposited in one of Debtor's accounts with such Cash Management Bank prior to the Petition Dates which have been dishonored or returned unpaid for any reason, together with any fees and costs in connection therewith, to the same extent the Debtor was responsible for such items prior to the Petition Dates.

13.      Any of the Cash Management Banks may rely on the representations of the Debtors with respect to whether any check or other payment order drawn or issued by the Debtors prior to the Petition Dates should be honored pursuant to this or any other order of this Court, and such Cash Management Bank shall not have any liability to any party for relying on such representations by the Debtors as provided for herein;

14.      Any banks, including the Cash Management Banks, are further authorized to

5

4446125.3

(a) honor the Debtors' directions with respect to the opening and closing of any Bank Account and (b) accept and hold, or invest, the Debtors' funds in accordance with the Debtors' instructions; *provided* that the Cash Management Banks shall not have any liability to any party for relying on such representations to the extent such reliance otherwise complies with applicable law.

15.     The Debtors are authorized to enter into and engage in postpetition Intercompany Transactions in the ordinary course of business and settle, in cash, any prepetition Intercompany Claims discovered during a postpetition intercompany true-up that are related to costs not previously posted to the balances for each entity.  All postpetition payments from a Debtor to another Debtor under any postpetition Intercompany Transaction are hereby accorded administrative expense priority status.  The Debtors shall continue to maintain current records with respect to all transfers of cash so that all transactions, including the postpetition Intercompany Transactions, may be readily ascertained, traced, and recorded properly on applicable intercompany accounts.

16.     Nothing contained in the Motion or this Order shall be construed to (a) create or perfect, in favor of any person or entity, any interest in cash of a Debtor that did not exist as of the Petition Dates or (b) alter or impair any security interest or perfection thereof, in favor of any person or entity, that existed as of the Petition Dates.

17.     Notwithstanding the Debtors' use of a consolidated cash management system, the Debtors shall calculate quarterly fees under 28 U.S.C. § 1930(a)(6) based on the disbursements of each Debtor, regardless of which entity pays those disbursements.

18.     The banks and financial institutions on which checks were drawn or electronic

6

4446125.3

payment requests made in payment of the prepetition obligations approved herein are authorized to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Order.

19.      The Debtors are authorized to issue postpetition checks, or to effect postpetition fund transfer requests, with respect to prepetition amounts owed where such payments are authorized by an order of this Court.

20.      Notwithstanding anything to the contrary contained herein, the relief granted in this Interim Order and any payment to be made hereunder shall be subject to the terms of any orders granting the use of cash collateral approved by this Court in these chapter 11 cases (including with respect to any budgets governing or relating to such use), and to the extent there is any inconsistency between the terms of such cash collateral orders and any action taken or proposed to be taken hereunder, the terms of such cash collateral orders shall control.

21.      Notwithstanding the relief granted in this Order and any actions taken pursuant to such relief, nothing in this Order shall be deemed: (a) an admission as to the validity of any prepetition claim against a Debtor entity; (b) a waiver of the Debtors' right to dispute any prepetition claim on any grounds; (c) a promise or requirement to pay any prepetition claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Order or the Motion; (e) a request or authorization to assume any prepetition agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; or (f) a waiver of the Debtors' rights under the Bankruptcy Code or any other applicable law.

7

22.     The contents of the Motion satisfy the requirements of Bankruptcy Rule 6003(b).

23.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Bankruptcy Local Rules are satisfied by such notice.

24.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.  As soon as practicable after entry of this Order, the Debtors shall serve this Order on each of the Cash Management Banks.

25.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

26.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

**Signed on February \_\_\_, 2018.**

_____

**DAVID R. JONES**
**UNITED STATES BANKRUPTCY JUDGE**

8

4446125.3

**EXHIBIT 1**



**EXHIBIT 2**

**Bank Accounts**

| Last 4 Digits of Account Number | Entity | Account Description | Bank Name | Trading Currency |
|---|---|---|---|---|
| 1925 | Lockwood International, Inc. | Zero Balance Account | Wells Fargo Bank, N.A. | USD |
| 1930 | Lockwood International, Inc. | Zero Balance Account | Wells Fargo Bank, N.A. | USD |
| 1933 | Lockwood International, Inc. | Concentration Account #1 | Wells Fargo Bank, N.A. | USD |
| 1941 | Lockwood International, Inc. | Payroll Account | Wells Fargo Bank, N.A. | USD |
| 4504 | Lockwood International, Inc. | Operating Account | Bank of America | USD |
| 6838 | Lockwood International, Inc. | Singapore Operating Account | Wells Fargo Bank, N.A. (Singapore) | SGD |
| 5028 | Lockwood International, Inc. | Singapore Receivables Account | Bank of America (Singapore) | SGD |
| 5010 | Lockwood International, Inc. | Singapore Operating Account | Bank of America (Singapore) | SGD |
| 8044 | Lockwood International, Inc. | Canada Operating Account (CAD) | Royal Bank of Canada | CAD |
| 1145 | Lockwood International, Inc. | Canada Operating Account (USD) | Royal Bank of Canada | USD |
| 8309 | Lockwood International, Inc. | Canada Payroll Account | Royal Bank of Canada | CAD |
| 3376 | Lockwood International, Inc. | UK Operating Account (EUR) | Wells Fargo Bank, N.A. (London) | EUR |
| 3375 | Lockwood International, Inc. | UK Operating Account (GBP) | Wells Fargo Bank, N.A. (London) | GBP |
| 9901 | Lockwood International, Inc. | ACH Clearing | Wells Fargo Bank, N.A. (London) | EUR |
| 4968 | Lockwood International, Inc. | Operating Account (EUR) | ING Bank N.V. | EUR |
| 4898 | Lockwood International, Inc. | Operating Account (GBP) | ING Bank N.V. | GBP |
| 1990 | Lockwood Holdings, Inc. | Operating Account | Wells Fargo Bank, N.A. | USD |
| 6319 | Lockwood Holdings, Inc. | Canada Operating Account | Royal Bank of Canada | CAD |
| 5079 | LMG Manufacturing, Inc. | Operating Account | Wells Fargo Bank, N.A. | USD |
| 6171 | LH Aviation LLC | Operating Account | Wells Fargo Bank, N.A. | USD |
| 5754 | Lockwood Enterprises, Inc. | Operating Account | Wells Fargo Bank, N.A. | USD |

