## UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | Chapter 11 |
| LOCKWOOD HOLDINGS, INC., *et al.*, | § | |
| | § | Case No. 18-30197 (DRJ) |
| Debtors.[1] | § | |
| | § | Jointly Administered |
| | § | |
| | § | |

## EMERGENCY MOTION FOR AUTHORITY TO
## ENTER INTO INSURANCE PREMIUM FINANCE AGREEMENT

THIS MOTION SEEKS ENTRY OF AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.

EMERGENCY RELIEF HAS BEEN REQUESTED. IF THE COURT CONSIDERS THE MOTION ON AN EMERGENCY BASIS, THEN YOU WILL HAVE LESS THAN 21 DAYS TO ANSWER. IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE RESPONSE. A HEARING HAS BEEN SET ON THIS MATTER ON FEBRUARY 13, 2018 AT 10:45 A.M. (CT) BEFORE THE HONORABLE DAVID R. JONES, 515 RUSK STREET, COURTROOM 400, HOUSTON, TEXAS 77002.

REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.

Lockwood Holdings, Inc. and certain of its affiliates, the above-captioned debtors and debtors in possession (the "Debtors"), for their *Emergency Motion for Authority to Approve Insurance Premium Finance Agreement* (the "Motion"), respectfully represent:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: Lockwood Holdings, Inc. (9726); LH Aviation, LLC (6984); Piping Components, Inc. (0197); Lockwood International, Inc. (8597); LMG Manufacturing, Inc. (9468); Lockwood Enterprises, Inc. (6504); and 7807 Eagle Lane, LLC (7382).

1

## JURISDICTION AND VENUE

1.      The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2.      Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The bases for the relief requested herein are sections 105(a), 362, 363, and 364 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 4001(d), 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 9013-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "Bankruptcy Local Rules").

## PROCEDURAL HISTORY AND BACKGROUND

### A.      General

4.      On January 18, 2018 (the "First Petition Date"), Lockwood Holdings, Inc., LH Aviation, LLC and Piping Components, Inc. filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  On January 24, 2018 (the "Second Petition Date," and together with January 18, 2018 the "Petition Dates"), Lockwood International, Inc., LMG Manufacturing, Inc., Lockwood Enterprises, Inc., and 7807 Eagle Lane, LLC filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

5.      Pursuant to sections 1107 and 1108 of the Bankruptcy Code, the Debtors each remain in possession of their property and each is managing its business as a debtor in possession.  No trustee, examiner, or official committee has been appointed.

6.      A detailed description of the Debtors and their businesses, and the facts and circumstances supporting the Debtors' chapter 11 cases, are set forth in greater detail in the *Emergency Motion for Interim and Final Orders (A) Authorizing Use of Cash Collateral Pursuant to Section 363(c) of the Bankruptcy Code and (B) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001* (the "Cash Collateral Motion") [Docket No. 14].

2

**B.**      **Premium Finance**

7.      In the ordinary course of its business, the Debtors maintain director and officer, commercial property, general liability, vehicle, aircraft, workers' compensation, and umbrella insurance (the "Policies").  Continuous insurance coverage is critical to the continued operation of the Debtors' business.  Moreover, in many instances, insurance coverage is required by the regulations, laws, certain credit agreements, and contracts that govern the Debtors' commercial activities, including the requirement by the Office of the United States Trustee (the "U.S. Trustee") that a debtor maintain adequate coverage given the circumstances of its chapter 11 case.  Finally, continuous coverage is prudent business judgment to provide for coverage for potential claims or causes of action that could arise postpetition.

8.      The Debtors obtained the Policies prior to the Petition Dates through their insurance broker, USI Southwest Inc.  In connection with renewing the Policies for 2018, the Debtors seek to execute a premium finance agreement with Premium Assignment Corporation ("PAC").  A true and correct copy of the Premium Finance Agreement (the "Agreement") is attached hereto as Exhibit "A" and incorporated herein by reference.  Under the Agreement, the Debtors would make twelve monthly payments to PAC in the amount of $45,545.90, with the first two payments for January and February 2018 being due immediately.  The total amount to be financed is $356,727.00.  The Agreement carries an interest rate of 5.68% and contemplates a $152,883.00 cash down payment.  To secure the payment of all sums due under the Agreement, the Agreement grants PAC a security interest in any unearned premiums or other sums which pay become payable under the Policies.

9.      The Debtors are otherwise unable to pay the total price of premiums in cash upfront.  If the Debtors are unable to enter into the Agreement, the Policies would terminate and the Debtors would then be required to obtain replacement insurance on an expedited basis and

likely at substantial incremental cost to the estates.  As a result, it is necessary for the Debtors to enter into the Agreement with PAC to finance its premiums over the next 10 months.   In addition, to the extent that the Agreement expires during the course of these chapter 11 cases, the Debtors seek authority to renew the Agreement, or enter into a new premium financing agreement, without further Court approval.

10.     Although premium payments are contemplated by the Debtors' 13-week cash flow budget attached to the *Second Interim Agreed Order Authorizing Use of Cash, Approving Budget, Granting Replacement Liens and Setting Final Hearing* [Docket No. 76] (the "Budget"), the amount of the down payment and the first two monthly installments under the Agreement ($243,974.80) is not slated to be paid in the first two budgeted weeks.  Such amounts need to be paid immediately, but in no event later than February 16, 2018, in order to ensure that the Policies do not lapse.  The Debtors have requested authority to make appropriate modifications to the Budget from their prepetition lender, Wells Fargo Bank, N.A.  As of the filing of this Motion, the Debtors have not received such authority but will endeavor to reach agreement with Wells Fargo on the use of cash collateral to make the payments under the Agreement.

