**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § § § | |
| | § | Chapter 11 |
| LOCKWOOD HOLDINGS, INC., *et al.*,[1] | § § | |
| Reorganized Debtors. | § § | Case No. 18-30197 (DRJ) |
| | § § | Jointly Administered |
| | § | |

**EMERGENCY MOTION OF MARK SHAPIRO TO ENFORCE
CONFIRMATION ORDER AND FINAL FEE ORDER OF
GLASSRATNER ADVISORY & CAPITAL GROUP, LLC**

---

**Emergency relief has been requested. A hearing will be conducted on this matter on February 4, 2021, at 3:30 pm by audio/video connection.**

**Audio communication will be by use of the Court's dial-in facility. You may access the facility at (832) 917-1510. You will be responsible for your own long-distance charges. Once connected, you will be asked to enter the conference room number. Judge Jones conference room number is 205691.**

**You may view video via GoToMeeting. To use GoToMeeting, the Court recommends that you download the free GoToMeeting application. To connect, you should enter the meeting code "JudgeJones" in the GoToMeeting app or click the link on Judge Jones home page on the Southern District of Texas website. Once connected, click the settings icon in the upper right corner and enter your name under the personal information setting.**

**If you object to the relief requested or you believe that expedited consideration is not warranted, you must either appear at the hearing or file a written response prior to the hearing. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

**Relief is requested not later than February 5, 2021.**

---

[1] The Reorganized Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: Lockwood Holdings, Inc. (9726); LH Aviation, LLC (6984); Piping Components, Inc. (0197); Lockwood International, Inc. (8597); LMG Manufacturing, Inc. (9468); Lockwood Enterprises, Inc. (6504); and 7807 Eagle Lane, LLC (7382).

Mark Shapiro ("Shapiro"), the former duly-appointed chief restructuring officer for Lockwood Holdings, Inc., *et al.*, the above-captioned debtors (collectively, the "Debtors" and post-confirmation, the "Reorganized Debtors"), for his *Emergency Motion to Enforce Confirmation Order and Final Fee Application Order of GlassRatner Advisory & Capital Group, LLC*, respectfully represents:

## PRELIMINARY STATEMENT

1.      On February 6, 2019, after a contested hearing, this Court entered its Confirmation Order (defined below) confirming the Compromise Plan (defined below).  The Compromise Plan and Confirmation Order contain customary release, exculpation and injunction provisions. Shapiro and his firm, GlassRatner Advisory & Capital Group, LLC ("GlassRatner"), are beneficiaries of these provisions.  The Court confirmed the Compromise Plan over the objection of Michael Lockwood ("Mr. Lockwood"), the direct or indirect equity owner of the Debtors, with certain modifications to the form of Confirmation Order that did not materially change the Plan or its release, exculpation and injunction provisions.

2.      On August 20, 2019, after notice and opportunity for a hearing, this Court entered the GlassRatner Fee Order (defined below) approving, on a final basis, the fees and expenses incurred by GlassRatner during these cases.  Mr. Lockwood did not object to entry of the GlassRatner Fee Order.

3.      On multiple occasions throughout these chapter 11 cases, Mr. Lockwood appeared before this Court, either *pro se* or through counsel.  However, in direct violation of the express terms of the Compromise Plan, and almost two years after entry of the Confirmation Order, Mr. Lockwood sued Shapiro in state court in Harris County, Texas, effectively asserting that since the result of these chapter 11 cases was not to his liking, Shapiro should be held liable – to the tune of

ONE BILLION DOLLARS.  The State Court Lawsuit (defined below) is a not-so-thinly-veiled collateral attack on the Compromise Plan, the Confirmation Order and the GlassRatner Fee Order. The Court should enforce its prior orders and find that the State Court Lawsuit violates the Compromise Plan and the Confirmation Order, and is also barred under principles of *res judicata* by entry of the GlassRatner Fee Order.

4.      In the State Court Lawsuit, Mr. Lockwood complains that he was somehow damaged by Shapiro's alleged failure to disclose that Wells Fargo Bank, N.A. was a creditor of GlassRatner's parent company, B. Riley Financial, Inc. (which acquired the equity interest of GlassRatner on August 1, 2018 in the middle of these chapter 11 cases).  This claim is baseless. If Mr. Lockwood had a theoretical cause of action against Shapiro for failure to disclose (which he does not), he lacks standing to assert it, as the terms of the Compromise Plan transferred any estate claims that were not released under the Compromise Plan to the Creditor Trust.  The Court acknowledged as much at the confirmation hearing, noting that "there simply can't be a direct claim" by Mr. Lockwood,[2] and that Mr. Lockwood "does not have the ability to bring derivative causes of action."[3]  And although the Confirmation Order preserves certain alleged claims held by Mr. Lockwood, that provision only applies to *direct* claims.[4]

5.      In any event, no viable claim or cause of action exists because (i) Shapiro and GlassRatner made adequate disclosures and (ii) the exculpation, release and injunction provisions

---

[2] Transcript of proceeding on February 5, 2019 ("**Tr.**"), attached hereto as **Exhibit C**, at 56:2-11.

The Court: "Mr. Brookner, I just want to make sure that the Debtors understand that that is the problem and that as part of the compromise, that claim -- ***I don't understand how there could be a direct claim and I don't understand how you could release a third party claim. I just don't*** -- one, I don't say anything could arise because if I make the findings under 1129, to the extent that it all rises out of the bankruptcy and the confirmation process, there simply can't be a direct claim. So, Mr. Brookner, let me -- help me understand -- so, Mr. Brookner, help me understand what it is that we're actually fighting over."

[3] Tr. 61:1-3.

[4] Confirmation Order ¶28; *see* also Tr. 60:21-15; 61:1-3.

3

of the Compromise Plan and Confirmation Order insulate Shapiro from these types of harassing lawsuits, as does the *res judicata* effect of the GlassRatner Fee Order.

## JURISDICTION AND VENUE

6.     The Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A), (L) and (O).  Among other things, the Motion asks the Court to exercise its inherent powers to enforce its own orders and award fees and expenses for the willful and intentional violation of a Court order.  *See, e.g.*, *In re Skyport Glob. Commc'n, Inc.*, 942 F. App'x 301, 303-04 (5th Cir. 2016) (holding that bankruptcy court had inherent authority to award fees and expenses against a litigant that took action in state court in direct contravention of bankruptcy court order).

7.     It is also axiomatic that this Court has jurisdiction to interpret and enforce its own orders while a case is pending.  *See, e.g.*, *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009) (holding that bankruptcy court "plainly had jurisdiction to interpret and enforce its own prior orders"); *In re Rodriguez*, 252 F.3d 435 (5th Cir. 2001) ("When an estate is in administration, a bankruptcy court retains jurisdiction to interpret and enforce its own orders to ensure their proper execution"); *see also* 11 U.S.C. § 105(a) (providing that the bankruptcy court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, *sua sponte*, taking any action or making any determination necessary . . . to enforce or implement court orders or rules, or to prevent abuse of process").  The Court also

has exclusive jurisdiction to decide this Motion by virtue of Article XII of the Compromise Plan and paragraph 30 of the Confirmation Order.[5]

8.      Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## PROCEDURAL HISTORY AND BACKGROUND

### I.      History of These Chapter 11 Cases

9.      On January 18, 2018, Lockwood Holdings, Inc., LH Aviation, LLC, and Piping Components, Inc. filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  On January 24, 2018, Lockwood International, Inc., Lockwood Enterprises, Inc., LMG Manufacturing, Inc., and 7807 Eagle Lane, LLC filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  The cases are being jointly administered, as captioned above.

10.      Throughout the chapter 11 cases, the Debtors operated their business and managed their properties as debtors in possession, pursuant to sections 1107 and 1108 of the Bankruptcy Code.  An official committee of unsecured creditors (the "Committee") was appointed by the Office of the U.S. Trustee on February 20, 2018, as amended on March 2, 2018.  *See* Docket Nos. 131 and 171.  No trustee or examiner was appointed.