| 3493 | 7807 Eagle Lane LLC | Operating Account | Wells Fargo Bank, N.A. | USD |
|---|---|---|---|---|
| 0890 | Lockwood International | Closed/ Inactive | Banca Galileo S.p.A. | EUR |
| 0015 | Lockwood International | Closed/ Inactive | Banca Galileo S.p.A. | USD |
| 4469 | Lockwood International | Closed/ Inactive | Banca Intesa SanPaolo S.p.A. | EUR |
| 1612 | Lockwood International | Closed/ Inactive | Banca Intesa SanPaolo S.p.A. | USD |
| 0775 | Lockwood International | Closed/ Inactive | Banca Popolare Milano | EUR |
| 9043 | Lockwood International | Closed/ Inactive | Banca Unicredit S.p.A. | EUR |
| 0963 | Lockwood International | Closed/ Inactive | Banca Unicredit S.p.A. | USD |
| 1415 | Lockwood International | Closed/ Inactive | Banca Unicredit S.p.A. | USD |
| 2033 | Lockwood International | Closed/ Inactive | Bank of America, N.A. Seoul Branch | KRW |
| 2132 | Lockwood International | Closed/ Inactive | Bank of America, N.A. Seoul Branch | USD |
| 7846 | Lockwood International | Closed/ Inactive | Korean Exchange Bank | KRW |
| 9295 | Lockwood International | Closed/ Inactive | Korean Exchange Bank | KRW |
| 8011 | Lockwood International | Closed/ Inactive | Korean Exchange Bank | USD |
| 7721 | Lockwood International | Closed/ Inactive | Shin Han Bank | KRW |
| 1012 | Lockwood International (Lockwood Valves SEAsia Pte Ltd) | Closed/ Inactive | Wells Fargo Bank, N.A. | USD |
| 4086 | Lockwood International (Lockwood Valves SEAsia Pte Ltd) | Closed/ Inactive | Wells Fargo Bank, N.A. | SGD |
| 9629 | Lockwood International (Lockwood Holdings Pte Ltd) | Closed/ Inactive | Wells Fargo Bank, N.A. | SGD |
| 1623 | Lockwood International (Lockwood Valves SEA Pte Ltd) | Closed/ Inactive | Wells Fargo Bank, N.A. | SGD |
| 4732 | Lockwood International | Unknown | NEBBANK | |
| 0068 | Lockwood International (PT TY Valve Indonesia) | Closed/ Inactive | HSBC Limited | IDR |
| 0116 | Lockwood International (PT TY Valve Indonesia) | Closed/ Inactive | HSBC Limited | SGD |
| 5087 | LMG Manufacturing, Inc. | Closed/ Inactive | Wells Fargo Bank, N.A. | USD |
| 9629 | Lockwood International (Lockwood Holdings Pte Ltd) | Closed/ Inactive | DBS Bank, LTD | SGD |
| 1623 | Lockwood International (TY Valve SEA Pte. Ltd) | Closed/ Inactive | DBS Bank, LTD | SGD |

11

4446125.3

| 4086 | Lockwood International (Lockwood Valve SEA Pte. Ltd) | Closed/ Inactive | DBS Bank, LTD | SGD |
|---|---|---|---|---|
| 1011 | Lockwood International (Lockwood Valves SEAsia Pte Ltd) | Closed/ Inactive | DBS Bank, LTD | USD |
| 5268 | Lockwood International (OMB Americas Valves Inc.) | Closed/ Inactive | Bank of America, N.A. | USD |
| 5271 | Lockwood International (OMB Americas Valves Inc.) | Closed/ Inactive | Bank of America, N.A. | USD |
| 8299 | Lockwood International (PT TY Valve Indonesia) | Closed/ Inactive | Permata Bank | SGD |
| 7016 | Lockwood International (Vietnam Lockwood Co. LTD) | Closed/ Inactive | Techcombank | VND |
| 7024 | Lockwood International (Vietnam Lockwood Co. LTD) | Closed/ Inactive | Techcombank | USD |
| 6345 | Lockwood International | Closed/ Inactive | National Bank of Australia | AUD |

12