## RELIEF REQUESTED

11.     By this Motion, the Debtors respectfully request authority to (i) enter into the Agreement, (ii) immediately pay PAC $243,974.80, consisting of the down payment and the first two monthly installments under the Agreement, and (iii) renew or enter into a new premium financing agreement to the extent the Agreement expires during the course of these chapter 11 cases.  In addition, the Debtors seek prospective relief from the automatic stay in favor of PAC to allow such lender to cancel the Policies and foreclose on unearned premiums without any further order of the Court, pursuant to Bankruptcy Code section 362(d) and Bankruptcy Rule 4001(d).

4

## BASIS FOR RELIEF

**A.     Continuation of the Insurance Policies Is Required by the Bankruptcy Code and U.S. Trustee Operating Guidelines**.

12.     Section 1112(b)(4)(C) of the Bankruptcy Code provides that "failure to maintain appropriate insurance that poses a risk to the estate or to the public" is "cause" for mandatory conversion or dismissal of a chapter 11 case. 11 U.S.C. § 1112(b)(4)(C).  In addition, in many instances, the coverage provided under the Policies is required by the regulations, laws, certain credit agreements, and contracts that govern the Debtors' commercial activities, including the operating guidelines issued by the Office of the United States Trustee for Region 7 (the "U.S. Trustee Operating Guidelines").  Given this backdrop, the Debtors believe it is essential to their estates, and consistent with the Bankruptcy Code and the U.S. Trustee Operating Guidelines, that they (a) maintain and continue to make all payments required under their Policies, including in connection with the Agreement and (b) have the authority to supplement, amend, extend, renew, or replace their Policies as needed, in their judgment, without further order of the Court.

**B.     Entry into the Agreement Is Appropriate Pursuant to Sections 105(a) and 364 of the Bankruptcy Code**

13.     Section 364(c)(2) of the Bankruptcy Code states that if a debtor is unable to obtain unsecured credit allowable under Section 503(b)(1) of the Bankruptcy Code as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt secured by a lien on property of the estate that is not otherwise subject to a lien. 11 U.S.C. § 364(c)(2).  In addition, section 105(a) of the Bankruptcy Code provides, in pertinent part, that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

14.     As discussed above, the Debtors believe that entry into the Agreement is in the best interests of their estates.  The Policies are extremely valuable to the Debtors' business

operations and it is essential to maintain them in the interest of the preservation of the property, assets, and business of the Debtors.  Presently, the Debtors have been unable to find financing on better terms and cannot maintain the Policies unless the premiums are financed.  If the relief sought herein is not granted, it could expose the Debtors to serious risks associated with a lack of liability and property insurance coverage, including a potential risk of loss of valuable assets owned by the estate and violations of applicable law.

15.     Entry into the Agreement preserves the Policies, which provide a comprehensive range of coverage protecting the Debtors' property, assets, and equipment, all necessary to conducting the Debtors' business.  Such maintenance is critical to the Debtors' reorganization process.  Without the coverage provided by the Policies, the Debtors could incur liability relating to their daily operations.  If the Debtors are unable to pay the premiums necessary to maintain the Policies, they may be unable to find alternative insurance carriers willing to offer them similar insurance at a competitive rate.

16.     Moreover, the Debtors believe that the terms of the Agreement are commercially fair and reasonable, including the grant of a lien on the unpaid premiums and any sums which may become payable under the Policies to PAC.  The Debtors are required to maintain adequate insurance coverage and without it, would be forced to cease operations.  The Debtors are trying to get their footing in chapter 11, and do not have ready access to unsecured credit to fund the Policies.  The Budget includes the payment of insurance premiums, and the Debtors will work with Wells Fargo to ensure that they will have access to sufficient funds with which to make the payments contemplated by the Agreement.  The Debtors submit that approval of the Agreement will ensure that the Debtors can continue necessary operations, and will not prejudice the legitimate interests of creditors and other parties in interest, including Wells Fargo Bank, N.A.

4482327.1

The Debtors also seek express authority to renew or enter into new premium financing agreements in the ordinary course of business.

17.    In the event that PAC or its assigns fail to receive any payment due under the Agreement within fifteen (15) days of the due date, the Debtors seek prospective authority for the automatic stay to lift without the necessity of a motion, further hearing or order of this Court to permit PAC to exercise its rights and remedies under the Agreement, including without limitation the rights to: (a) cancel the Policies, and (b) collect and apply unearned premiums payable under the Policies to the balance owed under the Agreement.  *See* 11 U.S.C. § 362; FED. R. BANKR. P. 4001(d).

18.    Courts in this jurisdiction and others recognize the importance of a debtor honoring obligations under and renewing premium financing agreements and have granted relief similar to the relief requested in this motion. *See, e.g., In re Goodrich Petrol. Corp.*, No. 16-31975 (MI) (Bankr. S.D. Tex. June 20, 2016) (authorizing debtors to enter into premium finance and security agreement); *In re ATP Oil & Gas Corp.*, No. 12-36187 (MI) (Bankr. S.D. Tex. Aug. 21, 2012) (same); *In re Autoseis, Inc.,* No. 14-20130 (RS) (Bankr. S.D. Tex. Apr. 25, 2014) (approving post-petition insurance premium financing agreements and modifying the automatic stay); *In re Global Geophysical Services, LLC*, No. 16-20306 (DRJ) (Bankr. S.D. Tex. Aug. 5, 2016) (authorizing debtors to honor obligations under prepetition premium financing agreements and enter into and perform under postpetition insurance financing agreements); *In re Goodman Networks Inc.*, No. 17-31575 (MI) (Bankr. S.D. Tex. Mar. 14, 2017) (same).