11.      These chapter 11 cases were commenced, in part, due to the Debtors' strained relationship with their prepetition lenders, Wells Fargo Bank, N.A. ("Wells Fargo") and Trustmark National Bank (together with Wells Fargo, the "Prepetition Lenders").  The record is replete with examples of the adversarial relationship between the Debtors and Wells Fargo, as evidenced by

---

[5] The Plan provides, *inter alia,* that the Bankruptcy Court shall have exclusive jurisdiction to  "take any action and issue such orders as may be necessary to construe, enforce, implement, execute and consummate the Plan or maintain the integrity of the Plan following consummation," "to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, the Confirmation Order, the documents  . . . ," "to hear and determine all disputes involving the existence, scope, and nature of the exculpations and releases granted hereunder," and "to issue injunctions and effect any other actions that may be necessary or desirable to restrain interference by any entity with the consummation or implementation of the Plan."  *See* Article XII of the Compromise Plan.

the many objections filed, contested hearings conducted, and sundry issues negotiated, including a mediation before the Honorable Richard Schmidt that formed the basis of the Compromise Plan.[6] One of the items Wells Fargo insisted upon was the installation of a chief restructuring officer to help navigate the Debtors through these chapter 11 cases.

12.     On January 31, 2018, the Debtors filed their *Emergency Application (I) Authorizing the Retention of GlassRatner Advisory & Capital Group, LLC to Provide Chief Restructuring Officer and Certain Additional Personnel, (II) Designating Mark Shapiro as Chief Restructuring Officer Effective as of January 26, 2018, and (III) Granting Related Relief* (Docket No. 41) (the "GlassRatner Employment Application").  The GlassRatner Employment Application sought to retain GlassRatner to provide restructuring services to the estates, with Shapiro designated as the Debtors' chief restructuring officer.  The GlassRatner Employment Application was supported by the Shapiro Declaration, attached thereto as Exhibit B.  The Shapiro Declaration (i) set forth the steps that GlassRatner undertook to determine whether it had any disqualifying conflicts, (ii) disclosed any relationships that GlassRatner had with interested parties (including Wells Fargo), and (iii) provided that GlassRatner would supplement the Shapiro Declaration in the event that additional disclosures needed to be made.  On February 16, 2018, after notice and a hearing, the Court entered its order granting the GlassRatner Employment Application [Docket No. 117] (the "GlassRatner Employment Order").

13.     Thereafter, the Debtors, as assisted by Shapiro, engaged in a dual-track effort to market their assets for sale or raise funds to effect a stand-alone reorganization.  No parties came

---

[6] Based upon a PACER search, it appears that Wells Fargo filed at least 31 separate pleadings or notices in these bankruptcy cases and appeared at least at 13 different court hearings during the course of the cases.  Contested hearings and/or at least initial contests from Wells Fargo included issues respecting cash collateral, debtor in possession financing, a sale process, confirmation of the plan, and a post-effective date dispute with Wells Fargo over the return of approximately $650,000.00 to the bankruptcy estate.

forward to provide funding for a restructuring. But, multiple bids were received to purchase the Debtors' assets, and ultimately, the Debtors conducted a robust auction on August 15, 2018. At the conclusion of the Auction, substantially all of the Debtors' assets were sold in multiple lots to several third parties. Wells Fargo was present at the auction but did not participate in the bidding. Mr. Lockwood did not appear at the auction or otherwise make a timely bid on any of the Debtors' assets. Rather, Mr. Lockwood appeared the sale hearing with a late and non-conforming bid for the Debtors' assets and objected to the sale to the successful bidders at auction. After engaging in a direct colloquy with Mr. Lockwood, the Court overruled his objection and approved the sale of the Debtors' assets.[7]

14.    Immediately prior to the Auction, on August 1, 2018, GlassRatner was acquired by, and made a subsidiary of B. Riley Financial, Inc. ("B. Riley"). Shapiro was not aware of the B. Riley acquisition until one day before, July 31, 2018. As contemplated by the GlassRatner Employment Order, on August 8, 2018, Shapiro promptly submitted a supplemental declaration in support of the GlassRatner Employment Application [Docket No 568] (the "Shapiro Supplemental Declaration"). The Shapiro Supplemental Declaration disclosed that Great American Group, a B. Riley affiliate, performed valuation services for Wells Fargo, as well as other potential relationships between B. Riley and other parties in interest in these chapter 11 cases. Unbeknownst to Shapiro, and despite the conflicts check performed by B. Riley in connection with the Shapiro Supplemental Declaration, Wells Fargo was a lender to B. Riley at the time, in that it made available a line of credit to fund Great American's retail liquidation services, which include the

---

[7] *See* Docket Nos. 662, 664, 665, 666 and 706.

purchase of inventory and FF&E.  This line of credit was and is totally unrelated to Debtors or these chapter 11 cases.[8]

15.     On November 5, 2018, the Debtors, the Committee, and the Prepetition Lenders participated in a mediation before Judge Schmidt concerning the contents of a chapter 11 plan, how the Debtors' various assets were to be distributed (*e.g.*, causes of action, insurance proceeds, cash on hand, etc.) and emergence from chapter 11.  Mr. Lockwood and his counsel, Mr. Spagnoletti, were present at the mediation, though they voluntarily left in an amicable manner prior to the time the final deal was sealed.  As a result of the aforementioned mediation, on December 21, 2018, the Debtors, the Committee, and the Prepetition Lenders filed their *Compromise Joint Chapter 11 Plan* [Docket No. 824] (the "Compromise Plan").

16.     Section 11.3 of the Compromise Plan is titled "Releases by the Debtors" and provides as follows:

> On the Effective Date, the Debtors shall fully and forever release, acquit, discharge and dismiss any and all claims, obligations, suits, judgments, damages, rights, remedies, causes of action and liabilities of any nature, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, matured or unmatured, contingent or non-contingent, existing or hereafter arising, in law, equity or otherwise, including any claims or causes of action under Chapter 5 of the Bankruptcy Code or other applicable law which they have or may have against any of the Exculpated Parties, Wells Fargo Equipment Finance, Inc., Wells Fargo Securities, LLC, and each of their respective present or former members, managers, officers, directors, employees, partners, principals, predecessors, successors and assigns, affiliates, funds, advisors, attorneys, agents and representatives and their respective property.

---

[8] Obviously, had Shapiro known about B. Riley's lender-borrower relationship with Wells Fargo, it would have been disclosed.  However, given (i) the fact that Wells Fargo was a creditor of GlassRatner's parent company, (ii) that Shapiro had operated as CRO for a full six months before B. Riley acquired GlassRatner, and (iii) the contentious and often adversarial relationship between Wells Fargo and the Debtors during these chapter 11 cases, it is clear there was no "favoritism" towards Wells Fargo in any way.  Instead, the Debtors proceeded according and pursuant to their agreement with the Prepetition Lenders for a dual-track process, which was approved by the Court in various orders (DIP financing order, Docket No. 359 and the bidding procedures order, Docket No. 513), which were entered, respectively, in April 2018 and July 2018, well before the B. Riley acquisition closed or Shapiro was even aware of the same.

17.     Section 11.5(a) of the Compromise Plan is titled "Injunction and Stay" and provides, in relevant part, as follows:

> Except as otherwise expressly provided in this Plan, all Persons or entities who have held, hold, or may hold Claims against or Equity Interests in any Debtor are permanently enjoined, from and after the Effective Date, from (i) commencing or continuing in any manner any action or other proceeding of any kind on any such Claim or Equity Interest against . . . [any] other entity released, discharged or exculpated hereunder, . . . or (v) pursuing any Claim released under the Plan.

18.     Additionally, section 11.2 of the Compromise Plan contains an exculpation provision that was revised slightly at confirmation and is discussed more fully below.  In sum, however, the Compromise Plan and the Confirmation Order released and exculpated Shapiro and GlassRatner from any claims of the Debtors and their estates, and the holders of Claims against or Equity Interests in any debtor were permanently enjoined under the Compromise Plan from pursuing any claim released thereunder.  The Compromise Plan also provided that all Causes of Action owned by the Debtors or their respective Estates, "except as the same may be dismissed, settled or released pursuant to the Plan" were transferred to the Creditor Trust on the Effective Date of the Plan.[9]

19.     The Debtors' solicited the Compromise Plan, which was widely accepted by the Debtors' creditors.  On January 27, 2019, Mr. Lockwood objected to the releases and exculpations contained in the Compromise Plan, including the releases to Wells Fargo and GlassRatner [Docket No. 860] (the "Lockwood Plan Objection").