## EMERGENCY CONSIDERATION

19.    In accordance with Bankruptcy Local Rule 9013-1, the Debtors respectfully request emergency consideration of this Motion pursuant to Bankruptcy Rule 6003, which empowers a court to grant relief within the first 21 days after the commencement of a chapter 11

case "to the extent that relief is necessary to avoid immediate and irreparable harm." Here, the Debtors require immediate approval of the Agreement and payment of the amounts due thereunder or risk the lapse of the Policies. Any delay in granting the relief requested could hinder the Debtors' operations and cause irreparable harm. Further, the failure to receive the requested relief during the first 21 days of these chapter 11 cases would severely disrupt the Debtors' operations at this critical juncture. Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 and, therefore, respectfully request that the Court approve the relief requested in this Motion on an emergency basis

## REQUEST FOR WAIVER OF STAY

20.    The Debtors seek a waiver of any stay of any order approving this Motion. Pursuant to Bankruptcy Rule 6004(h), "[an] order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." FED. R. BANKR. P. 6004(h). As noted above, the immediate payment of all amounts identified in this Motion is essential to prevent potentially irreparable damage to the Debtors' operations and value. Accordingly, the Debtors submit that cause exists to justify a waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h), if it even applies.

## NOTICE

21.    The Debtors will provide notice of this Motion to: (a) the Office of the United States Trustee for the Southern District of Texas; (b) counsel to Wells Fargo as administrative agent under the Debtors' credit agreement; (c) the Debtors' consolidated list of 30 largest creditors; and (d) any party that has requested notice pursuant to Bankruptcy Rule 2002.

## NO PRIOR REQUEST

22.     No prior request for the relief sought in this Motion has been made to this or any other court.

## CONCLUSION

WHEREFORE, the Debtors respectfully requests that this Court enter an Order (i) authorizing it to enter into the Agreement and, when necessary, enter into a new premium finance agreement with PAC or such other provider offering similar or more favorable terms to the Debtors, (ii) authorizing the Debtors to immediate pay $243,974.80 to PAC, consisting of the down payment and the first two monthly installments under the Agreement, and (iii) granting such other and further relief as is just and proper.

Respectfully submitted this 9th day of February, 2018.

**GRAY REED & McGRAW LLP**

By: _/s/ Jason S. Brookner_
    Jason S. Brookner
    Texas Bar No. 24033684
1300 Post Oak Blvd., Suite 2000
Houston, Texas 77056
Telephone:  (713) 986-7000
Facsimile:  (713) 986-7100
Email:        jbrookner@grayreed.com

-and-

    Lydia R. Webb
    Texas Bar No. 24083758
1601 Elm Street, Suite 4600
Dallas, Texas 75201
Telephone:  (214) 954-4135
Facsimile:  (214) 953-1332
Email:        lwebb@grayreed.com

**PROPOSED COUNSEL TO THE DEBTORS**

9

## <u>CERTIFICATE OF SERVICE</u>

I do hereby certify that on February 9th 2018 a true and correct copy of the foregoing pleading was served via CM/ECF to all parties authorized to receive electronic notice in this case and via first class U.S. Mail on the parties set forth on the attached Limited Service List.

*/s/ Jason S. Brookner*
Jason S. Brookner

4482327.1

**Exhibit "A"**

**Premium Finance Agreement**

1

**PREMIUM FINANCE AGREEMENT**

# PREMIUM ASSIGNMENT CORPORATION

**Texas**

P.O. Box 8800 - 3522 Thomasville Rd.
Tallahassee, FL  32314
Phone  850.558.5000

Quote # E324964

☐PERSONAL   ☒COMMERCIAL   ☐NEW   ☒AGENCY RENEWAL   ☐ADD'L PREMIUM

THIS AGREEMENT, made effective the _____**1**_____ day of _____**December 2017**_____, between

## LOCKWOOD INTL INC & ADDITIONAL NAMED INSUREDS PER ADDENDUM

(Name of Borrower/Insured exactly as it appears in financed policies)

ADDRESS___**10002 WINDFERN RD**___

CITY_**HOUSTON**_   STATE__**TX**__   ZIP_**77064**_   PHONE # _____

hereinafter called the Borrower, and Premium Assignment Corporation , a Florida Corporation hereinafter called Lender, for the purpose of financing the purchase of insurance policies described in the Scheduled Policies of Insurance listed in page 3 to this Agreement.

| TOTAL PRICE OF PREMIUMS | - CASH DOWN PAYMENT | = PRINCIPAL BALANCE OWED ON PREMIUMS | + DOC STAMPS & SERVICE FEE (if applicable) | = TOTAL AMOUNT FINANCED | + FINANCE CHARGE (Amount credit costs over term of loan) | = TOTAL OF PAYMENTS (Amount paid if all payments made as scheduled) | ANNUAL PERCENTAGE RATE |
|---|---|---|---|---|---|---|---|
| 509,610.00 | 152,883.00 | 356,727.00 | 0.00 | 356,727.00 | 7,640.20 | 364,367.20 | 5.68 |

| SELECT BILLING OPTION: ☐Payment Book ☒Monthly Invoice ☐Direct Debit | Amount of Monthly Payment | Number of Payments | Date First Payment is Due |
|---|---|---|---|
| **YOUR PAYMENT SCHEDULE WILL BE:** Each monthly payment due on same day of each succeeding month until paid in full. | 45,545.90 | 8 | 1/1/2018 |

FOR VALUE RECEIVED, BORROWER PROMISES TO PAY to the order of Lender at the address given at the top of this page, the Total Amount Financed and all sums shown above, including interest at the Annual Percentage Rate and other charges as described hereinafter, pursuant to the terms stated below and in page 2 of this Agreement.

**1.** <u>SECURITY FOR PAYMENT:</u>  To secure payment of all sums due under this Agreement, Borrower grants Lender a security interest in any unearned premiums or other sums which may become payable under the Scheduled Policies of Insurance shown on page 3.

**2.** <u>LIMITED POWER OF ATTORNEY:</u>   BORROWER IRREVOCABLY APPOINTS LENDER AS ATTORNEY-IN-FACT TO CANCEL THE SCHEDULED POLICIES OF INSURANCE AFTER BORROWER DEFAULTS IN MAKING PAYMENTS UNDER THIS AGREEMENT.