20.     At the confirmation hearing held on February 5, 2019, the Court overruled the Lockwood Plan Objection and made express findings that the Compromise Plan was proposed and negotiated in good faith, the global settlement was the product of arm's-length negotiations, and

---

[9] *See* the definition of "Creditor Trust Assets" on page 3 of the Compromise Plan and section 11.1 of the Compromise Plan.

the releases, exculpations and injunctions in the plan were "fair, equitable, reasonable and in the best interest of the Debtors and their estates, creditors and equity holders," all as reflected in the *Findings of Fact, Conclusions of Law, and Order (I) Approving Disclosure Statement on a Final Basis and (II) Confirming Compromise Joint Chapter 11 Plan* [Docket No. 882] (the "Confirmation Order").[10]   Paragraph 21 of the Confirmation Order expressly approved the exculpations, injunctions and releases contained in the Compromise Plan, except as modified by the Confirmation Order itself.   Paragraph 27 of the Confirmation Order slightly revised the exculpation provision of section 11.2 of the Compromise Plan, to provide as follows:

> Neither the Exculpated Parties, Wells Fargo Equipment Finance, Inc., nor any of their respective present or former members, managers, officers, directors, employees, equity holders, partners, affiliates, funds, advisors, attorneys or agents, or any of their predecessors, successors or assigns, shall have or incur any liability to any holder of a Claim or an Equity Interest, or any other party-in-interest, or any of their respective agents, employees, equity holders, partners, members, affiliates, funds, advisors, attorneys or agents, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of the events leading up to the confirmation of this Plan and final approval of the Disclosure Statement, the negotiation and pursuit of approval of the Disclosure Statement, the preparation of the Plan, the solicitation of acceptances of the Plan, the pursuit of confirmation of the Plan, the funding of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, and shall be deemed to have acted in good faith in connection therewith and entitled to the protections of section 1125(e) of the Bankruptcy Code. Notwithstanding anything to the contrary contained in this Plan, this section 11.2 shall not exculpate any party from any liability based upon gross negligence or willful misconduct.

21.   The effective date of the Compromise Plan occurred on June 26, 2019 (the "Effective Date").  *See* Docket No. 1005.

22.   On July 26, 2019, GlassRatner filed its *Fourth Interim and Final Application of GlassRatner Advisory & Capital Group, LLC, as Chief Restructuring Officer and Certain*

---

[10] *See* Confirmation Order ¶¶ O, FF, II, KK and NN.

*Additional Personnel to the Debtors, for Reimbursement of Fees and Expenses* [Docket No. 1023] (the "GlassRatner Fee Application").   The GlassRatner Fee Application was served on the appropriate notice parties, including Mr. Lockwood, and provided them with an opportunity to object to the fees sought therein.[11]   Mr. Lockwood did not file an objection or other response to the GlassRatner Fee Application.   On August 20, 2019, the Court entered its final order allowing GlassRatner's requested fees [Docket No. 1041] (the "GlassRatner Fee Order").

## II.     The State Court Lawsuit

23.     As described above, Mr. Lockwood was an active participant in these chapter 11 cases, including appearing *pro se*, or through counsel, at various hearings and attending the mediation, with counsel, conducted by Judge Schmidt.   As evidenced by the Lockwood Plan Objection, Mr. Lockwood was aware of the release and exculpation provisions of the Compromise Plan and, indeed, the revision to section 11.2 contained in paragraph 27 of the Confirmation Order, as well as paragraph 28 of the Confirmation Order, were both added by the Court at the confirmation hearing, as a result of the arguments made by Mr. Lockwood's counsel.

24.     Nonetheless, and in direct contravention of the Compromise Plan and the Confirmation Order, on January 7, 2021, Mr. Lockwood sued Shapiro for $1 billion, as set forth in his *Plaintiff's Original Petition and Request for Disclosure* in the 55th Judicial District Court of Harris County, Texas under Cause No. 202100860 (the "State Court Lawsuit").   A true and correct copy of the State Court Lawsuit is attached hereto as **Exhibit A** and is incorporated herein by reference.   Through the State Court Lawsuit, Mr. Lockwood absurdly seeks in excess $1 billion in damages against Shapiro, despite the fact that Mr. Lockwood was present for every twist and turn of the chapter 11 cases, and the Court otherwise entered orders approving each key transaction,

---

[11] *See* Affidavit of Service at Docket No. 1028, Exhibit B, page 1 of 3.

including but not limited to the use of cash collateral, the incurrence of DIP financing, the hiring of an investment banker to assist with the capital raise/sale process, and plan confirmation.[12]  In substance, the State Court Lawsuit asserts:

- Mr. Lockwood expected Shapiro to guide the Debtors through their financial difficulties and return them to their prior beneficial relationship with Wells Fargo, continuing the business for the benefit of Mr. Lockwood. ¶ 5.5.

- Shapiro had exclusive control over the Debtors "and ultimately [Mr. Lockwood] as sole shareholder," including obtaining financing, liquidating assets and obtaining confirmation of the Compromise Plan.  ¶ 5.6

- Shapiro made false disclosures because GlassRatner was acquired by a "B. Riley entity" during the bankruptcy, which maintained a line of credit with Wells Fargo. ¶¶ 5.7 & 5.8.

- Shapiro did not adequately or accurately disclose his conflicts of interest while supporting the Compromise Plan.

- Shapiro's actions favored Wells Fargo and "subsidiaries of B. Riley Companies" to the detriment of the Debtors and Mr. Lockwood.

- Shapiro breached a duty to Plaintiff as sole shareholder of the Debtors to discharge Shapiro's duties to the Debtors "and for the benefit of Plaintiff" and "made decisions designed to favor and promote the interests of others and to the detriment of Plaintiff."

- When Shapiro testified in support of the Compromise Plan, he took an adverse position to Mr. Lockwood that involved an extreme degree of risk and posed a likelihood of serious injury to Mr. Lockwood.

25.     In sum, the State Court Lawsuit asserts that because Shapiro supported the Compromise Plan (which was approved by this Court after notice and opportunity for objections), which ultimately resulted in Mr. Lockwood's equity interest being eliminated, Mr. Lockwood is somehow personally damaged and Shapiro is somehow liable.

---

[12] *See* paragraphs 1.2 and 2.1 of the State Court Lawsuit.

## ARGUMENT AND AUTHORITIES

**I.     This Court Has Exclusive Jurisdiction to Enforce Its Own Orders.**

26.     Bankruptcy courts have jurisdiction to interpret and enforce their own prior orders. *Travelers Indem. Co.*, 557 U.S. at 151; *Am. Airlines Inc. v. Allied Pilots Ass'n*, 228 F.3d 574, 585 (5th Cir. 2000) (holding that a bankruptcy court's authority under section 105 of the Bankruptcy Code to enforce its own orders cannot be reasonably questioned).

27.     "A bankruptcy court's interpretation of its own confirmation order is entitled to substantial deference." *Travelers Indem. Co.*, 557 U.S. at 151 n. 4; *see also In re Nat'l Gypsum Co.*, 219 F.3d 478, 484 (5th Cir. 2000).  Under its plain meaning, a bankruptcy court can issue any order, including a civil contempt order, necessary or appropriate to carry out the provisions of the Bankruptcy Code.  *See Rodriguez v. Countrywide Home Loans (In re Rodriguez)*, 396 B.R. 436, 459 (Bankr. S.D. Tex. 2008) (quoting *Musslewhite v. O'Quinn (In re Musslewhite)*, 270 B.R. 72, 79 (S.D. Tex. 2000)).

28.     "When interpreting a confirmed plan, Courts apply traditional principles of contract interpretation."  *In re Linn Energy, LLC*, 576 B.R. 532, 535 (Bankr. S.D. Tex. 2017), subsequently *aff'd sub nom. UMB Bank, Nat'l Ass'n v. Linn Energy, L.L.C.*, 927 F.3d 350 (5th Cir. 2019) (quoting *Official Creditors Comm. of Stratford of Tex., Inc. v. Stratford of Tex., Inc. (In re Stratford of Tex., Inc.)*, 635 F.2d 365, 368 (5th Cir. 1981)).

29.     Moreover, the Compromise Plan provides for the Court's ***exclusive*** jurisdiction to, among other things, "issue injunctions and effect any other actions that may be necessary or desirable to restrain interference by any entity with the consummation or implementation of the Plan."  *See* Compromise Plan Article XII.  Specifically, the Court retains exclusive jurisdiction "to

hear and determine all disputes involving the existence, scope, and nature of the exculpations and releases granted hereunder." *Id.*

30.     Mr. Lockwood's institution of the State Court Lawsuit in the first instance, never mind his continued prosecution of the same, directly contravenes core matters that have already come before the Court and over which the Court retained exclusive jurisdiction under Article XII of the Compromise Plan.  As a result, this Court, not the state court, is the only proper forum to determine the Mr. Lockwood's claims.  *See also* Confirmation Order ¶ 30 (retaining jurisdiction as set forth in Article XII of the Compromise Plan).