**3.** <u>NOTICE TO BORROWER:</u> (1) Do not sign this Agreement before you read it, or if it contains any blank space (other than as provided on the next page), (2) You are entitled to have and should retain a completely filled in copy of this Agreement, and (3) BY SIGNING BELOW BORROWER AGREES TO THE PROVISIONS ABOVE AND ALL OF THE TERMS WHICH APPEAR ON THE SECOND PAGE OF THIS AGREEMENT AND ACKNOWLEDGES RECEIPT OF COPIES OF PAGES 1, 2 AND 3 OF THIS AGREEMENT and (4) The undersigned Agency may receive compensation from Lender for aiding in the preparation of this Agreement and payment of the financed premiums.

**SIGNATURE OF ALL INSURED[S] NAMED IN POLICIES OR AUTHORIZED AGENT OF INSURED[S], AS PERMITTED BY LAW:**

**X**

_____   _____   _____   _____
Date         Name and Title:                Date    Name and Title:

### PRODUCER'S REPRESENTATIONS & WARRANTIES:

The undersigned Producer represents and warrants that:        (A) The Cash Down Payment shown above has been paid by or on behalf of the Borrower.  (B) The Total Price of Premiums shown above has been or will be used to purchase insurance policies shown in the Scheduled Policies of Insurance on page 3 of this Agreement.  Any portion of the Total Price of Premiums received by Producer that is not used to purchase such insurance policies, as well as any refunds or credits on such policies, shall be promptly paid to Lender. (C) To the best of the undersigned's knowledge and belief, Borrower is not subject to any bankruptcy or insolvency proceedings and Producer has no reason to believe that Borrower is insolvent. (D) The Borrower's signature(s) is (are) genuine and authorized, or to the extent permitted by applicable law, the Producer has been authorized by Borrower to sign this Agreement on Borrower's behalf. (E) Producer has delivered or will deliver a copy of this Agreement to Borrower.  **Producer agrees that the Representations & Warranties above, as well as those on page 3 of this Agreement, are a binding contract between Producer and Lender.**

## PRODUCER / AGENCY

Name __**USI SOUTHWEST - HOUSTON**__

Address __**PO BOX 218060**__

__**HOUSTON, TX 77218**__

_____   **PRODUCER'S SIGNATURE**
Date



**IN CONSIDERATION** of the payment by Lender of the Principal Balance Owed on Premiums shown on page 1 to the insurance companies named in the Scheduled Policies of Insurance shown on page 3 (or the agents of such companies), the Borrower agrees:

**4. ACCEPTANCE DATE**   This Agreement is binding upon its acceptance by Lender.  Acceptance shall occur upon payment of the Principal Balance Owed on Premiums to the insurance companies named in the Scheduled Policies of Insurance, or the agents of such companies.

**5. PAYMENTS**   Borrower shall make payments directly to Lender in the amounts and at the same time specified on page 1 of this Agreement.  Payments shall be made at Lender's address given at the top of page 1 or such other address as Lender may direct in writing.  Payments made to any other address, person, firm, corporation or insurance agency (including but not limited to the Producer) shall not constitute payment to Lender.  Payments received after cancellation of the Scheduled Policies of Insurance shall be credited to the unpaid balance due under this Agreement and shall not constitute reinstatement of the cancelled policies, nor shall it constitute a waiver by Lender of any rights.

**6. LATE CHARGES**   If a payment is more than 10 days late, Borrower agrees to pay a late charge of 5% of each delinquent or unpaid installment, unless prohibited by applicable law.

**7. DEFAULT/CANCELLATION**   A default shall occur if Borrower fails to pay any sums required by this Agreement in a timely manner, including interest and Late Charges, or if Borrower fails to carry out any other obligations under this Agreement.  After default, any unpaid balance of the Total Amount Financed may become immediately due and payable in full at the option of Lender, and Lender may enforce its security interest and its rights under the Limited Power of Attorney.  Interest will continue to accrue on the unpaid balance at the Annual Percentage Rate or maximum rate allowed by applicable law, at the option of Lender, until all balances owed under this Agreement are paid.  Lender may request cancellation of all or any of the Scheduled Policies of Insurance at the earliest time after default permitted by applicable law.

**8. EXCESS INTEREST OR FEES**   It is the intent of the Lender that no interest, fee or charge in excess of that permitted by applicable law will be charged, taken or become payable under this Agreement.  In the event it is determined that Lender has taken, charged or accrued interest, fees or charges in excess of that permitted under law, such excess shall be returned to Borrower or credited against the sum due Lender hereunder.

**9. REFUNDS**   The Borrower will receive a refund of the finance charge if the account is prepaid in full prior to the last installment due date.  The refund shall be computed according to applicable law (Rule of 78's).

**10. SHORTAGE OR OVERAGE OF RETURNED PREMIUM**  If Lender does not receive unearned premiums or other funds after cancellation or expiration of the Scheduled Policies of Insurance in an amount sufficient to pay the unpaid balance due under this Agreement, Borrower agrees to pay the deficiency to Lender on demand.  Interest shall accrue on the deficiency at the Annual Percentage Rate, or the maximum rate allowed by applicable law, at the option of Lender.  If the unearned premiums received by Lender are more than the amount due under this Agreement, the excess shall be returned to Borrower within the time allowed by applicable law.  Borrower has no right to any excess of less than the minimum amount required to be paid by applicable law.

**11. ATTORNEYS FEES/COURT COSTS**   Borrower agrees to pay all attorneys fees, expenses and costs incurred by Lender in collecting amounts due from Borrower under this Agreement, including attorneys fees incurred on appeal and in bankruptcy, unless prohibited or limited by applicable law.

**12. LENDER RELATIONSHIP**   Borrower acknowledges that: (a) Lender is not an insurance agent nor an insurance company, (b) This Agreement is a financing agreement and not an insurance policy or guarantee of insurance coverage, (c) Lender has played no part in the selection or structuring of the financed insurance policies, (d) Lender has no obligation to request reinstatement of any insurance policies properly cancelled after a default under this Agreement, and (e) The decision of whether to reinstate insurance coverage is made solely by the insurance companies providing coverage, not Lender.