## II.    This Court Can, and Should, Enforce the Release, Exculpation and Injunction Provisions of the Compromise Plan to Bar the State Court Lawsuit.

31.     "[A] bankruptcy court's plan confirmation order cannot, after it becomes final, be collaterally attacked by parties to the case or those in privity with them."  *See Evercore Cap. Partners v. Nancy Sue Davis Tr. (In re Davis Offshore, L.P.)*, 644 F.3d 259, 265 (5th Cir. 2011). Moreover, the Confirmation Order constitutes a final judgment with respect to the alleged pre-Effective Date conduct that precludes any effort to pursue alleged damages stemming from it. *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 275 (2010); *Howe v. Vaughan (In re Howe)*, 913 F.2d 1138, 1143 (5th Cir. 1990) (remarking that "[t]he law in this circuit is well settled that a plan is binding upon all parties once it is confirmed and all questions that could have been raised pertaining to such plan are res judicata").

32.     Mr. Lockwood's alleged claims in connection with Shapiro's alleged failure to disclose connections to Wells Fargo – to the extent such claims even exist in favor of him personally and directly (which they do not ) – were discharged, exculpated, released and enjoined pursuant to the plain language contained in the Confirmation Order and the Compromise Plan.

14

The State Court Lawsuit is nothing more than a desperate collateral attack on the Confirmation Order and a direct violation of the same.

33.     Indeed, as discussed more fully below, not only do principles of res judicata bar the claims asserted by Mr. Lockwood in the State Court Litigation, but such claims, had they not been discharged, released and exculpated, would be derivative claims which Mr. Lockwood does not, and never had, standing to bring.

34.     "For a bankruptcy court to enforce the plan after confirmation and to enjoin a plaintiff from pursuing a claim, two requirements must be met: (1) the bankruptcy court must have jurisdiction to hear the plaintiff's claim under 28 U.S.C. § 1334; and (2) the bankruptcy court's confirmation order must specifically approve the release of the plaintiff's claim." *Cole v. Nabors Corp. Servs., Inc. (In re CJ Holding Co.)*, 597 B.R. 597, 604 (S.D. Tex. 2019) (quoting *Travelers Indem. Co.*, 557 U.S. at 151–52); *see also Hernandez v. Larry Miller Roofing, Inc.*, 628 F. App'x 281, 286 (5th Cir. 2016) (a plan must specify a creditor's released claims to bar a subsequent proceeding by the creditor against a third party).  Here, as previously noted, this Court has exclusive jurisdiction to hear any matter in connection with Shapiro's and/or GlassRatner's pre-Effective Date conduct released and/or exculpated by the Compromise Plan, as approved by the Confirmation Order.[13]  As set forth in the State Court Lawsuit, Mr. Lockwood's alleged claims all arise from Shapiro's alleged pre-Effective Date conduct in connection with the chapter 11 cases. Accordingly, the Court should enforce the Compromise Plan and the Confirmation Order, enjoin

---

[13] As paragraph 27 of the Confirmation Order provides with emphasis added, other than with respect to willful misconduct and gross negligence, Shapiro and GlassRatner were exculpated from "any act or omission *in connection with, relating to, or arising out of the events leading up to the confirmation of this Plan and final approval of the Disclosure Statement, the negotiation and pursuit of approval of the Disclosure Statement, the preparation of the Plan, the solicitation of acceptances of the Plan, the pursuit of confirmation of the Plan, the funding of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan,*" and were specifically "deemed to have acted in good faith in connection therewith and entitled to the protections of section 1125(e) of the Bankruptcy Code.

Mr. Lockwood from continuing to prosecute the State Court Lawsuit, and order immediately dismissal of the same with prejudice.

## III. Entry of the GlassRatner Fee Order Is *Res Judicata* as to Mr. Lockwood's Claims Against Shapiro.

35. To the extent not already released pursuant to the Confirmation Order and Compromise Plan, the proper time and forum for Mr. Lockwood to have raised his alleged claims against Shapiro was in connection with the GlassRatner Fee Application, but he failed to do so. As a result, the GlassRatner Fee Order is *res judicata* to, and forecloses entirely, Mr. Lockwood's claims against Shapiro as asserted in the State Court Lawsuit. *See Osherow v. Ernst & Young, LLP (In re Intelogic Trace, Inc.)*, 200 F.3d 382, 390 (5th Cir. 2000) (holding that final fee order was *res judicata* to claims against estate professional); *see also Frazin v. Haynes & Boone, L.L.P. (In re Frazin)*, 732 F.3d 313, 321 (5th Cir. 2013) (holding that the debtor's "claim for malpractice was necessarily decided by the bankruptcy court in the process of ruling on the attorneys; fee applications and thus fell within the bankruptcy court's jurisdiction").

36. In concluding that a fee hearing was the appropriate forum for parties to present claims against estate professionals relating to their conduct during a chapter 11 case, the Fifth Circuit drew comparisons to lender liability claims based on loans deems allowed in bankruptcy and the failure to bring mandatory counterclaims in connection with claim objections. *Id.* at 390 (collecting cases). Going a step further, the Fifth Circuit opined that "[i]f [the professional] had brought suit in Texas state court to recover its fees and [the estate] had not asserted its malpractice claims by way of counterclaim, then a subsequent suit by [the estate] or its successor-in-interest would be barred by *res judicata*." *See Goggin v. Grimes*, 969 S.W.2d 135, 138 (Tex. App. – Houston [14th Dist.] 1998, no pet.). Accordingly, this Court should hold that the GlassRatner Fee Order bars Mr. Lockwood's claims against Shapiro in the State Court Lawsuit.

## IV.    If Mr. Lockwood Has Asserted Colorable Claims Against Shapiro, They Are Derivative, and Thus, He Lacks Standing to Assert Them.

37.     Even if Mr. Lockwood has asserted colorable claims against Shapiro (which he has not), he lacks standing to assert them because they are derivative claims that belonged to the Debtors' bankruptcy estate and were either released pursuant to section 11.3 of the Compromise Plan or assigned to the Creditor Trust pursuant to section 11.1 of the Compromise Plan.

38.     "[P]roperty of the [bankruptcy] estate includes 'all legal or equitable interests of the debtor in property as of the commencement of the case'." *Schertz–Cibolo–Universal City, Independent School District v. Wright (In re Educators Grp. Health Tr.)*, 25 F.3d 1281, 1284 (5th Cir. 1994) (quoting 11 U.S.C. § 541(a)(1)). "The term 'all legal or equitable interests' has been defined broadly to include causes of action." *Id.* (citing *La. World Exposition v. Fed. Ins. Co.*, 858 F.2d 233, 245 (5th Cir. 1988)). "If a cause of action belongs to the estate, then the trustee has exclusive standing to assert the claim." *Id.* at 1284 (citing cases). "If, on the other hand, a cause of action belongs solely to the estate's creditors, then the trustee has no standing to bring the cause of action." *Id.*, *see also Meridian Cap. CIS Fund v. Burton (In re Buccaneer Res., L.L.C.)*, 912 F.3d 291, 296 – 97 (5th Cir. 2019).

39.     When determining whether a claim is direct or derivative, courts focus on whether the creditor has suffered a direct injury or one that is derivative of an injury to the debtor. *In re Buccaneer Res, L.L.C.*, 912 F.3d at.at 293.  If a claim depends upon, or derives from, harm to the estate or depletion of estate assets, the claims are derivative; and if the claims do not depend upon harm to the estate, they are direct. *Id.* (citing *Highland Cap. Mgmt. LP v. Chesapeake Energy Corp. (In re Seven Seas Petroleum, Inc.)*, 522 F.3d 575, 584 (5th Cir. 2008)*; see also In re Educators Grp. Health Tr.*, 25 F.3d 1281, 1284–85 (5th Cir. 1994) (holding claims to be derivative where they asserted harms arising from harm to the estate). "To pursue a claim on its own behalf,

17

a creditor must show this direct injury is not dependent on injury to the estate." *In re Buccaneer Res, L.L.C.*, 912 F.3d at 293–94 n.1.