**13. ADDITIONAL PREMIUMS**    Lender may advance to Producer, as Borrower's agent, or to an insurance company any additional premiums that may become due, less normal down payment, adding the advanced amount, plus any finance charge, to Borrower's balance under this Agreement.  However, any additional premium which is owed to the insurance company(ies) named in the Scheduled Policies of Insurance as a result of any misclassification of risk which is not paid in full or financed in this Agreement may result in cancellation of the coverage by the insurance company for nonpayment of premium.  Lender's payment shall not be applied by the insurer to pay for any additional premium owed by Borrower as a result of any misclassification of risk.

**14. LENDER LIABILITY**   Lender is not responsible for any damages resulting from cancellation of the Scheduled Policies of Insurance by Lender, as long as the cancellation was done in accordance with applicable law.  Borrower shall be responsible for Lender's reasonable attorneys fees and expenses for any unsuccessful action filed by Borrower seeking damages for improper cancellation.  Lender's liability for breach of this Agreement shall be limited to the Principal Balance Financed under this Agreement, if permitted by applicable law.

**15. RETURNED CHECKS**  Borrower agrees to pay a returned check fee of $20, as allowed by applicable law, for each of Borrower's checks returned to Lender for Insufficient funds or because the insured has no account in the payor bank.

**16. WARRANTIES OF BORROWER**   Borrower warrants that: (a) Each of the Scheduled Policies of Insurance have been issued or a binder has been issued; (b) Borrower has not and will not assign or encumber any unearned premium of the Scheduled Policies of Insurance or grant a power of attorney to cancel the Scheduled Policies of Insurance to anyone other than Lender until all sums due under this Agreement are paid in full; (c) Lender may assign all its rights under this Agreement as allowed by applicable law; (d) No proceeding in bankruptcy or insolvency has been instituted by or against Borrower or is contemplated by Borrower, and (e) No insurance financed by this Agreement was purchased for personal, family or household purposes, unless so indicated on page 1.

**17. INTEREST CALCULATION**  Interest is computed on an annual basis of 12 months of 30 days on the balance of the policy Amount Financed, from the effective date of each insurance policy for which premiums are being advanced to the date when all sums due under this Agreement are paid.

**18. BLANK SPACES**  Borrower agrees that if any policy financed by this Agreement has not been issued at the time the Agreement is signed, the names of the insurance companies issuing the financed policies, the policy numbers and the due date of the first installment may be inserted in the Agreement after it is signed.

**19. GOVERNING LAW**  The Parties agree that the law of the state in which this Agreement is executed shall control the interpretation of the Agreement and the rights of the parties, unless the Agreement is executed in a state without premium finance laws, in which case the law of the State of Florida shall govern.

**20. SAVINGS AND MERGER CLAUSE**  The Parties agree that if one or more portions of this Agreement are found to be invalid or unenforceable for any reason, the remaining portions shall remain fully enforceable.  The parties also agree that this Agreement contains the entire agreement between the parties regarding the subject matter herein and supersedes any prior discussions.

**21. FINANCING OPTION**  Entry into this financing arrangement is not a condition of obtaining insurance.  You may opt to pay the premium for such insurance without financing such premium, or to obtain financing from some other source if you choose.

**Insured:**

LOCKWOOD INTL INC & ADDITIONAL NAMED INSUREDS PER

**Street Address:**

10002 WINDFERN ROAD
HOUSTON, TX 77064

---

## NOTICE OF ASSIGNMENT

The insured agrees not to assign the enclosed Premium Finance Agreement or any policy listed hereon or any interest therein (except for the interest of mortgagees or loss payees), without the written consent of Lender, and that Lender may sell, transfer and assign its rights hereunder or under any policy without the consent of the insured, and that all agreements made by the insured hereunder and all rights and benefits conferred upon Lender shall inure to the benefit of Lender's successors and assigns (and any assignees thereof).



Quote # E324964                                    State: TX

# SCHEDULED POLICIES OF INSURANCE

V8(20)G4193GI2.94

LOCKWOOD INTL INC & ADDITIONAL NAMED INSUREDS PER ADDEN
10002 WINDFERN RD
HOUSTON, TX  77064

USI SOUTHWEST - HOUSTON          11785
PO BOX 218060
HOUSTON, TX  77218-8060
(713) 490-4600

| Premium | Down Payment | Unpaid Balance | Doc Stamps/Fees | Amt. Financed | Finance Charges | Total / Payments |
|---|---|---|---|---|---|---|
| 509,610.00 | 152,883.00 *(30.00 %)* | 356,727.00 | 0.00 | 356,727.00 | 7,640.20 | 364,367.20 |

| Payment | Payments | Rate | First Due | Type | Status | Contract Type |
|---|---|---|---|---|---|---|
| 45,545.90 | 8 | 5.68 % | 1/1/2018 | INVOICE | RENEW | COMMERCIAL |

| EFF DATE EXP DATE | | COMPANY / BROKER | CITY | ST | CO. # | TYPE MEP | POLICY NO. | TOTAL PREMIUM |
|---|---|---|---|---|---|---|---|---|
| 12/1/2017 | CO: | TRAVELERS CAS & SURETY | HARTFORD CT | TX | 85208 | FPKG | ZPP91M71 | 5,501.00 |
| 12/1/2018 | MGA: | USI SOUTHWEST - HOUSTON | HOUSTON | TX | 64460 | 100.00 % | 346 | |
| | | | | | | | | |
| 12/1/2017 | CO: | CERTAIN UNDWTRS AT LLOYDS | TALLAHASSEE | FL | 87526 | PLIA | B0621PLO | 33,800.00 |
| 12/1/2018 | MGA: | USI SOUTHWEST - HOUSTON | HOUSTON | TX | 64460 | 0.00 % | CK002517 | |
| | | | | | | | Taxes/Fees | 1,690.00 |
| | | | | | | | Total | 35,490.00 |
| | | | | | | | | |
| 12/1/2017 | CO: | LIBERTY MUTUAL FIRE INS | IRVING | TX | 87050 | PROP | YU2L9L46 | 159,858.00 |
| 12/1/2018 | MGA: | | | | | 0.00 % | 4922017 | |
| | | | | | | | Taxes/Fees | 148.00 |
| | | | | | | | Total | 160,006.00 |
| | | | | | | | | |
| 12/1/2017 | CO: | TRAVELERS CAS & SURETY | HARTFORD CT | TX | 85208 | BA | 8109H4628 | 72,392.00 |
| 12/1/2018 | MGA: | | | | | 0.00 % | 63 | |

Created By:  11785RH                              Auth Code:

## ADDITIONAL REPRESENTATIONS & WARRANTIES OF PRODUCER

(F)  All information provided above is complete and correct in all respects and the policies listed above are or will be in force on the stated Effective Date and delivered by Producer to the Borrower, except for assigned risk or residual market policies.