40.     Here, Mr. Lockwood complains that:

> Shapiro's action and decisions while CRO favored Wells Fargo Bank and subsidiaries of B. Riley companies, to the detriment of the *Lockwood Entities and Plaintiff*.  Shapiro did not adequately or accurately disclose his clear conflicts of interest, and in fact while this conflict was present, supported a Chapter 11 Bankruptcy Plan which benefitted Wells Fargo Bank and entities other than the Lockwood entities which he was bound to act in the best interests of, and in the process damaged Plaintiff [14]

These are statements of alleged generalized harm to the Debtors in which all the Debtors' creditors share.  Applying the Fifth Circuit's reasoning from *Buccaneer,* the alleged injury to Mr. Lockwood only comes about from an alleged injury to the estate.  *See id.* at 293.  Furthermore, Shapiro did not owe a direct duty to Mr. Lockwood; rather, he was an estate professional with duties to the Debtors' bankruptcy estate only – not individual constituent.  *In re Lyons Equip. Co., Inc.*, 436 B.R. 281, 285 (Bankr. W.D.N.Y. 2010) (holding  "[t]he restructuring officer simply owes no special duty to any specific creditor or employee"); *see also ICM Notes, Ltd. v. Andrews & Kurth, L.L.P.,* 278 B.R. 117, 126 (S.D. Tex. 2002), *aff'd sub nom. In re ICM Notes Ltd.*, 324 F.3d 768 (5th Cir. 2003) (holding that although chapter 11 debtors' counsel owes a general fiduciary duty to preserve the bankruptcy estate, it did not owe a duty to an individual creditor).  At no point can Mr. Lockwood prove that he was individually injured by the alleged actions of Shapiro or that Shapiro otherwise owed him an individual duty.  As a result, Mr. Lockwood cannot bootstrap himself into holding a direct claim, as this Court has already acknowledged at the confirmation hearing.[15]  Mr. Lockwood's claim is derivative in nature and jurisdiction lies with the Bankruptcy

---

[14] State Court Lawsuit  ¶ 5.9 (emphasis added).
[15] *See* Tr. at 56:2-11.

4827-1986-5561.6

Court because it is property of the estate. *Id.*; *see also* 11 U.S.C. § 541(a)(1). As a result, even if Mr. Lockwood has pled a claim against Shapiro in the State Court Lawsuit, he lacks standing to assert and prosecute the same.

**V.     The Court Should Award Shapiro His Fees and Expenses Incurred in Connection with the Filing and Prosecution of this Motion.**

41.     Courts have inherent power to award attorney's fees against a party that has engaged in bad-faith conduct. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45 (1991). "In *Chambers*, the Supreme Court held that a district court may sanction parties for conduct that occurs in portions of the court proceeding that are not part of the trial itself." *FDIC v. Maxxam, Inc.*, 523 F.3d 566, 590–91 (5th Cir. 2008). The Fifth Circuit has qualified *Chambers* by emphasizing that its rule allows for the award of attorney's fees when a party's "bad-faith conduct," beyond that occurring in trial, is in direct defiance of the court. *Id.* at 591 (citation omitted); *see In re Case*, 937 F.2d 1014, 1023 (5th Cir. 1991) (finding the power to assess attorney's fees, based on the inherent powers of the court, equally applicable to the bankruptcy court).

42.     A bankruptcy court may assess attorney's fees "pursuant to its inherent authority to police practitioners who act in direct contravention of its orders," regardless of whether the bad acts occur before the bankruptcy court or in another forum. *In re Skyport Glob. Commc'n, Inc.*, 942 F. App'x at 303; *CJC Holdings, Inc. v. Wright & Lato, Inc.*, 989 F.2d 791, 793 (5th Cir. 1993) (distinguishing *Case*, which held that bankruptcy court could not award fees for bad-faith conduct in a separate state court proceeding that was "completely collateral to the proceeding in the bankruptcy court," from *Chambers* and noting that the filing in *Chambers* "directly violated the district court's order to maintain the status quo pending the outcome of the litigation"). Before awarding fees, the court must make a specific finding that the litigant engaged in bad-faith conduct. *In re Yorkshire, LLC*, 540 F.3d 328, 332 (5th Cir. 2008). The Fifth Circuit has affirmed fee awards

19

assessed by a bankruptcy court upon a bad faith finding that the litigant filed a state court petition in direct contravention of a bankruptcy court order and releases and injunctions contained therein. *Skyport Glob.*, 942 F. App'x at 304.

43.     Here, Mr. Lockwood engaged in bad faith conduct by seeking to end-run the Confirmation Order.  The fact that Mr. Lockwood's bad-faith conduct occurred in a separate state court proceeding is of no moment.  As a result, the Court should award Shapiro his fees and expenses incurred in connection with the filing a prosecution of this Motion, to be submitted via declaration following the conclusion of a hearing on the Motion.

## REQUEST FOR EMERGENCY HEARING

44.     The State Court Lawsuit was filed on January 7, 2021 and was served upon Shapiro on January 13, 2021.  On that same day, the undersigned counsel emailed counsel to Mr. Lockwood requesting that the State Court Lawsuit be dismissed.  No response was received, and counsel again sent an email on January 30.  *See* **Exhibit B** attached hereto.  Although counsel to Mr. Lockwood in the State Court Lawsuit has still not responded to either the January 13 or 30 emails, potential bankruptcy counsel to Mr. Lockwood contacted the undersigned on January 30.  After a telephonic discussion with potential counsel, given that potential counsel had not yet been retained, the undersigned informed potential counsel that the current Motion would be filed without delay.  The deadline for Shapiro to file an answer in the State Court Lawsuit is Monday, February 8, 2021 at 10:00 A.M. [16]  Thus, Shapiro respectfully submits that emergency consideration of this Motion on February 4, 2021 is warranted and appropriate.

---

[16] *See* Tex. R. Civ. P. 99(b).

**WHEREFORE**, Shapiro respectfully requests that the Court (a) enforce the Confirmation Order and the GlassRatner Fee Order, (b) find that the filing of the State Court Lawsuit violates the Compromise Plan, the Confirmation Order and the GlassRatner Fee Order, (c) direct Mr. Lockwood to dismiss the State Court Lawsuit with prejudice, (d) order Mr. Lockwood to pay Shapiro's legal fees incurred in connection with the preparation and prosecution of this Motion, and (e) grant such other and further relief as may be just and proper.

Respectfully submitted this 31st day of January, 2021.

**GRAY REED**

By: */s/ Jason S. Brookner*
    Jason S. Brookner
    Texas Bar No. 24033684
1300 Post Oak Blvd., Suite 2000
Houston, Texas 77056
Telephone:  (713) 986-7000
Facsimile:  (713) 986-7100
Email:      jbrookner@grayreed.com

-and-

    Micheal W. Bishop
    Texas Bar No. 02354860
    Lydia R. Webb
    Texas Bar No. 24083758
1601 Elm Street, Suite 4600
Dallas, Texas 75201
Telephone:  (214) 954-4135
Facsimile:  (214) 953-1332
Email:      lwebb@grayreed.com

**COUNSEL TO MARK SHAPIRO, AS FORMER CHIEF RESTRUCTURING OFFICER TO THE DEBTORS**

## **CERTIFICATE OF CONFERENCE**

The undersigned hereby certifies that on January 13 and 30, 2021, as show on **Exhibit B** attached hereto, he emailed counsel to Mr. Lockwood, requesting dismissal of the State Court Lawsuit and informing counsel the foregoing motion would be filed and expedited consideration requested if the matter was not dismissed.  Counsel to Mr. Lockwood did not respond to these emails.  On January 30, 2021, potential bankruptcy counsel to Mr. Lockwood contacted the undersigned. After a telephonic discussion with potential counsel, given that potential counsel had not yet been retained, the undersigned informed potential counsel that the Motion would be filed without delay.

*/s/ Jason S. Brookner*
Jason S. Brookner


## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the 31st day of January, 2021, he caused a true and correct copy of the foregoing pleading to be served via CM/ECF on all parties who have subscribed for electronic notice in this case, and via electronic communication to the following persons:

Francis I. Spagnoletti
Marcus Spagnoletti
Eric Rhine
Spagnoletti Law Firm
401 Louisiana Street, 8th Floor
Houston, TX 77002
frank@spaglaw.com
mspagnoletti@spaglaw.com
erhine@spaglaw.com

*/s/ Jason S. Brookner*
Jason S. Brookner

Receipt Number: 885626
Tracking Number: 73829266

EML
**COPY OF PLEADING PROVIDED BY PLT**

CAUSE NUMBER: 202100860

| | |
|---|---|
| PLAINTIFF: LOCKWOOD, MICHAEL F | In the 055th Judicial |
| vs. | District Court of |
| DEFENDANT: SHAPIRO, MARK D | Harris County, Texas |

CITATION

THE STATE OF TEXAS
County of Harris

TO: SHAPIRO, MARK D
2909 BEAUCHAMP DRIVE
PLANO TX 75093

    Attached is a copy of PLAINTIFF'S ORIGINAL PETITION AND REQUEST FOR DISCLOSURE.