(G)  If any information listed above is or becomes incomplete or inaccurate, Producer shall promptly provide correct information to Lender.

(H)  The Producer is an authorized policy issuing agent of the companies issuing the policies listed above or is the authorized agent of the MGA or broker placing the coverage directly with the insuring company,   **except those policies indicated with an "X".**

(I)  None of the policies listed above are subject to reporting or retrospective rating provisions.  All policies subject to audit, minimum or fully earned premium provisions are indicated below:

Policy No and Prefix No:

(J)  Except as indicated above, all Scheduled Policies of Insurance can be cancelled by Borrower or Lender on 10 days notice and the unearned premiums will be computed pro rata or on the standard short rate table.

(K)  If any Scheduled Policies of Insurance are subject to audit, Producer and Borrower have made good faith determination that the deposit, provisional or initial premiums are not less than the anticipated premiums to be earned for the full term of the policy(ies).

(L)  Upon cancellation of any of the Scheduled Policies of Insurance, Producer shall remit to Lender the full amount of the unearned premium, including unearned commission, as well as any other payments or credits received by Producer, up to the unpaid balance due under this Agreement, within 15 days of receipt from the insuring company.

**DOCUMENTARY STAMPS REQUIRED BY LAW IF ANY ARE AFFIXED TO MONTHLY JOURNAL AND CANCELLED.**



Quote # E324964                                                                    State: TX

# SCHEDULED POLICIES OF INSURANCE

V8(20)G4193GI2.94

LOCKWOOD INTL INC & ADDITIONAL NAMED INSUREDS PER ADDEN     USI SOUTHWEST - HOUSTON     11785
10002 WINDFERN RD                                                         PO BOX 218060
HOUSTON, TX  77064                                                        HOUSTON, TX  77218-8060
                                                                         (713) 490-4600

| EFF DATE<br>EXP DATE | | COMPANY / BROKER | CITY | ST | CO.<br># | TYPE<br>MEP | POLICY<br>NO. | TOTAL<br>PREMIUM |
|---|---|---|---|---|---|---|---|---|
| 12/1/2017<br>12/1/2018 | CO:<br>MGA: | PHOENIX INS CO | HARTFORD | CT | 84665 | GL<br>0.00 % | 6609H4673<br>97 | 87,984.00 |
| 12/1/2017<br>12/1/2018 | CO:<br>MGA: | TRAVELERS CAS & SURETY | HARTFORD CT | TX | 85208 | WC<br>0.00 % | UB9H4463<br>65 | 47,671.00 |
| 12/1/2017<br>12/1/2018 | CO:<br>MGA: | TRAVELERS INDEMNITY CO OF CT | HARTFORD | CT | 82831 | UMBR<br>0.00 % | CUP9H479<br>869 | 52,910.00 |
| 12/1/2017<br>12/1/2018 | CO:<br>MGA: | CERTAIN UNDWTRS AT LLOYDS<br>USI SOUTHWEST - HOUSTON | TALLAHASSEE<br>HOUSTON | FL<br>TX | 87526<br>64460 | XSPL<br>0.00 % | B0621PLO<br>CK003617 | 22,500.00 |
| | | | | | | | Taxes/Fees | 1,125.00 |
| | | | | | | | Total | 23,625.00 |
| 12/1/2017<br>12/1/2018 | CO:<br>MGA: | ATLANTIC SPECIALTY INS CO | CANTON | MA | 86954 | PKG<br>0.00 % | 710036713<br>001 | 2,881.00 |
| 12/28/2017<br>12/28/2018 | CO:<br>MGA: | XL SPECIALTY INS | EXTON PA | NY | 86897 | AIR<br>0.00 % | UA000120<br>68AV17A | 21,000.00 |
| | | | | | | | Taxes/Fees | 150.00 |
| | | | | | | | Total | 21,150.00 |

Created By:  11785RH                                    Auth Code:

## ADDITIONAL REPRESENTATIONS & WARRANTIES OF PRODUCER

(F)  All information provided above is complete and correct in all respects and the policies listed above are or will be in force on the stated Effective Date and delivered by Producer to the Borrower, except for assigned risk or residual market policies.

(G)  If any information listed above is or becomes incomplete or inaccurate, Producer shall promptly provide correct information to Lender.

(H)  The Producer is an authorized policy issuing agent of the companies issuing the policies listed above or is the authorized agent of the MGA or broker placing the coverage directly with the insuring company, **except those policies indicated with an "X".**

(I)  None of the policies listed above are subject to reporting or retrospective rating provisions.  All policies subject to audit, minimum or fully earned premium provisions are indicated below:

Policy No and Prefix No:

(J)  Except as indicated above, all Scheduled Policies of Insurance can be cancelled by Borrower or Lender on 10 days notice and the unearned premiums will be computed pro rata or on the standard short rate table.

(K)  If any Scheduled Policies of Insurance are subject to audit, Producer and Borrower have made good faith determination that the deposit, provisional or initial premiums are not less than the anticipated premiums to be earned for the full term of the policy(ies).