This instrument was filed on January 7, 2021, in the above numbered and styled cause on the docket in the above Judicial District Court of Harris County, Texas, in the courthouse in the City of Houston, Texas. The instrument attached describes the claim against you.

    YOU HAVE BEEN SUED.  You may employ an attorney.  If you or your attorney do not file a written answer with the District Clerk who issued this citation by 10:00 a.m. on the Monday next following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you.  In addition to filing a written answer with the clerk, you may be required to make initial disclosures to the other parties of this suit.  These disclosures generally must be made no later than 30 days after you file your answer with the clerk.  Find out more at TexasLawHelp.org.

    ISSUED AND GIVEN UNDER MY HAND and seal of said Court, at Houston, Texas, this January 8, 2021.



*Marilyn Burgess*

Marilyn Burgess, District Clerk
Harris County, Texas
201 Caroline, Houston, Texas 77002

Generated By: LISA THOMAS

Issued at request of:
SPAGNOLETTI, FRANCIS I.
401 LOUISIANA 8TH FL
HOUSTON, TX  77002
713-653-5601

Bar Number: 18869600



**EXHIBIT**
**A**

Tracking Number: 73829266
EML

CAUSE NUMBER: 202100860

| | |
|---|---|
| PLAINTIFF: LOCKWOOD, MICHAEL F | In the 055th |
| vs. | Judicial District Court |
| DEFENDANT: SHAPIRO, MARK D | of Harris County, Texas |

OFFICER/AUTHORIZED PERSON RETURN

Came to hand at _____o'clock ____. M., on the _____ day of _____, 20_____.
Executed at (address) _____
in _____ County
at _____ o'clock ____. M., on the _____ day of _____, 20 _____,
by delivering to _____ defendant,
in person, a true copy of this
Citation together with the accompanying _____ copy(ies) of the
_____ Petition
attached thereto and I endorsed on said copy of the Citation the date of delivery.
To certify which I affix my hand officially this _____ day of _____, 20 _____.

FEE: $ _____

_____ of _____

County, Texas

_____              By: _____
Affiant                                          Deputy

On this day, _____, known to me to be
the person whose signature
appears on the foregoing return, personally appeared. After being by me duly sworn,
he/she stated that this citation was executed by him/her in the exact manner recited
on the return.

SWORN TO AND SUBSCRIBED BEFORE ME on this _____ of
_____, 20 _____

_____
Notary Public

1/7/2021 12:42 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 49488981
By: Patricia Jones
Filed: 1/7/2021 12:42 PM

CASE NO. _____

| | |
|---|---|
| MICHAEL F. LOCKWOOD | IN THE DISTRICT COURT |
| vs. | HARRIS COUNTY, TEXAS |
| MARK D. SHAPIRO | _____ JUDICIAL DISTRICT |

## PLAINTIFF'S ORIGINAL PETITION AND REQUEST FOR DISCLOSURE

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Plaintiff Michael F. Lockwood ("Plaintiff") complaining of Defendant Mark D. Shapiro ("Shapiro"), and would show unto this Honorable Court as follows:

### I. DISCOVERY CONTROL PLAN

1.1    Plaintiff intends that discovery be conducted under Level 3, pursuant to Tex. R. Civ. P. 190.4(a).

1.2    Plaintiff affirmatively pleads that this suit does not fall under the expedited actions process of the Texas Rule of Civil Procedure because Plaintiff is seeking monetary relief in excess of $1,000,000,000.00.

### II. CLAIM FOR RELIEF

2.1    Plaintiff affirmatively pleads that he seeks monetary relief over $1,000,000,000.00.

### III. PARTIES

3.1    Michael F. Lockwood is a citizen of Texas residing in Harris County.  Plaintiff was the sole shareholder of Lockwood International, Inc., and other related entities (collectively the "Lockwood Entities"), at all relevant times.

3.2    Mark D. Shapiro is a citizen of Texas and may be served with citation at 5017 Bridge Creek Drive, Plano, Texas 75093, or 2909 Beauchamp Drive, Plano, Texas 75093, or

4400 Post Oak Parkway, Suite 1400, Houston, Texas 77027, or 3500 Maple Avenue, Suite 420, Dallas, Texas 75219. Shapiro was at all relevant times an officer of the Lockwood Entities, and acting as the Chief Restructuring Officer ("CRO") of the Lockwood Entities.

## IV.  JURISDICTION AND VENUE

4.1     This Court has jurisdiction over this case because Shapiro is a resident of the State of Texas and the cause of action arose in Houston, Texas.  The damages sought herein are in excess of the minimal jurisdictional limits of this Court.

4.2     Venue is proper in Harris County, Texas under Tex. Civ. Prac. & Rem. Code section 15.002(a)(1), since all or a substantial part of the events or omissions giving rise to the claim occurred in Harris County.

## V.  FACTS

5.1     The Lockwood Entities had been a valuable Houston, Texas, business since its inception in 1977. Over the years, it grew into an international supplier of valves and valve automation, offering pipe, valves, fittings and flanges, as well as engineered products for liquid handling and transfer, liquid measurement, as well as access and safety equipment.

5.2     On or about September 30, 2015, the Lockwood Entities agreed to borrow funds from certain lenders including Wells Fargo Bank through a line of credit.

5.3     On or around November 2016, the Lockwood Entities began to experience significant financial difficulties following a series of events perpetrated by the Lockwood Entities' then-auditors, Chief Financial Officer, and others.  As these difficulties became more pronounced, Plaintiff asked to meet with representatives of Wells Fargo Bank regarding the operation of the Lockwood Entities going forward.

2

5.4     Following this meeting, the Lockwood Entities' loan was moved from the "relationship" side of Wells Fargo to its "workout group," a department within Wells Fargo that handles special assets.  Wells Fargo reassigns some commercial loans to this internal department to handle the negotiation and management of the bank's forbearance agreements.

5.5     As part of this purported "workout" process, and at Wells Fargo's insistence, the Lockwood Entities agreed to hire various restructuring consultants, including Shapiro, who was employed by a GlassRatner entity. Plaintiff relied on the representations and recommendations of these consultants, including Shapiro, but above all expected Shapiro would guide the Lockwood Entities through its financial difficulties, emerge from the workout process, and return to the prior beneficial relationship the Lockwood Entities enjoyed with its Lenders and to continue in business, to the benefit of Plaintiff.

5.6     Shapiro was eventually appointed as an officer of the Lockwood Entities, specifically its Chief Restructuring Officer, or "CRO."  As part of Shapiro's duties as an officer of the Lockwood Entities and as CRO, he had exclusive control over, and was directly involved in multiple events affecting the Lockwood Entities and ultimately Plaintiff as sole shareholder, including but not limited to arranging  "Debtor in Possession" financing, liquidating certain assets, and entering in a Chapter 11 Bankruptcy Plan.

5.7     As part of the bankruptcy process, Shapiro made certain disclosures and representations, including a lack of materially adverse business relationships between himself and other entities which would impact his ability to discharge his obligations to the Lockwood Entities and Plaintiff as its sole shareholder.

5.8     Unbeknownst to Plaintiff, these disclosures and representations were false, in that Shapiro was employed by a GlassRatner company, which during the course of Shapiro's tenure as CRO of the Lockwood Entities was acquired by a B. Riley entity, which itself had a substantial line of credit with Wells Fargo Bank, the secured lender of the Lockwood Entities.

5.9     Shapiro's actions and decisions while CRO favored Wells Fargo Bank and subsidiaries of B. Riley companies, to the detriment of the Lockwood Entities and Plaintiff. Shapiro did not adequately or accurately disclose his clear conflicts of interest, and in fact while this conflict was present, supported a Chapter 11 Bankruptcy Plan which benefitted Wells Fargo Bank and entities other than the Lockwood entities which he was bound to act in the best interests of, and in the process damaged Plaintiff.

## VI.  CAUSES OF ACTION

6.1     Plaintiff re-alleges the forgoing factual allegations as though fully again set forth.

6.2     Shapiro owed a duty to Plaintiff as sole shareholder of the Lockwood Entities to faithfully discharge Shapiro's duties to act in the best interest of the Lockwood Entities and for the benefit of Plaintiff, in part by honestly, adequately and accurately disclosing all conflicts of interest, whether actual or potential, and not taking actions which would damage Plaintiff.