(L)  Upon cancellation of any of the Scheduled Policies of Insurance, Producer shall remit to Lender the full amount of the unearned premium, including unearned commission, as well as any other payments or credits received by Producer, up to the unpaid balance due under this Agreement, within 15 days of receipt from the insuring company.

**DOCUMENTARY STAMPS REQUIRED BY LAW IF ANY ARE AFFIXED TO MONTHLY JOURNAL AND CANCELLED.**



Post Office Box 3066 | Tallahassee | Florida | 32315-3066
800.342.0991 | www.premiumassignment.com

Addendum To
Premium Finance Agreement ("PFA")


Each of the undersigned is jointly and severally liable as an Insured under the PFA with Premium Assignment Corporation.  Each of the undersigned agrees that all notices sent by Premium Assignment Corporation in connection with the PFA shall be sent only to the named insured on the attached finance agreement, and that Premium Assignment Corporation makes no representation or warranty regarding any of the policies listed in the PFA.  By signing below, I am signing on behalf of each of the companies listed below and each of them is bound by the PFA and the Addendum.  I represent and warrant that I am authorized to sign on behalf of those companies.


_____
Signature

_____
Print Name

_____
Title

on behalf of each of the companies listed below.

Dated as of December _____, 2017.

LH Aviation, LLC
Lockwood Enterprises, Inc.
Lockwood Holdings, Inc.
LMG Manufacturing, Inc.
Piping Components, Inc.
Premier Flight Management Services LLC

**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| In re: | § | |
| | § | Chapter 11 |
| LOCKWOOD HOLDINGS, INC., *et al.*, | § | |
| | § | Case No. 18-30197 (DRJ) |
| Debtors.[1] | § | |
| | § | Jointly Administered |
| | § | |
| | § | |

**ORDER GRANTING EMERGENCY MOTION FOR AUTHORITY TO ENTER INTO**
**INSURANCE PREMIUM FINANCE AGREEMENT**

Upon consideration of the *Emergency Motion for Authority to Enter into Insurance Premium Finance* (the "Motion") filed by Lockwood Holdings, Inc. and certain of its affiliates, the above-captioned debtors and debtors in possession (the "Debtors"), the Court finds that: (i) it has jurisdiction over the matters raised in the Motion pursuant to 28  U.S.C. § 1334(b); (ii) this is a core proceeding pursuant to 28 U.S.C. § 157(b) for which it is proper for this Court to enter final orders; (iii) the relief requested in the Motion is necessary and in the best interest of the Debtors, their creditors, and other parties-in-interest; (iv) proper and adequate notice of the Motion and the hearing thereon has been given and no other or further notice is necessary; and (v) good and sufficient cause exists for the granting of the relief requested in the Motion after having given due deliberation on the Motion and all of the proceedings had before the Court in connection therewith. Therefore, it is **ORDERED, ADJUDGED, AND DECREED that**:

1. The Motion is GRANTED to the extent provided herein.

2. The Debtors are authorized to continue and maintain the Policies on an

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: Lockwood Holdings, Inc. (9726); LH Aviation, LLC (6984); Piping Components, Inc. (0197); Lockwood International, Inc. (8597); LMG Manufacturing, Inc. (9468); Lockwood Enterprises, Inc. (6504); and 7807 Eagle Lane, LLC (7382).

uninterrupted basis, consistent with the practices in effect prior to the Petition Dates.

3.     The Debtors are authorized to enter the Agreement, attached to the Motion as Exhibit "A."

4.     The Court approves and authorizes the granting of a security interest by the Debtors in any unearned premiums or other sums that may become payable under the Policies.  Without limitation, the liens, security interests and rights in unearned premiums granted under the Agreement are senior to the lien of any DIP lender in this case and are senior to any claims under 11 U.S.C. §§ 503, 506(b) or 507(b).

5.     The Debtors are authorized to pay all premiums and other amounts due and owing with respect to the Policies and the Agreement, without regard to when those obligations arose.   The Debtors are authorized to immediately pay PAC $243,974.80, consisting of the down payment and the first two monthly installments under the Agreement.

6.     If additional premiums become due to insurance companies under the policies financed under the Agreement, the Debtors and PAC or its successor or assigns are authorized to modify the Agreement as necessary to pay the additional premiums without the necessity of further hearing or order of this Court.

7.     In the event PAC or its assigns fail to receive any payment due under the Agreement within fifteen (15) days of the due date, the automatic stay provided by 11 U.S.C. § 362 shall thereupon be terminated without the necessity of a motion, further hearing or order of this Court to permit PAC or its successor or assigns to exercise its rights and remedies under the Agreement, including without limitation the rights to: (a) cancel the Policies, and (b) collect and apply unearned premiums payable under the Policies to the balance owed under the Agreement.

8.     If the collection and application of unearned premiums is insufficient to pay

2

the balance owed under the Agreement, PAC or its successor or assigns may within 21 days after the collection and application of such unearned premiums file a proof of claim for the unsatisfied amount of any indebtedness under the Agreement notwithstanding the passage of any bar date for the filing of proofs of claim.

9.      The rights of PAC or its successor or assigns under the Agreement are fully preserved and protected and shall remain unimpaired by this proceeding, and shall remain in full force and effect, notwithstanding the subsequent conversion of this proceeding to one under chapter 7 or any other provision of the Bankruptcy Code.

10.      In order to enable the Debtors to have immediate insurance coverage, the ten day stay of this Order pursuant to Bankruptcy Rule 6004(h) shall not apply, and the relief herein granted is effective immediately upon entry.