6.3     Shapiro breached this duty when he failed to disclose adequately or accurately his conflicts of interest, and acted not in the best interests of the Lockwood Entities, or in the best interests of Plaintiff, but instead made decisions designed to favor and promote the interests of others and to the detriment of Plaintiff.

6.4     Shapiro's actions constituted willful misconduct. He acted as CRO under undisclosed conflicts of interest, and when viewed objectively from Plaintiff's standpoint at the

4

time, involved an extreme degree of risk to Plaintiff, considering the probability and magnitude of the potential harm to Plaintiff and therefore constituted gross negligence.

6.5     For example, when Shapiro swore under oath in support of a Bankruptcy Plan that favored others over Plaintiff, and thus took a position directly adverse to Plaintiff, Shapiro's actions involved an extreme degree of risk that posed a likelihood of serious injury to Plaintiff. This act was not merely thoughtless, or careless, but rose to an extreme degree of risk to Plaintiff. Shapiro's support of the Plan was the culmination of multiple decisions made by Shapiro to the detriment of Plaintiff's interests, including rejecting valid offers to purchase the Lockwood Entities which would have benefitted Plaintiff.  Instead, these offers were rejected to benefit those with whom Shapiro had conflicts of interest.

6.6     When viewed subjectively, Shapiro had actual awareness of the risk to Plaintiff, but proceeded with conscious indifference to his rights and welfare, instead favoring those with whom Shapiro had his conflict of interest.  Shapiro knew his decisions to favor others over the Lockwood Entities and Plaintiff would damage Plaintiff, but he acted against Plaintiff despite the conflicts, all of which constituted gross negligence and willful misconduct.

## VII. DAMAGES

7.1     As a result of Shapiro's gross negligence and wilful misconduct in acting with undisclosed conflicts of interest, Plaintiff has suffered actual damages in excess of $1,000,000,000.00 (One Billion Dollars), for which Shapiro is liable.

7.2     Furthermore, given that Shapiro's conduct was committed intentionally, knowingly, and with callous disregard of Plaintiff's legitimate rights, Plaintiff seeks exemplary

damages in an amount not less than the maximum amount permitted by applicable law, or what is in the conscience of the jury.

## VIII.   REQUEST FOR DISCLOSURE

8.1    Plaintiff requests Shapiro disclose, within 50 days of the original service of this request, the information or material described in Rule 194.2, Tex.R.Civ.P.

WHEREFORE, Plaintiff prays the Court issue citation for Shapiro to appear and answer herein, and that Plaintiff be awarded a judgment against Shapiro for the following:

a.    Actual damages;
b.    Exemplary damages;
c.    Pre-judgment and post-judgment interest;
d.    Court costs;
e.    Punitive damages and attorney's fees; and
f.    All other relief to which Plaintiff is entitled.

Respectfully submitted,

By: /s/ Francis I. Spagnoletti
Francis I. Spagnoletti
TX SBN 18869600
frank@spaglaw.com
Marcus R. Spagnoletti
TX SBN 24076708
mspagnoletti@spaglaw.com
Eric J. Rhine
TX SBN 24060485
erhine@spaglaw.com
SPAGNOLETTI LAW FIRM
401 Louisiana Street, 8th Floor
Houston, Texas 77002
Telephone: 713.653.5600
Facsimile: 713.653.5656

ATTORNEYS FOR PLAINTIFF

**Jason S. Brookner**

| | |
|---|---|
| **From:** | Jason S. Brookner |
| **Sent:** | Saturday, January 30, 2021 12:24 PM |
| **To:** | frank@spaglaw.com; mspagnoletti@spaglaw.com; erhine@spaglaw.com |
| **Cc:** | Lydia Webb |
| **Subject:** | Re: Lockwood v. Shaprio |

Gentlemen good morning, we were having email problems today and so I just noticed that my email from this morning came across blank.

What I wanted to ask was whether you had any response to the below email? We are preparing to file our pleading in front of Judge Jones on Monday and seek emergency consideration.

Please advise whether you plan to nonsuit with prejudice the state court litigation, or whether we should proceed in front of Judge Jones, including a request for our legal fees.

We can only assume that you did the proper research before filing the state court action, in which case filing the action willfully violated the confirmation order and the plan. If you didn't do the proper research, then the actually is frivolous.

Either way, the request for $1 billion in damages, in and of itself, is absurd and frivolous.

Please respond at your earliest convenience or we will proceed as planned on Monday, with all rights reserved in every way.

Sent from my iPhone


**Jason S. Brookner**
**Partner**
Tel 469.320.6132 | Fax 469.320.6894 | jbrookner@grayreed.com
Dallas Office: 1601 Elm St., Suite 4600 | Dallas, TX 75201
Houston Office: 1300 Post Oak Blvd., Suite 2000 | Houston, TX 77056
grayreed.com | Connect with me on LinkedIn



**CONFIDENTIALITY NOTICE:** This electronic transmission and any attachments constitute confidential information which is intended only for the named recipient(s) and may be legally privileged. If you have received this communication in error, please contact the sender immediately. Any disclosure, copying, distribution or the taking of any action concerning the contents of this communication by anyone other than the named recipient(s) is strictly prohibited.


On Jan 13, 2021, at 2:40 PM, Jason S. Brookner <jbrookner@grayreed.com> wrote:


Gentleman I hope this email finds you and your loved ones safe and well and healthy.  Happy new year.  Frank, it's been a while and hope you have been well.

**EXHIBIT**
**B**

1

1          IN THE UNITED STATES BANKRUPTCY COURT

2          FOR THE SOUTHERN DISTRICT OF TEXAS

3               HOUSTON DIVISION

4  IN RE:                §     CASE NO. 18-30197-H2-11
                       §     HOUSTON, TEXAS
5  LOCKWOOD HOLDINGS,      §     TUESDAY,
  INC., ET AL           §     FEBRUARY 5, 2019
6           DEBTORS.     §     2:33 P.M. TO 4:03 P.M.

7

8          DISCLOSURE HEARING/CONFIRMATION

9      BEFORE THE HONORABLE DAVID R. JONES
          UNITED STATES BANKRUPTCY JUDGE

10

11

12      APPEARANCES:     SEE NEXT PAGE

13      COURT RECORDER:   VRIANA PORTILLO

14      COURT CLERK:     VRIANA PORTILLO

15

16

17

18

19

20          TRANSCRIPTION SERVICE BY:

21       JUDICIAL TRANSCRIBERS OF TEXAS, LLC
          935 ELDRIDGE ROAD, #144
22         SUGAR LAND, TEXAS 77478
      Tel: 281-277-5325 ▼ Fax: 281-277-0946
23        www.judicialtranscribers.com

24

25  Proceedings recorded by electronic sound recording;
    transcript produced by transcription service.

EXHIBIT
C

```
1                          APPEARANCES:

2
     FOR THE DEBTORS:              GRAY REED & MCGRAW, LLP
3                                  Jason S. Brookner, Esq.
                                   Lydia R. Webb, Esq.
4                                  1601 Elm Street, Suite 4600
                                   Dallas, Texas  75201
5                                  469-320-6132

6
     FOR MICHAEL LOCKWOOD:         WILSON, CRIBBS & GOREN, PC
7                                  Brian B. Kilpatrick, Esq.
                                   2500 Fannin Street
8                                  Houston, Texas  77002
                                   713-222-9000
9
                                   UMARI LAW FIRM, PLLC
10                                 Basil A. Umari, Esq.
                                   1403 Eberhard
11                                 Houston, Texas  77019
                                   713-392-1974
12
     FOR OFFICIAL COMMITTEE
13   OF UNSECURED CREDITORS:       MCKOOL SMITH, PC
                                   Christopher D. Johnson, Esq.
14                                 Veronica Faye Manning, Esq.
                                   600 Travis St., Suite 3300
15                                 Houston, Texas  77002
                                   713-835-3606
16
     FOR WELLS FARGO BANK:         WINSTEAD PC
17                                 Sean B. Davis, Esq.
                                   600 Travis St., Suite 5200
18                                 Houston, Texas  77002
                                   713-650-8400
19
                                   WINSTEAD, PC
20                                 Rakhee V. Patel, Esq.
                                   2728 N. Harwood St., Suite 500
21                                 Dallas, Texas  75201
                                   214-745-5250
22
     FOR THE US TRUSTEE:           US DEPARTMENT OF JUSTICE
23                                 Hector Duran, Jr., Esq.
                                   515 Rusk, Suite 3516
24                                 Houston, Texas  77002
                                   713-718-4650
25
```