11.      The Debtors are authorized to take all actions necessary to implement the relief granted in this Order.

12.      The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

**Signed on February \_\_\_\_, 2018.**

---

**DAVID R. JONES**
**UNITED STATES BANKRUPTCY JUDGE**

3

Limited Service List as of February 7, 2018

## 30 LAGEST UNSECURED CREDITORS

ALLIED FITTING LP
7200 Mykawa Road
Houston, TX 77033

PK VALVE
192-1 Shinchon-Dong
Changtown-City, KN

ORION SPA
Via Caboto-34148
Trieste Italy

ASSOCIATED VALVE
703-19th Ave
Nisku AB T9E 7V9

POYAM VALVES
Poligono Poyam Idiazabal Gipuzkoa
E-20213 Spain

GLOBAL STAINLESS SUPPLY
8900 Railwood Drive
Houston, TX 77078

COR-PRO Sys. Operating, Ltd.
10555 West Little York
Houston, TX 77041

PUSAN PIPE AMERICA INC
2100 Main Street
Suite 100
Irvine, CA 92614

PERAR S.P.A.
Via Gringa 37 20027 Rescaldina
Milan Italy

FLOWSERVE - RALEIGH
1900 S. Saunders Street
Raleigh, NC 27603

TIV VALVES SRL
Via Provinciale Saronnese
58 20027 Rescaldina MI
Italy

Zimmerman, Axelrad, Meyer
3040 Post Oak Blvd., Ste. 1300
Houston, TX 77056-6560

Ilshin Forged Steel Valve Co.
1 NA 703, Shiwha Indl
Comples 1244-2
Chongwang-Dong

Tiv Valves SRL
Via Provinciale Saronnese, 58 20027
Rescaldina, Italy

Harris County
Tax
Assessor-Collector
P.O. Box 4622
Houston, TX 77210-4622

J.D. Fields & Company Inc.
55 Waugh Dr., #1250
Houston, TX 77007

TRUFLO RONA SRL
Via Stendahal, 65
Delaplane, VA 20144

Canada Revenue Agency
275 Pope Road, Suite 103
Summerside, PE
C1N 6A2

Jiangsu YDF Valve Co Ltd.
Shangzhuang Town
Fredericksburg, VA 22402

TRUFLO RONA SRL
Via Grilli 2/A San Nicolo A Rewvvia
Bishopville, SC 29010

Briggs & Veselka Co.
Nine Greenway Plaza
Suite 1700
Houston, TX 77046

LVF Valve Solutions
Via G Mazzine 6 Partita
IVA 03076750169
Blacksburg, VA 24060

TWC – The Valve Company
P.O. Box 95455
Grapevine, TX 76099-0752

Hadassah Realty
(Wallisville)
17304 Preston Road, Suite 550
Dallas, TX 75252

4459935.1

O.M.B. - ITALY
Via Europa
24069 Cenate Sottto
Bergamo, Italy

USI Southwest
840 Gessner
Suite 600
Houston, TX 77024

Sherwood Pointe LLC
5135 Bluebonnet Boulevard
Baton Rouge, LA 70809

Orton Italiana SRL
Via Dei Bazachl 50
Piacenza Emilia-Romagna SC
29100

VALVOSIDER
Via San Rocco, 2 13011
Borgosesia VC, Italy

Tri-State Supply Co.
P.O. Box 40512
Houston, TX 77240-0512

## DEBTORS

Lockwood International, Inc.
1002 Windfern Road, Bldg. B
Houston, TX 77064

LH Aviation, LLC
1002 Windfern Road, Bldg. B
Houston, TX 77064

LMG Manufacturing, Inc.
1002 Windfern Road, Bldg. B
Houston, TX 77064

Lockwood Enterprises, Inc.
1002 Windfern Road, Bldg. B
Houston, TX 77064

Lockwood Holdings, Inc.
1002 Windfern Road, Bldg. B
Houston, TX 77064

Piping Components, Inc.
1002 Windfern Road, Bldg. B
Houston, TX 77064

7807 Eagle Lane, LLC
1002 Windfern Road, Bldg. B
Houston, TX 77064

## DEBTORS COUNSEL

Jason S. Brookner
1300 Post Oak Blvd., Suite 2000
Houston, Texas 77056

Lydia R. Webb
1601 Elm Street, Suite 4600
Dallas, Texas 75201

4459935.1

**EQUITY HOLDERS**

Michael F. Lockwood
1002 Windfern Road, Bldg. B
Houston, TX 77064

**UNITED STATES TRUSTEE**

Hector Duran
US Trustee
Office of the US Trustee
515 Rusk Ave., Ste 3516
Houston, TX 77002

**SECURED CREDITORS**

Wells Fargo Equipment Finance, Inc.
P.O. Box 858178
Minneapolis, MN 55485

Wells Fargo
c/o Rakhee V. Patel WINSTEAD PC
500 Winstead Building
2728 N Harwood Street
Dallas, Texas 75201

Sean B. Davis
WINSTEAD PC
600 Travis Street Suite 5200
Houston, Texas 77002

Annmarie Chiarello
WINSTEAD PC
500 Winstead Building
2728 N. Harwood Street
Dallas, Texas 75201

4459935.1

## OTHER PARTIES MAKING AN
## <u>APPEARANCE</u>

Harris County
Cypres-Fairbanks ISD
LINEBARGER GOGGAN BLAIR &
SAMPSON LLO
P.O. Box 3064
Houston , TX 77253-3064

Robert L. Barrow
WARREN DRUGAN & BARROWS P.C.
800 Broadway
San Antonio, TX 78215


Equipment Depot, Ltd.
c/o Richard J. Wallace, III
Scheef & Stone, L.L.P.
500 North Akard, Suite 2700
Dallas, Texas 75201

Courtney J. Hall
Assistant Attorney General
Bankr. & Collections Div., MC008
P.O. Box 12548
Austin, TX 78711-2548

Stephen M. Gray
ZACHARY INDUSTRIAL, INC.
P.O. Box 240130
San Antonio, TX 78224-0130

Herman A. Cooper and Brenda E. COOPER
c/o James E. Cuellar
Wells & Cuellar, P.C.
440 Louisiana, Suite 718
Houston, Texas 77002

Martin Disiere Jefferson & Wisdom
LLP
808 Travis St., 20th Floor
Houston, TX 77002


Flowserv US Inc.
c/o Robert P. Franke
STRASBURGER & PRICE L.L.P.
901 Main St., Suite 6000
Dallas, Texas 75202

4459935.1