3

```
1                       APPEARANCES (CONTINUED):

2
    FOR EMERSON:                    THOMPSON & KNIGHT
3                                   Tye C. Hancock, Esq.
                                    811 Main St., Suite 2500
4                                   Houston, Texas  77002
                                    713-951-5880
5

6                       APPEARING TELEPHONICALLY:

7   FOR THE DEBTORS:                GRAY REED & MCGRAW, LLP
                                    Amber Michelle Carson, Esq.
8                                   1601 Elm St., Suite 4600
                                    Dallas, Texas  75201
9                                   469-320-6132

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1          MR. UMARI:  Correct.

2          THE COURT:  Mr. Brookner, I just want to make

3    sure that the Debtors understand that that is the problem

4    and that as part of the compromise, that claim -- I don't

5    understand how there could be a direct claim and I don't

6    understand how you could release a third party claim.  I

7    just don't -- one, I don't say anything could arise because

8    if I make the findings under 1129, to the extent that it all

9    rises out of the bankruptcy and the confirmation process,

10   there simply can't be a direct claim.  So, Mr. Brookner, let

11   me -- help me understand --

12         (Phone noise.)

13         THE COURT:  So, Mr. Brookner, help me understand

14   what it is that we're actually fighting over.

15         MR. BROOKNER:  Your Honor, at the risk of

16   being -- this is actually really not the Debtors' fight.

17   It's the Debtors' Plan that was negotiated.

18         THE COURT:  Right.

19         MR. BROOKNER:  And so it's really more of a Wells

20   Fargo issue.

21         THE COURT:  No, it's the Debtors as plan sponsors

22   so I want to understand what it is that the Debtor's trying

23   to accomplish.

24         MR. BROOKNER:  The Debtor is trying to implement

25   the negotiated resolution that took place at the mediation

1  with Judge Schmidt.

2          THE COURT:  And what is the resolution that you

3  are trying to implement, as you understand it, on behalf of

4  the Debtors?

5          MR. BROOKNER:  Is that to the -- is that in

6  conjunction, as Your Honor has mentioned, with the good

7  faith findings and the confirmation of the Plan, that there

8  would be that -- excuse me -- Section 1125(e) of the

9  Bankruptcy Code, which references good faith in the -- and

10 exculpations for the good faith and the solicitation --

11         THE COURT:  Right.

12         MR. BROOKNER:  -- execution, et cetera, of a plan

13 and doing all that.  That is basically what is embodied in

14 11.2 and it does not restrict itself only to estate

15 professionals and representatives.  You have the Code,

16 Your Honor.  I can get mine.  I believe it says, "Any

17 person."  So Wells Fargo is such a person or such people, as

18 it were, who participated in the plan process, negotiation,

19 implementation, consummation and as a result they should be

20 entitled to the protections of 1125(e).

21         THE COURT:  So you guys are both talking way past

22 me and not listening to me so I'm going to try this again.

23         MR. BROOKNER:  I'm sorry, I'm trying, Your Honor.

24         THE COURT:  No.  So if Wells Fargo went out

25 post-petition and an officer of Wells Fargo, in the course

1  and scope of the officer's duty, had a car accident with

2  Mr. Lockwood, clearly we would all agree that 11.2 does not

3  cover that condition, right?

4             MR. BROOKNER:  Correct.

5             THE COURT:  So do both of you agree that all that

6  we're talking about is simply the bankruptcy process, the

7  plan process, the disclosure statement process and that's

8  it?

9             MR. BROOKNER:  I will agree with you, Your Honor.

10            THE COURT:  Right.

11            MR. BROOKNER:  I can't speak for --

12            MR. UMARI:  I would agree as well.  Particularly

13 it's one phrase --

14            THE COURT:  Okay.

15            MR. UMARI:  -- one phrase that we find

16 problematic --

17            THE COURT:  Okay.

18            MR. UMARI:  -- if you look at Section 11.2.

19            THE COURT:  Okay.  Can you help me?

20            MR. UMARI:  "For any act or omission" -- and this

21 is kind of in the middle of the paragraph --

22            THE COURT:  I got it.

23            MR. UMARI:  -- "in connection with, relating to

24 or arising out" -- and this is the problem we have is that

25 first clause -- "of the administration of the Chapter 11

1 cases."  The rest is fine with us.  And I proposed that

2 change to Mr. Brookner.

3           THE COURT:  So, Mr. Davis, let me ask you.

4           Do you have any issue with the deletion of those

5 words?  Because quite frankly they're repetitive.

6           MR. DAVIS:  Your Honor, I would -- I'm happy to

7 take a look at it and get a clear understanding of why they

8 may be repetitive.  But our -- to answer Your Honor's

9 question, the problem -- or the reason that we're insistent

10 upon the language is: that was the crux of the deal that was

11 struck at mediation.

12           THE COURT:  Okay.  And tell me what those words

13 mean that are not encompassed in the rest of that paragraph.

14 I think you both are being silly, but I'm -- we're going to

15 walk through this until we reach a conclusion one way or the

16 other.

17           MR. DAVIS:  If you would bear with me,

18 Your Honor?

19           THE COURT:  Sure.

20        (Pause in the proceedings.)

21           MR. DAVIS:  Your Honor, I think the distinction

22 that I would draw between that particular phrase and the

23 rest of the language -- the rest of the exculpation language

24 is that the administration of the Chapter 11 cases deals

25 with matters that are not necessarily related to plan

 1  development and solicitation that occurred throughout the

 2  rest of the bankruptcy cases.

 3          MR. UMARI:  That's precisely our trouble with it.

 4      (Pause in the proceedings.)

 5          THE COURT:  Okay.  So let me see if I can draw

 6  this out because I still don't understand.  So if the

 7  language says -- I mean, if we struck through "of the

 8  administration of the Chapter 11 cases" and it read "in

 9  connection with, relating to or arising out of the events

10  leading to the confirmation of the proposed Plan or approval

11  of the Disclosure Statement," tell me the difference between

12  what I said, which can't be objectionable, and what you

13  wrote, which Mr. Umari finds to be objectionable.  I'm going

14  to ask the same question to Mr. Umari.

15          MR. DAVIS:  I think that that language would be

16  acceptable, Your Honor.

17          THE COURT:  Okay.  Mr. Umari?

18          MR. DAVIS:  I think it has the same effect.

19          MR. UMARI:  And it has the same -- that would be

20  acceptable to us as well.

21          THE COURT:  There you go.  All right.  Sounds

22  like we have a resolution.  We'll substitute those words in

23  for the paragraph of 11.2 and we'll add a statement to the

24  Confirmation Order that says, "Nothing in the Confirmation

25  Order or the Plan can in any way release or effect any

1  direct claims" -- and I want those words in there "any

2  direct claims" because Mr. Lockwood does not have the

3  ability to bring derivative causes of action.

4           MR. SPEAKER:  Correct.

5           THE COURT:  I think that Judge Costa, in

6  affirming my favorite bankruptcy judge, me, defines what a

7  "derivative cause of action" is or what the distinction

8  between "direct" and "derivative" is in probably the most

9  concise way that I've ever seen done so that ought to be

10 very clear and very easy to follow.

11          And with that, Mr. Umari, then at that point

12 Mr. Lockwood has no further objection?

13          MR. UMARI:  That is correct, Your Honor.

14          THE COURT:  All right.  Mr. Brookner, is the

15 Debtor willing to make those changes?

16          MR. BROOKNER:  Yes, Your Honor.  And I was going

17 to ask if you could please repeat your language one more

18 time so I can write it and we can implement it?  What I

19 would propose, Your Honor, is that we just revise Section

20 11.2 in the Confirmation Order itself the same way that we

21 revised the definition of "prepetition lenders

22 contribution."

23          THE COURT:  And just say that "the following

24 paragraph 11.2 is substituted in its entirety."

25          MR. BROOKNER:  Correct.

1              *I certify that the foregoing is a correct*

2    *transcript to the best of my ability due to the condition of*

3    *the electronic sound recording of the proceedings in the*

4    *above-entitled matter.*

5    */S/ MARY D. HENRY*

6    *CERTIFIED BY THE AMERICAN ASSOCIATION OF*

7    *ELECTRONIC REPORTERS AND TRANSCRIBERS, CET**337*

8    *JUDICIAL TRANSCRIBERS OF TEXAS, LLC*

9    *JTT TRANSCRIPT #59907*

10   *DATE FILED:  FEBRUARY 7, 2019*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25